IN THE UNITED STASTES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

City of El Cenizo, Texas,  Mayor Raul L. §
Reyes of City of El Cenizo, Maverick §
County Sheriff  Tom Schmerber, §
Maverick County Constable Pct. 3-1 §
Mario A. Hernandez ~~and Bexar County~~ §   Civil Case 5: 7 CV 40¢
~~Constable Pct. 1 Ruben C. Tejeda~~, and §
League of United Latin American Citizens, §
      Plaintiffs §   **Complaint for Declaratory**
 §   **Judgment and Injunctive**
vs. §   **Relief**
 §
 §
State of Texas, Governor Greg §
Abbott (In His Official Capacity), and §
Texas Attorney General Ken Paxton §
(In His Official Capacity), §
      Defendants §

## INTRODUCTION

1.  The City El Cenizo, Texas, City of El Cenizo Mayor Raul L. Reyes, Maverick

County Sheriff Tom Schmerber, Maverick County Constable Mario A. Hernandez,

Bexar County Constable Ruben Tejeda, and the League of United Latin American

Citizens  **(collectively hereinafter "Plaintiffs")** seek declaratory and injunctive

relief against the State of Texas, Texas Governor Greg Abbott, Texas Attorney

General Ken Paxton, and other as-yet un-named Texas state officials for the

following legal violations in connection with their enactment, administration,

enforcement (both threatened and actual) of Texas Senate Bill 4, signed into law

by the Governor of Texas on May 7, 2017 ("SB 4): (a) Tenth Amendment to the

United States Constitution; (b) Article I, § 8, clause 4 of the United States

Constitution; (c) Article VI, clause 2, of the United States Constitution; and (d) the

Due Process requirements of the Fifth and Fourteenth Amendments to the United

States Constitution.  Plaintiffs further seek a declaration that they and their local

governments comply with Title 8, Section 1373, of the United States Code

("Section 1373") and that the State of Texas has violated the meaning and intent of

Congressional enactments, and therefore sought to extend its authority into a field

preempted by federal law, insofar as state work with local entities in connection

with immigration enforcement has been impermissibly extended by the state to

force legal government entities and officials to cooperate with state officials in a

way that does, and is intended to, violate federal law, both constitutional and

statutory. The State of Texas acts unconstitutionally when it acts to compel  and

coerce its local government and officials to violate federal law.

2.  In conscious and blatant disregard of federal law and constitutional protections,

the State of Texas through SB 4 seeks to coerce local authorities into either

abandoning (where the local policies already exist) or foregoing establishment of

(where local policies are under consideration or may be adopted in the future)

what are generally known as "Sanctuary City" laws and policies.  To accomplish

this objective, on May 7, 2017, Governor Greg Abbott of Texas, signed into law

SB 4,  entitled,

AN ACT

relating to the enforcement by campus police departments and certain local
governmental entities of state and federal laws governing immigration and to
related duties and liability of certain persons in the criminal justice system;
providing a civil penalty; creating a criminal offense..  **attached as Exhibit 1.**

3.  The law does not define the term "sanctuary cities", but the term is generally

used by Texas officials to refer to policies seen as giving safe harbor to

undocumented immigrants by failing to cooperate with federal immigration

officials to the full extent demanded by them, regardless of federal statutory and

constitutional constraints.  Among other provisions, SB 4, which takes effect Sept.

1, 2017, requires local governmental entities and law enforcement officials to

unquestioningly comply with federal immigration laws and detainer requests for

people in custody, without any independent local determination or review.   It

includes penalties for those whom Texas deems fall short, including a class A

misdemeanor charge for sheriffs, police chiefs or constables who Texas deems,

without question or independent review or evaluation, do not comply with federal

immigration detainer requests.  It provides for removal from office for elected or

3

appointed officials whom Texas deems don't comply with the law, and civil penalties of up to $25,500 a day for entities that violate the law.

4.  The law directs the Texas Attorney General to enforce the law against all individuals or entities complained of about by almost anyone.  This law authorizes the Attorney General of Texas **(hereinafter AG)** to file criminal charges, remove public and appointed officials from elected office and to impose civil penalties of up to $25,000 per day for  entities the AG determines are "non-compliant".  In a nutshell, the law directs the AG to take enforcement action against any individual public official or local entity that the AG deems "hinders the enforcement of Federal law."   This places local government officials and entities, and the State of Texas itself, at the complete mercy of federal officials and their determinations and strikes at the heart of established principles of the Tenth Amendment and the Due Process clauses of the Fifth and Fourteenth Amendments of the United States Constitution. The State of Texas perhaps may choose to voluntarily relinquish its retained sovereignty entirely to the federal government, but it has no constitutional or sovereign authority to compel its local government and local government officials to do so. It particularly has no such power when its compulsory mandates that Texas local governments act in violation of federal constitutional and statutory requirements has a direct adverse impact of the constitutional rights of individuals targeted by the State's illegal requirements.

4

5.  The State of Texas purposefully fails to define what is a "Sanctuary City". Plaintiffs' laws, ordinances or policy limit when city employees and agencies may assist with the enforcement of federal immigration law. These laws generally prohibit Plaintiff's employees from using local funds or resources to assist in the enforcement of federal immigration law, unless required by federal or local law. Plaintiffs in some cases specifically prohibit local law enforcement officers from questioning persons under arrest, for traffic or other non-violent misdemeanor offenses, regarding the persons immigration status or cooperating with Immigration and Customs Enforcement ("ICE") detainer requests, which are supposed to be voluntary, and limit when local law enforcement officers may give ICE advance notice of a person's release from local jail.

6.  Like many other cities and counties, the City of El Cenizo and Maverick County are  a city and county of immigrants, many of whom are undocumented, who come here to live, work, and raise families.  Plaintiffs are safer when all people, including undocumented immigrants, feel safe when their local law enforcement officers can be trusted for reporting crimes or just speaking with them about issues in the community.  Plaintiff's communities are healthier when all residents, including undocumented immigrants, access public health programs, unafraid to seek health care.  And Plaintiffs' communities are economically and socially stronger when all children, including undocumented immigrants, attend

school. The use by the State of City and County resources, for federal immigration enforcement, breeds distrust of local government and officials, who have no power to change federal laws, and can also wrench apart family and community structures that support residents and thus conserve resources.  For these reasons, among others,  Plaintiffs have in some cases directed their employees and officers not to assist the Federal government in enforcing federal immigration law, with limited exceptions.

7.   Plaintiffs face the imminent loss of state funds by the Governor as had been done to Travis County, Texas and impending enforcement action if it does not capitulate to the demand of the President and now the Governor that they relinquish their independence and, instead, help enforce federal immigration law, regardless of legal requirements and procedures. At least one jurisdiction has already succumbed to this presidential fiat. SB 4 relies on Section 1373, which provides that local governments may not prohibit or restrict any government entity or official from "sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status . . . of any individual." Plaintiffs seek declaratory relief that its laws comply with Section 1373.  Plaintiff's do not prohibit or restrict its employees from sharing information about the citizenship or immigration status of any individual with federal immigration officials outside of the voluntary provisions of federal law.

8.  SB 4 is a severe invasion of Plaintiffs' sovereign rights as local governments to form their own laws and policies, without being commandeered by federal agencies and officials, even when officials of the State of Texas deputize themselves as subservient to the federal officials willing to enforce federal officials' dictates regardless of legality.  SB 4 not only interferes with Plaintiffs' ability to direct the official actions of its officers and employees but also threatens new consequences for failing to comply with Section 1373.   In this action, Plaintiffs seeks declaratory relief that SB 4 as it applies to Section 1373 is unconstitutional on its face and as applied to local governments and law enforcement agencies in general and specifically to Sanctuary City laws such as Plaintiff's.  The State of Texas and Governor Greg Abbott may not commandeer state and local officials to enforce federal law, any more than federal officials may do so.

9. The Constitution establishes a balance of power between the state and Federal governments, and the Texas constitution established a balance of power between the State and local governments, as well as among the coordinate branches of Federal government, to prevent the excessive accumulation of power in any single entity and reduce the risk of tyranny and abuse from any government office. In so doing, the Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to

the States respectively, or to the people." This state sovereignty extends to political subdivisions of the State, including cities and counties such as Plaintiffs.

10.  This lawsuit is about sovereignty and a local government's autonomy to devote resources to local priorities and to control the exercise of its own police powers, rather than being forced to carry out the agenda of the Federal government.  Under the Constitution and established principles of federalism, state and local governments have this autonomy. SB 4 purports otherwise to wrest this autonomy from local governments, and a court order is needed to resolve this controversy.

11.  Plaintiffs recognize that there will be additional developments related to SB 4 in the weeks and months to come.  But the consequences threatened by the State of Texas and Governor Greg Abbott  are too severe for Plaintiffs to wait. SB 4 threatens incarceration, removal from office of elected and appointed public officials and civil penalties of up to $25,000 per day for non-compliant entities. The loss of hundreds of thousands of dollars to Plaintiffs and millions in local funds throughout Texas, in enforcing SB 4, that support vital services, together with the loss of community trust, and the loss of Plaintiff's sovereign authority to set and follow its own laws on matters appropriately and historically within the control of local government, are imminently a risk. Plaintiffs have no choice but to seek the intervention of this Court to ensure that its rights and residents are

protected, and that the State of Texas complies with Federal law and the Constitution.

## JURISDICTION AND VENUE

12.  The Court has jurisdiction under 28 U.S.C. Sections 1331 and 1346. This Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202 et seq. 12.  Venue properly lies within the Western District of Texas, San Antonio Division, because Plaintiffs, Maverick County Sheriff and Constables, reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred or will occur in this District. 28 U.S.C. §1391(c)(d).

## PARTIES

13.  Plaintiff, City of El Cenizo, is a municipal corporation organized and existing under and by virtue of the laws of the State of Texas, and is located in Webb County, Texas.   The City El Cenizo is represented by its duly elected Mayor, Raul L. Reyes.

14.  Plaintiff's Maverick county Sheriff Tom Schmerber and Constable  Mario A. Hernandez, are the duly elected public law enforcement officers of Maverick County, Texas.

15.   Plaintiff, LEAGUE OF LATIN AMERICAN CITIZENS, **(hereinafter LULAC),** is the oldest and largest national Latino civil rights organization in the

9

United States.   LULAC is a non-profit organization with presence in most of the fifty states and Puerto Rico.   LULAC has chapters in most counties in Texas and individual members in almost all of the counties and specifically throughout the Western District of Texas including the divisions located in San Antonio, Austin, Waco, Midland, Pecos, Alpine, Del Rio and El Paso.   LULAC has long been active in representing Latino and other minority interests in all regions of the state. Since 1929, LULAC has filed well over one hundred (100) lawsuits on behalf of Latinos in education, discrimination, employment and voting rights in the State of Texas and has been successful in virtually all of them.   LULAC has participated as an original Plaintiff or as a Plaintiff-Intervenor and or Amicus in all state wide redistricting suits for the past forty (40) years and on cases throughout the USA and Texas that affect minorities in general.   LULAC members could  and will be impacted severely both as individual residents in Counties deemed not in compliance with SB 4 and as members of law enforcement.

16.  Defendant is the State of Texas.  The State of Texas is a political subdivision covered under the provisions of the Tenth, Fifth and Fourteenth Amendments of the United States Constitution and is responsible for the actions of its officials with regard to state-wide enforcement of its laws and regulations pursuant to both the Texas and United States Constitutions.

17.   Governor Greg Abbott, the named Defendant, is the duly elected and acting Governor of the State of Texas. Governor Abbott is sued in his official capacity.

18.   Texas Attorney General Ken Paxton, the named Defendant, is the duly elected and acting Attorney General of the State of Texas responsible for the enforcement of the Act.  General Paxton is sued in his official capacity.

## FACTUAL ALLEGATIONS

19.  City of El Cenizo is a Sanctuary City and has been since 1999. In the 1800s, and before Texas was part of the United States, thousands of Central American refugees fled countries in the midst of violent civil wars to seek legal protection in the United States. Against the backdrop of this humanitarian crisis, El Cenizo a border town located on the border of Mexico and the United States began enacting the ordinances that, as later amended, make up City of El Cenizo, Sanctuary City laws.

20.  Numerous other municipalities—including Plaintiffs, New York, Washington D.C., Chicago, Los Angeles, New Orleans, Santa Clara, Minneapolis, Austin, and Houston—have also enacted Sanctuary City laws.   Although the details of their ordinances differ, all of these jurisdictions have adopted laws or policies that limit using local resources to implement and enforce federal immigration laws.

21.  Today, City of El Cenizo's body of Sanctuary City law is contained in a resolution and ordinance adopted by the City of El Cenizo in 1999.

22.   Importantly, this resolution and ordinance do not protect criminals or prevent people from being prosecuted for illegal acts. Instead, they protect children by ensuring that their parents feel safe taking them to playgrounds, to schools, and to seek health care. They protect families from being split up when parents of children born in the United States are deported. And they protect the safety and health of all residents of El Cenizo and Webb County by helping to ensure that everyone, including undocumented immigrants, feels safe reporting crimes, cooperating with police investigations, and seeking medical treatment.

The full text of The City of El Cenizo is attached as Exhibit 1.

23.   The State of Texas is attempting to force the local governments to enforce Section 287.7 of Title 8 of the Code of Federal Regulations that provides that such a detainer "serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." Subsection (d) provides that "[u]pon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department."

24.   A detainer request issued under this section is distinct from a criminal warrant, which Plaintiffs honor consistent with its Sanctuary City laws and which

Plaintiff 's representing Maverick County follow as a matter of policy and law.

25.   A detainer request is not issued by a judge and is not based on a finding of probable cause. It is simply a request by ICE that a state or local law enforcement agency hold individuals after their release date to provide ICE agents extra time to decide whether to take those individuals into federal custody and then deport them. Complying with such a detainer request requires committing scarce law enforcement personnel and resources to track and respond to requests, detain individuals in holding cells, and supervise and feed individuals during the prolonged detention. *And the Federal government has made clear that the local agency bears the financial burden of the detention, providing that "[n]o detainer issued as a result of a determination made under this chapter . . . shall incur any fiscal obligation on the part of the Department." 8 C.F.R. 287(e). 28.*

26.   The City of El Cenizo resolution also prohibits ElCenizo law enforcement officials from responding to a federal immigration officer's request for advance notification of the date and time an individual in El Cenizo's custody is being released.

27.   Finally, as relevant here, the City El Cenizo  provides that law enforcement officials shall not arrest or detain an individual, or provide any individual's personal information to a federal immigration officer, on the basis of an administrative warrant, prior deportation order, or other civil immigration

document based solely on alleged violations of the civil provisions of immigration laws."

28.   The City of El Cenizo also prohibits its employees and law enforcement officials from responding to a federal immigration officer's request for advance notification of the date and time an individual in El Cenizo's custody is being released.   The City of El Cenizo law enforcement officials shall not arrest or detain an individual, or provide any individual's personal information to a federal immigration officer, on the basis of an administrative warrant, prior deportation order, or other civil immigration document based solely on alleged violations of the civil provisions of immigration laws.

## II.

## SECTION 1373

29.   SB 4 together with Section 1373 provides that "a local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status . . . of any individual." 8 U.S.C. § 1373(a).  This restriction exclusively regulates government entities.

30.   Section 1373 requires The City of El Cenizo and the Maverick County Plaintiff's to allow its employees to use city resources, including Plaintiff's tax dollars, to respond to requests for information about citizenship and immigration

status.

31.    On May 31, 2016, in response to a request from the Office of the Attorney

General, the Office of the Inspector General ("OIG") of the Department of Justice

issued a memorandum ("OIG Memo") regarding potential violations of Section

1373 by recipients of funding from the Edward Byrne Memorial Justice Assistance

Grant Program ("JAG"). Memorandum from Michael E. Horowitz, Inspector Gen.,

to Karol V. Mason, Assistant Att'y Gen. for the Office of Justice Programs,

"Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C.

§ 1373 by Grant Recipients" (May 31, 2016),

https://oig.justice.gov/reports/2016/1607.pdf.2

32.    In analyzing the local laws and policies of ten selected state and local

jurisdictions, the OIG demonstrated how the Federal government interprets Section

1373. 2.   The authorizing legislation for the JAG program requires that all grant

applicants certify compliance with the provisions of the authorizing legislation and

all other "applicable federal laws." 42 U.S.C. § 3750 et seq.  The U.S. Department

of Justice, Office of Justice Programs has recently announced that Section 1373 is

an "applicable" law under the JAG authorizing legislation.

33.    For example, though Section 1373 does not expressly address immigration

detainers, OIG expressed concern that local laws concerning the handling of

detainer requests "may have a broader practical impact on the level of cooperation

afforded to ICE by these jurisdictions and may, therefore, be inconsistent with at least the intent of Section 1373." OIG Memo at 7.   It went on to state that local laws and policies that "purport to be focused on civil immigration detainer requests [and say nothing about sharing immigration status with ICE] . . . may nevertheless be affecting ICE's interactions with the local officials regarding ICE immigration status requests." Id. 42.   OIG also stated that such immigration detainer request policies "may be causing local officials to believe and apply the policies in a manner that prohibits or restricts cooperation with ICE in all respects . . . . [which], of course, would be inconsistent with and prohibited by Section 1373." Id. at 8.

34.   In the OIG Memo, the Federal government also endorses the view that local jurisdictions hinder the enforcement of Federal immigration law if they do not honor detainer requests or if they place any other limitations on cooperation with ICE. See, e.g., id. at 4 (stating that even though Section 1373 does not specifically address restrictions by state or local entities on cooperation with ICE regarding detainers, "[a] primary and frequently cited indicator of limitations placed on cooperation by state and local jurisdictions with ICE is how the particular state or local jurisdiction handles immigration detainer requests issued by ICE").

35.   In the OIG Memo, OIG recommended that the U.S. Department of Justice, Office of Justice Programs ("OJP") provide JAG recipients clear guidance on their obligation to comply with Section 1373 and require them to certify that they

c6mply with that section. See id. at 9.

36.    In response to these recommendations, in July and October 2016 OJP issued guidance regarding compliance with Section 1373. See Office of Justice Programs, Guidance Regarding Compliance with 8 U.S.C. § 1373, U.S. Dep't Just. (July 7, 2016) ("OJP July Guidance"); Office of Justice Programs, Additional Guidance Regarding Compliance with 8 U.S.C. § 1373, U.S. Dep't Just. (October 6, 2016) ("OJP October Guidance").

37.    In the OJP July Guidance, OJP stated that to comply with Section 1373, "[y]our personnel must be informed that notwithstanding any state or local policies to the contrary, federal law does not allow any government entity or official to prohibit the sending or receiving of information about an individual's citizenship or immigration status with any federal, state or local government entity and officials." OJP July Guidance at 1 (emphasis added). Accordingly, OJP reads into the law an affirmative obligation to instruct personnel regarding the substance of Section 1373.

38.    In the October 2016 Guidance, OIG stated that all JAG applicants must comply with— and certify their compliance with—Section 1373. OJP October Guidance at 1.

39.    As a sub-grantee of a JAG grant, Plaintiffs are required to certify its compliance with Section 1373.

### III.

### PLAINTIFFS COMPLY WITH SECTION 1373

40.  Plaintiffs comply with Section 1373.

41.  The plain language of Section 1373 states that "a local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status . . . of any individual." 8 U.S.C. § 1373(a).  Nothing in any Plaintiffs policy, resolutions or ordinance limits communications regarding citizenship or immigration status.

42.  Under ICE's Secure Communities program (also known as "S-Comm") whenever an individual is taken into custody, the person is digitally fingerprinted and those fingerprints are sent to the Texas Department of Public Safety and ultimately the FBI.  The FBI forwards the fingerprints to DHS, which allows ICE to determine the immigration status of everyone in Plaintiffs custody.

43.  It is important to note that the Plaintiffs herein would arrest and book the arrested persons in the Bexar, Maverick or the Webb County jails.

44.  Plaintiffs are not required to enforce detainer requests nor are they required to respond to notification requests from the Federal government..  Section 1373 speaks only to communications regarding citizenship and immigration status.  By contrast, Plaintiffs do comply with criminal warrants.

18

45.   Also, complying with civil immigration detainer requests alone, in the

absence of probable cause for the detainer, would violate the Fourth Amendment

of the United States Constitution and could subject Plaintiffs to civil liability for

this harm. See *Arizona v. United States*, 132 S. Ct. 2492, 2509 (2012) (noting that

"[d]etaining individuals solely to verify their immigration status would raise

constitutional concerns"); *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir.

2015); see also *Melendres v. Arpaio*, 695 F.3d 990, 1000-01 (9th Cir. 2012)

(applying the Fourth Amendment to immigration arrests).

46.   Plaintiffs have affirmatively instructed personnel regarding the substance of

Section 1373.

### IV.

### SB 4

**Criminal Penalty §39.07 of the Act**
**Civil Penalties by Fines §752.056 of the Act**
**Civil Penalties by Removal from Office §752.056 of the Act**
**Enforcement Action by Texas AG – et seq.**

47.   On May 7, 2017, Governor Greg Abbott signed into law SB 4 attached as

Exhibit 1. The Governor announced in his live stream Facebook announcement

that the law was designed to end Sanctuary City laws and would require local law

enforcement officers to enforce immigration federal laws or be subjected to both

criminal and civil penalties.   In also allows for the removal of elected and

19

appointed public officials who are not in compliance with the act.   SB 4 declares

that Sanctuary type jurisdictions across Texas who willfully violate Federal law in

an attempt to shield aliens from removal from the United States will be punished.

The Governor in his Facebook announcement and his many public speeches and

press conferences makes it appear as all un-documented immigrants commit

heinous crimes against law abiding Texans and must all be caught and deported

immediately.  SB 4 does not make nor does it speak  due process provisions for

law enforcement officers, local governmental entities or detained individuals in

violation of the Fourth, Fifth, Tenth and Fourteenth amendments of the US Const.

and to the protections afforded to them under the Texas constitution.   The Texas

Defendants interpret Federal laws such as Section 1373 to require Plaintiffs to

detain individuals who would otherwise be released from custody.  Such detentions

would violate, inter alia, the Fourth Amendment.

48.   For all these reasons, the civil penalties of the Act found in §752.056, the

criminal penalties of the Act found in § 39.07 and the removal of public officials

either elected or appointed of the Act found in §752.056   violates the Fourth,

Fifth, Tenth and Fourteenth Amendment of the United States Constitution and the

protections afforded the Plaintiffs under the Texas  constitution. .

49. The Act also mandates enforcement action: The Attorney General of Texas

shall take appropriate enforcement action against any entity that violates the Act or

which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law. Id. (the "Enforcement Directive").

50.   The Enforcement Directive in the Act commandeers local governments by, inter alia, compelling them to enforce federal law under threat of legal action, violating the Fourth, Fifth, Tenth and fourteenth Amendment of the United States Constitution and the protections afforded under the Texas constitution.

51. The Enforcement Directive commandeers state and local governments by, inter alia, compelling them to enforce federal law under threat of legal action, violating Tenth Amendment to the United States Constitution.

## V.

### Defendants Characterize Plaintiffs As Potential Sanctuary Cities That Will Be Civilly and Criminally Punished and As Elected Officials Will Be Removed From Office

52.   In SB 4, Defendants equate Sanctuary Cities with jurisdictions that fail to comply with their interpretation of Federal Law such as Section 1373.

53.   Defendants characterize all local governments as potential Sanctuary Cities or having the laws of Sanctuary Cities without giving a definition of Sanctuary Cities.

54.   For example, in his Facebook signing and announcement on May 7, 2017 of SB 4, Governor Greg Abbott specifically stated that the Act was designed to end all Sanctuary cities across Texas and any laws or policies that had the effect of a

21

Sanctuary City.  Governor Abbott also took to fear mongering by telling Texans that but for one undocumented immigrant, a certain individual victim of crime would still be alive today.  The Governors message was to portray all undocumented immigrants as people who commit heinous crimes.

55.   Not only have Defendants made clear that they consider local governments as potential a Sanctuary Cities, but they have also repeatedly indicated that Sanctuary Cities, by their definition, Plaintiff ordinances and policies, violate federal law and must be punished.

## VI.

### Section 1373 and SB 4 Harm Plaintiffs

### A.   Section 1373(a) Impermissibly Intrudes on State and Local Sovereignty

56.   Section 1373(a) unconstitutionally regulates "States in their sovereign capacity." *Reno v. Condon*, 528 U.S. 141, 151 (2000). It necessarily regulates governments in their capacities as governments. It does not "subject state governments to generally applicable laws." *New York v. U.S.*, 505 U.S. 144, 160 (1992). On the contrary, in every possible application, it targets "government entit[ies] or official[s]" for special treatment. 8 U.S.C. § 1373(a).   SB 4 does the same.

57.   Congress may not command States to provide the Federal government with information "that only state officials have access to," *Printz v. United States*, 521

U.S. 898, 932 n.17 (1997). The Federal government must not regulate its fellow governments in their capacities as governments.

58.   Also, Section 1373 targets government entities' and officials' authority to control their subordinates—an authority at the heart of a government's existence as a government. "[A] State can act only through its officers and agents." *Nevada v. Hicks*, 533 U.S. 353, 365 (2001). "Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). 77. By preventing state and local governments from directing employees how to handle information about citizenship and immigration status, Section 1373 makes it impossible for local jurisdictions freely to choose and clearly to establish how they will handle this information. Under Section 1373, Plaintiffs cannot legislate or regulate that government officials and employees will never share citizenship or immigration information. Yet Congress has no power "to require the States to govern according to Congress' instructions." *New York*, 505 U.S. at 162 (emphasis added).

59.   Section 1373 mandates uncertainty where Sanctuary City laws seek to provide certainty. Because of Section 1373 and SB 4, Plaintiffs cannot tell the public that it will never share information about citizenship or immigration status. Any attempt to impose a uniform rule is fettered by the individual discretion of over millions

employees and officials across the State of Texas. This is not the way Plaintiffs chooses to govern. It is chaos imposed by the Federal government.

60.   To the extent the SB 4 incorporates Section 1373(a), it is invalid for all of the reasons described above.

## B.   Budget Impact of SB 4

61.   SB 4 threat to file criminal charges, civil penalties and removal from office impairs Plaintiffs internal government operations by hampering its budget process. The threatened loss of funds, their liberty as well as their public office renders Plaintiffs unable to prepare a balanced budget for the next fiscal year.

62.  Plaintiffs have already begun the process of adopting the annual budget for the fiscal year beginning on different dates throughout the

Stat.

63.   SB 4 threat of punishment is manifestly coercive. This is why at least one jurisdiction has already changed its policy about immigration detainers in response to SB 4. The day after SB 4 was issued, Travis County and the San Antonio Police Department announced changes in policy.  By heightening undocumented immigrants' concerns that any interaction with Plaintiffs officials will lead to their information being turned over to ICE, SB 4 discourages undocumented immigrants from reporting crimes, seeking public health services, and otherwise engaging with

Plaintiffs programs and services. This threat harms public safety, public health, and Plaintiff's ability to act in what Plaintiffs has determined to be the best interest of its residents, consistent with federal and state law.

64. SB 4 undermines Plaintiff's ability to provide critical services not just to undocumented immigrants, but to all residents. When witnesses and crime victims will not talk to the police, law enforcement suffers and the entire community is less safe. When children are not vaccinated or the sick are not treated for communicable diseases, illness spreads throughout the community. The United States Constitution guarantees states and local governments, such as Plaintiffs, that they may make those decisions and do not have to carry out the Federal government's immigration programs.

65. Plaintiffs have been forced to expend its tax dollars educating Plaintiffs officials and reassuring residents in response to SB 4.

66. As a result, SB 4 causes the very harms Plaintiff's Sanctuary City laws were designed to prevent. SB 4 destroys rather than "foster[s] respect and trust between law enforcement and residents," wastes rather than "protect[s] limited local resources," and discourages rather than "encourage[s] cooperation between residents and City officials, including especially law enforcement and public health officers and employees

**CAUSES OF ACTION COUNT ONE**

## DECLARATORY RELIEF - PLAINTIFFS COMPLY WITH 8 U.S.C. § 1373

67.  Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

68.  Plaintiffs contends that it complies with Section 1373  Plaintiffs do not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

69.  Defendants contend that local governments do not comply with Section 1373.

70.  An actual controversy presently exists between San Francisco and Defendants about whether San Francisco complies with Section 1373.

71.  A judicial determination resolving this controversy is necessary and appropriate at this time.

## COUNT TWO TENTH AMENDMENT – 8 U.S.C. § 1373(a) IS UNCONSTITUTIONAL

72.  Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

73.  On its face, SB 4 together with Section 1373 commandeers  and local governments in violation of the Tenth Amendment to the Constitution by, inter alia, regulating the "locals in their sovereign capacity," *Reno*, 528 U.S. at 151,

limiting state authority to regulate internal affairs and determine the duties and responsibilities of state employees, *Gregory*, 501 U.S. at 460, and ultimately forcing States to allow their employees to use state time and state resources to assist in the enforcement of federal statutes regulating private individuals, *Reno*, 528 U.S. at 151, and to provide information that belongs to the State and is available to them only in their official capacity, *Printz*, 521 U.S. at 932-33 & n.17.

74.   As applied to invalidate state and local Sanctuary City laws which were enacted to further legitimate local interests grounded in the basic police powers of local government and related to public health and safety, Section 1373(a) commandeers state and local governments and violates the Tenth Amendment to the United States Constitution.

### COUNT THREE TENTH AMENDMENT – EXECUTIVE ORDER SECTION  ENFORCEMENT DIRECTIVE IS UNCONSTITUTIONAL

75.   Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

76.   SB 4 contains an Enforcement Directive stating: "The Attorney General shall take appropriate enforcement action against any entity that violates SB 4, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law.  Texas has taken the position that a local jurisdiction that fails to affirmatively assist federal immigration officials—by, for example, refusing to

comply with a detainer request issued under Section 287.7 of Title 8 of the Code of Federal Regulations—hinders the enforcement of federal law and violates Section 1373.

77.   Accordingly, the Enforcement Directive commandeers local governments, violating Tenth Amendment to the United States Constitution by, inter alia, compelling them to enforce a federal program by imprisoning individuals subject to removal at the request of the Federal government when those individuals would otherwise be released from custody.

## COUNT FOUR – ARTICLE I, § 8, CLAUSE 4, AND ARTICLE VI, CLAUSE 2 OF THE UNITED STATES CONSTITUTION – PREEMPTION

78.   The State of Texas lacks authority to issue the directives of SB 4, and to administer and enforce, them because those are matters within the federal prerogative and state actions concerning them are preempted under federal law.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs prays that the Court grant the following relief:

1. Declare that SB 4 is unconstitutional and invalid on its face;

2. Enjoin Defendants from enforcing SB 4 or using it as a condition to punish local governments and and local public officials;

3. Declare that Section 1373(a) is invalid as applied to local Sanctuary City laws, or policies of local government entities, which were enacted for legitimate local purposes related to public health and safety;

4.  Enjoin Defendants from enforcing SB 4 against jurisdictions that enact Sanctuary City laws or policies for legitimate local purposes;

5.  Declare that Plaintiffs comply with federal law;

6.  Enjoin Defendants from designating Plaintiffs as a jurisdiction that fails to comply with SB 4;

7.   Enjoin unconstitutional applications of the Enforcement Directive in  SB 4.

8.  Award Plaintiffs reasonable costs and attorney's fees; and Grant any other further relief that the Court deems fit and proper.

DATED:  May 8, 2017                                   Respectfully Submitted,

Luis RobertoVera, Jr.
LULAC National General Counsel
SBN:  20546740
THE LAW OFFICES OF LUIS ROBERTO
VERA, JR & ASSOCIATES
1325 Riverview Towers
111 Soledad
San Antonio, Texas 78205-2260
210-225-3300 office  210-225-2060 fax
lrvlaw@sbcglobal.net


/s/ *Luis Roberto Vera, Jr.*_____
Luis Roberto Vera, Jr.

Attorneys for the Plaintiffs