IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF SAN ANTONIO TEXAS;<br>REY A. SALDAÑA, in his official capacity<br>as San Antonio City Councilmember;<br>TEXAS ASSOCIATION OF CHICANOS<br>IN HIGHER EDUCATION; LA UNION<br>DEL PUEBLO ENTERO; and WORKERS<br>DEFENSE PROJECT,<br>　　　　Plaintiffs,<br><br>CITY OF AUSTIN,<br>　　　　Plaintiff-Intervenor,<br><br>v.<br><br>THE STATE OF TEXAS; GREG<br>ABBOTT, sued in his official capacity as<br>Governor of the State of Texas; KEN<br>PAXTON, sued in his official capacity as<br>Attorney General of Texas,<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **SA-17-CV-00404-OLG**<br><br>**SA-17-CV-00459-OLG**<br><br>CIVIL ACTION NO. 5:17-cv-00489 |

## CITY OF AUSTIN'S COMPLAINT IN INTERVENTION

The City of Austin files the following Complaint in Intervention against the State of Texas ("Texas"), Governor Greg Abbott, and Texas Attorney General Ken Paxton, pursuant to Federal Rules of Civil Procedure, Rule 24(b).

## I.    SUMMARY

1.    Texas enacted Senate Bill No. 4 (SB 4) to punish cities, counties and college campuses that provide "sanctuary" to undocumented immigrants. The City seeks intervention to challenge several unconstitutional aspects of SB 4, seeking declaratory and injunctive relief under the Supremacy Clause, First Amendment, Due Process Clause and Equal Protection Clause of the U.S. Constitution and the Due Course of Law and Home Rule provisions of the Texas Constitution.

2.      SB 4 violates the Supremacy Clause by invading the federal government's exclusive authority to regulate the ability of foreign nationals to work, travel, study, invest, trade, and safely reside within the United States. By authorizing local police to subject foreign nationals to status determinations, Texas threatens national economic and diplomatic interests. SB 4 conflicts with federal law by removing local discretion concerning immigration enforcement and by increasing sanctions imposed on immigrant communities beyond those authorized by Congress.

3.      Further, SB 4 violates Due Process by imposing a vague regulatory regime on local authorities while threatening draconian penalties for non-compliance. SB 4 violates the First Amendment by penalizing the conduct of local officials who "endorse" a policy that would contradict SB 4's mandates. SB 4 violates Equal Protection by permitting local police to subject perceived undocumented immigrants to enhanced interrogation based upon protected traits including race, ethnicity, national origin, and immigration status.

4.      SB 4 violates the Texas Constitution's Due Course of Law provision by imposing unduly burdensome and oppressive harms on local communities while failing to further any legitimate state interest. Finally, SB 4 violates the Texas Constitution's Home Rule guarantee by interfering with the ability of Austin residents to elect their local representatives and by withdrawing the City's discretion to allocate scarce law enforcement resources and determine the most effective policies for public health and safety.

## II.      ADDITIONAL PARTIES

5.      Intervenor City of Austin is a home-rule city in the State of Texas. The City adopted its original Charter in 1909. In exercise of the City's constitutional authority, the Charter describes the manner in which local officials, including a Mayor and Council, may be elected and removed from office. The Charter also reserves to the City all constitutional home-rule authority including

2

the discretion to allocate resource and determine priorities in furtherance of the welfare, health, morals, comfort, safety, and convenience of the City and its inhabitants.

### III.   ORIGINAL LAWSUIT

6.     Plaintiffs City of San Antonio, *et al.*, filed suit against defendants Texas, Governor Greg Abbott, and Attorney General Ken Paxton, seeking declaratory and injunctive relief to prevent implementation of SB 4. Doc. 1. Plaintiffs allege that SB 4 violates the United States Constitution and other federal constitutional and statutory provisions by invading the field of civil immigration enforcement, encouraging racial profiling, threatening local municipalities with fines and threatening local officials with removal from office for perceived non-compliance with state and federal immigration law. *Id.*, ¶¶ 104-143. Plaintiffs allege that the City of San Antonio, its officials, and its residents—along with organizational plaintiffs Texas Association of Chicanos in Higher Education (TACHE), La Union del Pueblo Entero (LUPE), and Workers Defense Project—will suffer substantial harms if the State is permitted to implement SB 4. *Id.*, ¶¶ 83-103.

7.     As of the time of this filing, no defendants have been served in this case.

### IV.   CITY'S FACTUAL ALLEGATIONS

#### A. Texas has Enacted a Series of Unconstitutional Laws Targeting Hispanic Residents

8.     In recent years, federal courts have ruled on several occasions that the Texas Legislature has intentionally discriminated against African-American and Hispanic Texans.

9.     In *Texas v. U.S.*, 887 F.Supp.2d 133 (D.D.C. 2012), a federal court ruled that the State drew Congressional and State Senate districts with discriminatory intent and to the detriment of African-American and Hispanic voters. In reaching its conclusion, the court took note of "Texas's history of failures to comply" with the Voting Rights Act. 877 F.Supp.2d at 161.

10.     In *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016), the Fifth Circuit held that a voter identification law enacted by the Texas Legislature and signed by Governor Abbott was racially discriminatory under the Voting Rights Act. The Court specifically ruled that Texas' history of racially gerrymandered districts supported a finding of discrimination. 830 F.3d at 257-58.

11.     In *Perez v. Abbott*, ___ F.Supp.3d ___, 2017 WL 1798454 (W.D.Tex. May 2, 2017), a federal court ruled Texas drew Congressional districts with discriminatory intent and to the detriment of Hispanic voters.

12.     The Texas Legislature has also attempted on multiple occasions to pass laws that would punish "sanctuary" jurisdictions, including failed bills in 2011 and 2015. As federal courts have noted, these laws are "racially charged" and target Hispanic Texans. *Veasey v. Perry*, 71 F.Supp.3d 627, 702 (S.D.Tex. 2014).

### B. After Gov. Abbott Stated His Intent to Punish "Sanctuary" Jurisdictions, ICE Conducted Raids to Retaliate Against the Policies of Local Elected Officials

13.     On January 20, 2017, Travis County Sheriff Sally Hernandez announced that beginning February 1, 2017, her office would only comply with civil detainer requests from Immigration and Customs Enforcement (ICE) if those requests are supported by a warrant or if those requests concern people alleged to have committed certain serious crimes, and that she would otherwise decline to fulfill ICE requests that are not backed by probable cause.

14.     Immediately thereafter, Governor Greg Abbott announced that he would withhold grant funding for Travis County in retaliation for Sheriff Hernandez's public statements. Ultimately, Texas denied Travis County $1.5 million in previously awarded funds that would have supported programs for foster youth, veterans, and other at-risk communities.

15.     On January 31, 2017, at the beginning of the Texas legislative session, Governor Abbott made the punishment of "sanctuary" jurisdictions one of his top priorities. He complained that the

federal government was not preventing undocumented immigrants from crossing the border and

claimed that some law enforcement officials "are openly refusing to enforce existing law." He then

announced that "this is the session we will ban sanctuary cities."

16.     On February 2, 2017, Gov. Abbott announced via social media that "Texas will hammer

Travis County" because of its perceived "sanctuary" policies.

17.     On or about February 6, 2017, Gov. Abbott again announced that he would "hammer" the

City of Austin and Travis County. At an appearance on a radio talk show, Gov. Abbott stated:

> I'm putting the hammer down. This is offensive what is going on in Austin, Texas.
> It's actually the county, which is Travis County, which is the county seat of Austin,
> Texas. Travis County has declared what I call "sanctuary city policies." They are
> no longer going to hold for ICE detainers, certain criminals—who are, in fact,
> criminals—they've been arrested before for very serious crimes.

As part of his comments, Gov. Abbott threatened to send public officials to jail—including sheriffs

and mayors—if they fail to comply with civil detainer requests.

18.     Between February 9 and February 12, 2017, ICE began a series of raids that sent waves of

terror through immigrant communities in Austin and across Central Texas. In the Austin and San

Antonio areas, ICE conducted several dozen arrests, the majority of which concerned individuals

who had committed no criminal offense.

19.     On or about March 20, 2017, during a hearing in the United States District Court for the

Western District of Texas, in the matter of *U.S. v. Coronilla-Guerrero*, Case No. 1:17-CR-132-

LY, U.S. Magistrate Judge Andrew W. Austin stated in open court to an ICE official:

> There's been questions about whether Austin's being targeted. We had a briefing
> that your immediate supervisor, I guess, Agent Shaffer, came and briefed me and
> the magistrate judge, Judge Lane, at the very end of January that we could expect a
> big operation, agents coming in from out of town. There was going to be a specific
> operation, and it was at least related to us in that meeting that it was a result of the
> sheriff's new policy that this was going to happen.

20.     The "new policy" referred to by Judge Austin was Travis County's adoption of a policy of not fulfilling certain civil immigration detainer requests.

### C. SB 4 Increases Immigration Enforcement and Threatens to Penalize Municipalities and Policymakers Who Decline to Follow the State's Unconstitutional Demands

21.     Gov. Abbott signed SB 4 into law on May 7, 2017. SB 4 is effective September 1, 2017.

22.     SB 4 changes the obligations of municipalities in regard to civil immigration law. Under federal immigration law 8 U.S.C. § 1357, local authorities maintain discretion whether to fulfill civil detainer requests, and whether they cooperate with ICE by entering written agreements. Under 8 U.S.C. § 1373, local authorities maintain discretion regarding what type of immigration status information to collect, if any.

23.     Under SB 4, local authorities must permit their officers to investigate the immigration status of every person who is lawfully detained or arrested, except in limited situations. Any person in custody must produce a Texas driver's license or "similar government-issued identification" in order to avoid extended detention for purposes of an immigration status check.

24.     Also under SB 4, local authorities must permit their officers to assist or cooperate with federal immigration enforcement activities as is "reasonable or necessary."

25.     SB 4 prohibits any municipality or local official from adopting, enforcing, or endorsing any policy that would prohibit or limit the enforcement of federal immigration law.

26.     If a municipality does not comply with SB 4, it may be subject to fines up to $25,500 for each day of noncompliance after the first day. The State may bring an action to impose these fines if any officer or employee of the municipality fails to comply with SB 4.

27.     If a police chief or sheriff refuses to comply with SB 4 by failing to honor a detainer request, he or she is subject to criminal prosecution for a Class A misdemeanor.

28.    If a local official holding elective or appointive office refuses to comply with SB 4—for example, by endorsing a policy that would limit the enforcement of federal immigration law—he or she will be subjected to a *quo warranto* proceeding resulting in removal from office.

### D.    The City of Austin is a "Welcoming City"; Local Officials Have Publicly Expressed their Support for Immigrant Communities and their Opposition to SB 4

29.    On multiple occasions, the City's Mayor and City Council have adopted resolutions expressing the City's intent to be a "Welcoming City" for immigrants and all communities, regardless of race, religion, ethnicity, status, or national origin. In support of this objective, the City provides social services and other support to local immigrant communities, without regard to perceived immigration status.

30.    Upon introduction of SB 4, multiple elected officials at the City publicly expressed their opposition to SB 4 and its likely negative impact on the local community. For example, Mayor Steve Adler has made public statements emphasizing that SB 4 will have a negative impact on public safety and will drain scarce public resources by authorizing City police officers to conduct civil immigration investigations. Council Member Greg Casar, whose district includes many residents who were born outside of the United States, has participated in demonstrations against SB 4 and has given local and national media interviews highlighting the potential harms of this new law. Council Member Delia Garza has publicly spoken about the threat of racial profiling under SB 4, and how the law gives no guidance as to how local police should decide when to conduct a status determination. And Council Member Pio Renteria gave public testimony describing how the combined effects of SB 4 and recent ICE raids have led to immigrant communities avoiding public settings, including attendance at his church.

### E. Gov. Abbott Reiterated His Intent to Punish "Sanctuary" Cities and Discourage Immigration Across the Texas Border

31.     When Gov. Abbott signed SB 4, his office issued a statement that the law would ban sanctuary cities in Texas.

32.     On May 8, 2017, Gov. Abbott gave a televised interview on *Fox & Friends*. He emphasized that SB 4 focuses on immigration across the Texas border, saying:

> The people who are coming into the United States, especially across the border in Texas, are coming not just from Mexico. In fact, most of the people coming across the border in Texas are not from Mexico. They are from people [sic] around the entire globe. So this has nothing to do with those who are Hispanics . . . .

### F. Most Immigrants Who Cross the Texas Border are of Hispanic Descent

33.     According to Pew Research Center, Mexican citizens make up one-half of the population of undocumented immigrants in the United States. An additional one-quarter of undocumented immigrants are Hispanic peoples from Central America, South America, and the Caribbean. In all, as many as three-quarters of all undocumented immigrants are from Hispanic nations.

34.     The Department of Homeland Security (DHS) reports that the vast majority of undocumented immigrants captured while crossing the southern border of the United States are from Mexico and Central America. In 2014, over 96% of persons apprehended by DHS came from Mexico, Guatemala, Honduras or El Salvador. In 2016, over 94% of persons apprehended came from the same four countries.

### G. Many Residents and Visitors are in Texas Lawfully But Cannot Produce the Forms of Identification Required by SB 4

35.     SB 4 requires proof of lawful immigration status as shown by a Texas driver's license "or similar government-issued identification" to avoid extended detention. Unfortunately, many residents and visitors are present in Texas lawfully but do not have government-issued identification.

36.     Persons lawfully present in the United States range from citizens to tourists. United States citizens are not required to carry identification to prove their status, despite the possibility that a citizen may appear to be a foreign national in the eyes of a local police officer. Some United States citizens are not even aware of their status, given that they may have derived citizenship from other family members.

37.     Many students, professionals, and migrant workers, among others, are lawfully present within the United States but are not issued government identification. In some cases, the documentation indicating their status consists of passport stamps, receipts from the State Department, or court records from an immigration proceeding.

38.     Under SB 4, local police officers without sufficient training or resources will be permitted to subject lawfully present individuals to extended detention for purposes of a status check, in violation of state, federal, and international law. SB 4 goes so far as to incentivize local immigration enforcement—even if such enforcement is in violation of the law—by offering grants and indemnity to compliant jurisdictions.

### H. SB 4 Will Negatively Impacts Trade, Tourism, Investment, and International Relations

#### 1. SB 4 impacts trade and related treaty obligations.

39.     Texas and the City of Austin benefit tremendously from trade with Mexico and other nations in Central America, South America, and the Caribbean.

40.     The United States has entered into multiple treaties that affect its relations with Mexico and other nations in Central America, South America, and the Caribbean.

41.     Among relevant treaties, the North American Free Trade Agreement (NAFTA) provides for the free passage of business professionals across borders. Pursuant to this treaty, the United States is required to provide temporary entry to foreign nationals from Canada and Mexico.

42.     Canadian and Mexican citizens who enter this country under temporary entry provisions of these treaties will not have government identification indicating their lawful presence.

43.     Under SB 4, foreign nationals working in the United States under trade treaties will be subject to increased status checks and status determinations, and will be exposed to increased risk of detention, arrest, and other deprivations.

44.     Depending on how SB 4 impacts police treatment of foreign nationals, Texas' action in promulgating SB 4 may cause the United States to violate its treaty obligations.

### 2. SB 4 impacts tourism in the United States.

45.     Texas and the City of Austin benefit from tourist visits from foreign nationals. The City holds multiple events with international participation each year, including the South by Southwest festival, the Circuit of the Americas F1 racing events, and other events focused on culture, business and technology. These events generate substantial income for the local, regional, and national economies.

46.     In a similar context, Arizona passed Senate Bill 1070 in 2010, seeking to require state police to participate in enhanced immigration enforcement activities. Although the Supreme Court ultimately struck down several aspects of the law, and the State later agreed to not enforce other problematic portions, an international boycott of the State—including decisions by national organizations to not conduct major conventions in the state—caused Arizona to suffer hundreds of millions of dollars in direct and indirect losses.

47.     More recently, the State of North Carolina suffered an economic boycott after its legislature adopted a law discriminating against transgender individuals. Major national organizations withdrew events from the state, including the National Basketball Association All-Star Game and the National Collegiate Athletic Association Final Four Men's Basketball Tournament. In addition

to hundreds of millions of dollars in lost event revenue, the Associated Press estimated the boycott caused the state to lose new business including a PayPal facility that would have added an estimated $2.66 billion to the state's economy.

48.     Several national organizations have already threatened a boycott of Texas based upon the State's threatened implementation of SB 4. Such a boycott would likely cause substantial damage to local, state, and national economies.

49.     Further, the implementation of SB 4 will discourage tourism by foreign nationals who fear they will be subject to enhanced immigration enforcement measures.

### 3.  SB 4 impacts international investment in the United States.

50.     Texas and the City of Austin benefit from investment by foreign nationals. Foreign nationals invest in local businesses, buy land, participate in educational programs, and generally contribute to the short-term and long-term growth of the local, state and national economies.

51.     Implementation of SB 4 will discourage investment by foreign nationals who fear they will be subject to enhanced immigration enforcement measures.

### I.  SB 4 Negatively Impacts Local Communities

52.     The passage of SB 4, together with ICE raids conducted in retaliation for local "sanctuary" policies, has already imposed a severe detrimental impact on the local community.

53.     In recent months, the Austin Police Department has encountered crime victims, or close relatives of crime victims, who are unwilling to engage in the criminal justice system out of fear that they or their close relatives will be at increased risk of immigration enforcement and deportation.

54.     At the Austin Independent School District, students have missed class due to fears that ICE agents will capture undocumented residents on the way to or from school.

55.     Across the City, community organizations that provide for the needs of immigrant communities find themselves assisting families that are afraid to leave their homes, making grocery runs to ensure children have diapers and milk. Organizations that serve Hispanic clients report a sharp drop in people showing up for services. Because residents are declining to access preventative care resources, they are more likely to access emergency room services when they become sick, which will impose an increased burden on local and regional health care providers.

56.     The result of the threatened implementation of SB 4 has been a breakdown in public trust, as affected individuals feel they cannot contact municipal and nongovernmental agencies for fear of immigration enforcement.

57.     In addition, if implemented, SB 4 would dramatically alter the allocation of Austin Police Department resources by requiring officers to determine whether any person held in custody is subject to a request from ICE. In addition, SB 4 would require the Chief of Police to permit City officers to conduct other civil immigration investigations, and would require the Chief to permit City officers to participate in ICE raids and other activities. All told, these requirements would cost the City millions of dollars and would prevent the City from pursuing other law enforcement priorities, including the investigation and prosecution of serious crimes.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION: PREEMPTION

58.     The City hereby incorporates by reference the preceding paragraphs 1 through 57.

59.     SB 4 violates the Supremacy Clause of the United States Constitution by subjecting individuals and municipal agencies to expansive and coercive civil immigration regulations in areas already subject to federal regulation. The United States government has exclusive authority over the field of immigration, and SB 4 invades authority expressly reserved to Congress and the

President. Further, SB 4 directly conflicts with multiple laws and regulations promulgated by Congress, the President, and the Department of Homeland Security.

60.     The President of the United States has inherent authority to conduct foreign affairs. By enacting SB 4, Texas has unconstitutionally invaded the President's authority by subjecting foreign nationals to increased risk of detention, arrest, harassment, and abuse, which impact the reciprocal treatment of United States citizens abroad. SB 4 will deter foreign investment, trade, and tourism in the State of Texas, which will have a detrimental impact on national interests.

61.     The President of the United States recently enacted regulations on the exact same subject matter as SB 4, to wit: Executive Order 13768, purporting to define and penalize "sanctuary jurisdictions." In recent court filings and guidance memoranda, the Department of Justice has confirmed that a city such as Austin may be punished as an impermissible "sanctuary" only if it fails to comply with existing federal immigration law and, in particular, 8 U.S.C. § 1373. Austin is complying with federal immigration law and Section 1373 and is therefore not a "sanctuary" under the federal definition. Because SB 4 would penalize Austin even if it complies with existing law, SB 4 violates the Supremacy Clause by conflicting with Executive Branch policies.

62.     Congress has enacted a comprehensive regulatory scheme to monitor the status of immigrants to the United States and determine when a person's status is unlawful. SB 4 violates the Supremacy Clause by invading the field of immigration status checks and status determinations, areas that Congress has explicitly regulated. SB 4 also directly conflicts with federal laws and regulations that describe how the government shall determine lawful presence.

63.     SB 4 also violates the Supremacy Clause by impacting commerce with foreign nations, an area of regulation expressly reserved to Congress by the United States Constitution. SB 4 will deter foreign nations from conducting trade with Texas, for fear of exposing their citizens to enhanced

immigration enforcement activities, thus resulting in a substantial negative impact on trade between the United States and Mexico, Central America, South America, and beyond.

64.     Finally, SB 4 violates the Supremacy Clause by increasing the sanctions imposed on immigrants and those who appear to be immigrants, even though Congress has already adopted a carefully calibrated immigration status enforcement program. Specifically, SB 4 calls for local police to enforce civil immigration laws by conducting status checks and status determinations, which will result in increased regulation of immigrants and those who appear to be immigrants. Inevitably, this increased regulation will result in increased detentions, arrests, and potential violations of civil liberties. SB 4 also penalizes elected officials in jurisdictions that decline to adopt enhanced civil immigration enforcement activities, which will result in the disenfranchisement of voters in "sanctuary" jurisdictions. Finally, SB 4 penalizes the municipalities themselves by imposing fines on "sanctuary" jurisdictions, thus resulting in an unjustified waste of public resources. In the aggregate and in isolation, these new immigration regulations conflict with existing federal law concerning the determination of lawful presence.

**SECOND CAUSE OF ACTION: VOID FOR VAGUENESS**

65.     The City hereby incorporates by reference the preceding paragraphs 1 through 64.

66.     SB 4 violates the Due Process Clause of the 14th Amendment by failing to define a violation of the statute with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. On one hand, SB 4 purports to enforce existing immigration law; on the other, it attempts to make discretionary decisions—concerning civil detainers, data collection, and cooperation with ICE operations—mandatory requirements. SB 4 would punish any local official who "endorses" a "sanctuary" policy while adopting a definition of "sanctuary" that conflicts with

the federal government's stated position. The law threatens penalties for "limiting" immigration enforcement without providing a manageable standard. SB 4 imposes criminal penalties on police chiefs and sheriffs who knowingly fail to comply with immigration detainer requests for persons in their "custody." SB 4 fails to define the term 'custody' and may hold law enforcement chiefs liable if they release a person based on a reasonable belief they have provided adequate proof of citizenship or lawful immigration status. Finally, SB 4 fails to identify any constitutional manner in which local police can decide whether or not to check the status of detainees or arrestees.

## THIRD CAUSE OF ACTION: FIRST AMENDMENT

67.    The City hereby incorporates by reference the preceding paragraphs 1 through 66.

68.    SB 4 violates the First Amendment by penalizing the protected speech of local officials who "endorse" a policy that would contradict SB 4 mandates. Under federal law, any statute restricting protected speech is deemed to be overbroad and invalid in all of its applications.

## FOURTH CAUSE OF ACTION: EQUAL PROTECTION

69.    The City hereby incorporates by reference the preceding paragraphs 1 through 68.

70.    SB 4 is part of a pattern and practice of unconstitutional laws promulgated by Texas, including at least six laws that, according to federal courts have discriminated against Hispanic Texas residents in violation of the Equal Protection Clause of the United States Constitution. Just as federal courts found that Texas drew congressional districts and legislative districts with the specific intent of disenfranchising Hispanic voters, and just as a federal court found that Texas created "voter ID" requirements with the specific intent of disenfranchising Hispanic voters and voters from other protected classes, Texas promulgated SB 4 with the specific intent of terrorizing Hispanic residents of Texas and depriving such residents of their civil liberties.

71.     SB 4 grants license to police to engage in unconstitutional investigative practices, including profiling based upon race, ethnicity, national origin, and perceived status. Further, because law fails to present any cognizable guidelines for enforcement of suspected civil immigration violations, the State's "savings clause" is illusory. The law cannot be constitutionally applied and should be enjoined in its entirety.

## FIFTH CAUSE OF ACTION: DUE COURSE OF LAW

72.     The City hereby incorporates by reference the preceding paragraphs 1 through 71.

73.     SB 4 violates the Due Course of Law provision contained within the Bill of Rights of the Texas Constitution, as well as substantive due process rights protected by the Fourteenth Amendment of the United States Constitution, by arbitrarily imposing unduly burdensome and oppressive harms on the City of Austin, its officials and its residents, and by substantially restricting protected conduct including freedoms of expression, association, and travel. SB 4 is not rationally related to a legitimate governmental interest because civil immigration enforcement is an entirely federal function. In addition, the statute's actual, real world effect is not rationally related to, and is excessively burdensome as to be oppressive in light of the minimal state governmental interest.

74.     The City of Austin has standing to challenge the constitutionality of SB 4 under the Due Course of Law provision because the City is charged with implementing a statute that it believes is unconstitutional.

## SIXTH CAUSE OF ACTION: HOME RULE

75.     The City hereby incorporates by reference the preceding paragraphs 1 through 74.

76.     The City of Austin is a home-rule City as defined by the Texas Constitution, Article 11, Section 5. Pursuant to the Texas Constitution, the City adopted a Charter that asserts the full power

of self-government, including the power to determine how local officials may be elected and removed from office and the power to promote the welfare, health, morals, comfort, safety, and convenience of the City and its inhabitants.

77.      SB 4 violates the Home Rule provision of the Texas Constitution authority by denying the City the power of self-government, including the right to elect and remove local officials and the right to determine for itself how to exercise its police power. The People of Texas did not grant the Legislature any authority to regulate the immigration status of foreign nationals and to the extent that SB 4 seeks to regulate the manner in which the City provides for the public health and safety of all of its residents and visitors, including foreign nationals, the law is unconstitutional.

## VI.    COMMON QUESTIONS OF LAW AND FACT

78.      The City's claims, enumerated above, arise from common questions of fact and law asserted by plaintiff City of San Antonio in their suit seeking to invalidate SB 4 on constitutional grounds. Common questions of law include the extent to which SB 4 intrudes on federal authority to regulate the status of foreign nationals within the United States' borders; the extent to which SB 4 is vague; and the extent to which SB 4 impedes the protected First Amendment conduct of local officials. Common questions of fact include the manner in which SB 4 will impact local law enforcement activities and how SB 4 will negatively harm local communities.

## PRAYER

The City seeks the following relief:

A.  A declaration that SB 4 is unconstitutional;

B.  A preliminary and permanent injunction barring Texas from enforcing SB 4;

C.  Any further relief that the Court deems fit and proper.

Respectfully submitted,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, CHIEF, LITIGATION

/s/ Michael Siegel
MICHAEL SIEGEL
State Bar No. 24093148
CHRISTOPHER COPPOLA
State Bar No. 24036401
Assistant City Attorneys
City of Austin – Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone: (512) 974-2888
Facsimile: (512) 974-1311
michael.siegel@austintexas.gov
christopher.coppola@austintexas.gov

**ATTORNEYS FOR PLAINTIFF
INTERVENOR CITY OF AUSTIN**