**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CITY OF EL CENIZO, TEXAS, *et al.*, | § | CIVIL Action No.: 5:17-CV-00404-OLG |
| Plaintiffs, | § | (Lead Case) |
| | § | |
| v. | § | CIVIL Action No.: 5:17-CV-00459-OLG |
| | § | (Consolidated Case) |
| THE STATE OF TEXAS, *et al.* | § | |
| Defendants. | § | CIVIL Action No.: 5:17-CV-00489-OLG |
| | § | (Consolidated Case) |
| | § | |

**CITY OF DALLAS'S COMPLAINT IN INTERVENTION**

Now comes the City of Dallas ("Dallas") and files this Complaint in Intervention against the State of Texas ("Texas"), Governor Greg Abbott, and Texas Attorney General Ken Paxton, in his official capacity only, (collectively "Defendants") and would show the Court the following:

**I. Summary**

1. The City of Dallas is not a so-called "sanctuary city" and complies with federal immigration law. Dallas has a proven track record of cooperation with U.S. Immigration and Customs Enforcement ("ICE"). However, the passage of Senate Bill No. 4 ("SB4")[1] will negatively affect more than the so-called sanctuary cities and those that do not comply with federal immigration law. Instead of providing resources, SB4 imposes an unfunded mandate on local governments. Instead of supporting law enforcement, SB4 places law enforcement officers in untenable circumstances, exposes them to personal liability, and fundamentally undercuts their ability to do the jobs they were hired to perform. Instead of promoting the economy and Texas, SB4 serves as a drag. Instead of allowing the formulation of policy at a local level with all points of view raised, SB4 stifles the free exchange of ideas and healthy debate critical to democratic

---

[1] Act of May 7, 2017, 85th Leg., R. S., S.B. 4.

**CITY OF DALLAS's COMPLAINT IN INTERVENTION – Page 1**



ideals by subjecting local governments, officials, and employees to fines, removal from office, and even criminal conviction.  Instead of allowing those with the most knowledge and experience and those who are immediately and directly impacted to determine local priorities, SB4 strips local governments, their elected officials, and their employees of control and discretion.  Its vague provisions provide no guidance to local governments.  For a state fiercely independent of federal authority, SB4 concedes authority and resources to federal officials and deposits the burdens and the risks of enforcing immigration law on local governments. SB4 is contrary to the history and ideals of the State of Texas and this nation, is unconstitutional, and must be struck down.

## II.     Jurisdiction and Venue

2.      The original plaintiffs have properly asserted jurisdiction and venue before the Court.  Intervenor-Dallas raises federal questions and the Court has jurisdiction pursuant to 42 U.S.C. §§ 1331, 1346(a)(2) and remedial authority under 28 U.S.C. § 2201 *et seq*. Venue properly lies in this district because a substantial part of the events or omissions giving rise to the claims occurred or will occur in this district.  28 U.S.C. § 139(b), 124(d)(4).

## III.     Parties and Claims

3.      The original plaintiffs in this action, Civil Action No. 5:17-CV-404-OLG, are City of El Cenizo, Mayor Raul L. Reyes, Maverick County, Sheriff Tom Schmerber, Constable Mario Hernandez; and the Texas State League of United Latin American Citizens.  They have all appeared and agreed to the jurisdiction and venue of the Court.  The original plaintiffs seek declaratory relief that SB4 is unconstitutional and preliminary and permanent injunctive relief to prevent implementation of SB4.

4.      Travis County, Judge Sarah Eckhardt, and Sheriff Sally Hernandez have sought leave to intervene in this action.  They have named the same defendants and seek the same ultimate relief.

5.      The plaintiffs in Civil Action No. 5:17-CV-00459-OLG are El Paso County, Sheriff Richard Wiles, and Texas Organizing Project Education Fund.  They have all appeared and agreed to the

jurisdiction and venue of the Court. They have named the same defendants and seek the same ultimate relief.

6.      The plaintiffs in Civil Action No. 5:17-CV-00489-OLG are the City of San Antonio, Council Member Rey A. Saldana, Texas Association of Chicanos in Higher Education, La Union Del Pueblo Entero, and Workers Defense Project. They have all appeared and agreed to the jurisdiction and venue of the Court. They have named the same defendants and seek the same ultimate relief.

7.      The City of Austin has intervened in this action. It has named the same defendants and seeks the same ultimate relief.

8.      On June 7, 2017, the Court consolidated these lawsuits. Collectively, the plaintiffs and proposed intervenors allege that SB4 is unconstitutional because SB4 is preempted by federal law, is void for vagueness, deprives others of procedural and substantive due process, violates freedom of speech, denies equal protection of laws, violates the Tenth Amendment of the United States Constitution, deprives local governments and their officials of the power of self-government denies them their constitutionally granted discretion, and violates the Voting Rights Act of 1965. All of the Plaintiffs and proposed intervenors allege that they will suffer substantial and irreparable harm if SB4 is permitted to go into effect.

9.      The Defendants, the State of Texas, Governor Greg Abbott, and Texas Attorney General Ken Paxton, are the same in all of the actions and they have already been served and appeared in this consolidated action.


IV.     **Additional Party, Intervenor-City of Dallas**


**CITY OF DALLAS's COMPLAINT IN INTERVENTION – Page 3**

10.     Intervenor, City of Dallas, ("Dallas") is a Texas home-rule municipal corporation, with its principal administrative offices in Dallas County, Texas, at 1500 Marilla, Dallas, Texas 75201, but is otherwise located within five counties.  Dallas's constitutionally authorized charter grants it authority of self-governance including authority "to make and enforce all police, health, sanitary, and other regulations, and pass such ordinances as may be expedient for maintaining and promoting the peace, good government, and welfare of the city, for the performance of the functions thereof, for the order and security of its inhabitants and to protect the peace, lives, health, and property of such inhabitants, and to provide suitable penalties for the violation of any ordinance enacted by the city."  It has the authority to establish the manner in which local officials, including a Mayor and the City Council, may be elected and removed from office; to create a police department and hire its police chief and other peace officers; to allocate resources and determine priorities in furtherance of the welfare, health, morals, comfort, safety, and convenience of Dallas and its inhabitants.

11.     Dallas faces injury-in-fact from the implementation and enforcement of SB4. Dallas's elected and appointed officials face removal from office for "endorsing" policies contrary to SB4 or "immigration law."  Dallas, its elected officials, appointed officials, and employees face complaints, litigation, writs, and substantial civil penalties for alleged non-compliance with SB4. The Chief of Police faces criminal conviction for alleged noncompliance with SB4.  Dallas, its elected officials, appointed officials, and employees all face the chilling effect of the potential of litigation, complaints, removal from office, fines, prosecution, and/or conviction from SB4.  Dallas faces budget uncertainty and costs related to costs for any alleged non-compliance with SB4, additional costs associated with training officials and employees about federal immigration law, additional costs for required cooperation with federal immigration officials, and additional cost for

enforcement of federal immigration law. Dallas, its elected officials, appointed officials, and employees face litigation and adverse judgments for violating the constitutional rights of its residents and non-residents by complying with SB4. Dallas has been and will be further damaged by the impact and effect of SB4 on local law enforcement, tourism, and its economy. Additionally, pursuant to Dallas City Code, the City must defend and indemnify its elected officials, appointed officials, and employees from claims arising from the discharge of their duties. Dallas has already and will further suffer imminent, substantial, and irreparable harm if SB4 is permitted to go into effect.

12.     Dallas also has representative standing to assert the claims regarding SB4 on behalf of its elected officials, appointed officials, employees, and residents who would be directly impacted by SB4. Those individuals have standing to sue in their own right as to SB4's application against them. The interests of these individuals are germane to Dallas's purposes as set forth above. The claims asserted by Dallas and the relief requested by Dallas do not require these individuals' participation. Dallas has standing to assert their interest.

## V.     The Terms and Conditions of SB4.

13.     The other plaintiffs and the proposed intervenors have already outlined the history leading up to the passage and signing SB4. SB4 was introduced in the Senate on January 24, 2017. It eventually was passed by the Texas Senate and House of Representatives. The Governor signed SB4 on May 7, 2017 and it is to become effective as Texas law on September 1, 2017. SB4 has two general prohibitions, a so-called "anti-sanctuary" provision and a provision requiring mandatory compliance with immigration detainer requests.

### A. The "Anti-Sanctuary" Provisions

14.     SB4's "anti-sanctuary" provision is to be implemented by a newly enacted Chapter 752 of the Texas Government Code.  The critical provision is Section 752.053 and applies to local governmental entities.  Subsection (a) states that a local entity may not: (1) adopt, enforce, or endorse a policy under which the entity prohibits or materially limits the enforcement of immigration laws; (2) through a pattern or practice, prohibit or materially limit the enforcement of immigration laws; or (3) through a pattern or practice, intentionally violate the newly enacted provisions in article 2.251 of the Texas Code of Criminal Procedure concerning immigration detainer requests.

15.     As part of the required compliance with subsection (a), subsection (b) states that a local entity may not prohibit or materially limit any of their commissioned peace officers, corrections officers, booking clerks, magistrates, or prosecuting attorneys from (1) inquiring into the immigration status of a person under lawful detention or arrest; (2) restricting the sending, maintaining, or exchanging that person's immigration status; (3) assisting or cooperating with a federal immigration officer as reasonable or necessary, including providing enforcement assistance; or (4) permitting a federal immigration officer to enter and conduct enforcement activities at a jail to enforce federal immigration laws.

16.     "Local entity" is defined as the governing body, not the entity itself, of a municipality, county, special district, or special authority.  The term also includes any officer or employee of the local government.

17.     "Lawful detention" is defined as any detention by a local entity but excludes detention if the sole reason is because the individual is a victim or witness to a criminal offense or is reporting a criminal offense.  However, with the amendment to article 2.13 of the Texas Code of Criminal Procedure, a peace officer may inquire into the nationality or immigration status of a

victim or witness if necessary to investigate the offense, conduct a separate investigation of any other criminal offense, or has probable cause to believe the victim or witness has committed a separate offense.

18.     "Immigration laws" is defined as Texas or federal law "relating to aliens, immigrants, or immigration, including the federal Immigration and Nationality Act (8 U.S.C. Section 1101 et seq.)." "Policy" is defined as including a formal or informal, written or unwritten, rule, order, ordinance, or policy.  Despite the broad definition of local entity, various hospitals, hospitals, health centers, school districts, and charter schools are exempted from SB4.

19.     An intentional violation of the "anti-sanctuary" provision by the governing body, an officer, or an employee of the local government may result in daily civil penalties of up to $25,500 for each violation.  Also, any citizen may file a complaint, not subject to the penalty of perjury, with the attorney general alleging a violation of the "anti-sanctuary" provision.  The attorney general may then seek mandamus or injunctive relief against the governing body, its officials, and/or its employees ordering compliance with SB4.  Finally, an elected or appointed official of a local government may be removed from office if that person violates the anti-sanctuary provision.

20.     SB4 also provides for competitive grants to be awarded to local governments to offset costs "related to enforcing immigration law" and "complying with, honoring, or fulfilling immigration detainer request."  On information and belief, the program is not funded and as a competitive grant is not intended and will not fund all of the costs incurred by all local governments to comply with SB4.


**B.  Immigration Detainer Request Provision**

21.     The other major component of SB4 concerns federal immigration detainer requests and adds article 2.251 to the Texas Code of Criminal Procedure.    It now states that a law enforcement agency that has custody of a person subject to an immigration detainer request issued by ICE "shall comply with, honor, and fulfill any request made in the detainer request."  However, a law enforcement agency is not required to honor the detainer request if the person has proof, such as a Texas driver's license or similar government-issued identification, that he or she is a U.S citizen or has lawful immigration status.

22.     Article 2.13 of the Texas Code of Criminal Procedure was amended and now provides that a peace officer may inquire into the nationality or immigration status of a victim or witness if necessary to investigate the offense, conduct a separate investigation of any other criminal offense, or has probable cause to believe the victim or witness has committed a separate offense.

23.     A sheriff, police chief, constable, or person with primary authority for administering a jail commits a Class A misdemeanor for knowingly failing to comply with a detainer request.  A local government's governing body, officials, and/or employees are subject to civil penalties, mandamus or injunction, or removal from office for a pattern or practice of intentionally not honoring detainer requests.

## VI.     Facts

24.     Dallas is a home-rule municipality and through its charter and ordinances engages in self-government.  Dallas has a mayor elected on a city-wide basis and fourteen council members elected from different single-member district.  Dallas is a city manager type of municipality. Dallas has approximately 13,000 employees.  Dallas has a police department and a marshal's office and has approximately 3,400 peace officers.  Dallas has a detention facility for minor offenders

and those offenders are generally confined at the facility for no more than a few hours.  It is not certified as a jail, does not serve meals, and does not confine offenders more than twenty-four hours.

25.     Through statutes and regulations, the federal government has adopted an extensive, comprehensive, and complicated set of laws dealing with aliens, immigrants, and immigration that comprise "immigration law."  Federal law authorizes the federal government to enter into written agreements with local governments by which its officers may perform the functions of federal immigration officers.  The local government's officers must first be trained on federal immigration law and may only act as federal immigration officers if found to be qualified by the U.S. Attorney General.  8 U.S.C. § 1357(g).  Dallas has not entered into such a written agreement.

26.     Dallas does not provide training to its governing body, officials, or employees, including its peace officers, regarding immigration laws and the enforcement of immigration laws. Dallas's current budget does not provide for any funding for the costs to provide such training.  It is impossible to assess what kind of training would be necessary so that Dallas officials and employees would not "adopt, enforce, or endorse" an informal or formal, written or unwritten, rule, order, ordinance, or policy that "prohibits or materially limits" the enforcement of immigration law.  Dallas does provide training and policies regarding probable cause, warrants, and lawful searches and seizures unrelated to federal immigration laws.

27.     Also, included within the federal immigration regulations is the immigration detainer request.  ICE will typically make a written request of local governments that the U.S. Department of Homeland Security ("DHS") has identified a person who is in the local government's custody whom DHS believes to be an alien/immigrant subject to removal, and requests that the local government maintain custody of the individual for a period of up to 48 hours

(excluding Saturdays, Sundays, and holidays) beyond the time when the individual would otherwise be released from custody.  8 C.F.R. § 287.7.  The request is typically issued by ICE on Form I-247A and is civil in nature. The request is not a warrant issued by a judge and are mere requests.  Compliance by local governments with a detainer request is voluntary.  The federal government does not pay for the extra costs or otherwise indemnify local governments for any extra detention.

28.     Dallas receives ICE immigration detainer requests.  Dallas has tightly limited space available for the detention of any individuals.  Historically, Dallas has complied with all federal immigration laws to the extent applicable to it but Dallas has not attempted to enforce immigration law.

29.     In 1996, Congress passed 8 U.S.C. § 1373.  Pursuant to Executive Order Number 13,768, the President, as clarified by the Attorney General, defined sanctuary jurisdictions as those that failed to comply with Section 1373.[2]   The City of Dallas is in compliance with Section 1373.[3]

30.     The vast majority of immigrants residing in, traveling through, or visiting Dallas, regardless of immigration status are minorities with the largest segment being individuals of Hispanic origin.  Often immigrants will reside in the same neighborhoods.  Dallas has some neighborhoods where approximately 40 different languages are spoken.  The rich diversity of Dallas is part of its wealth and success.

---

[2] Executive Order No. 13,768, Jan. 25, 2017, 82 Fed. Reg. 8799; Memorandum by U.S. Attorney General, May 22, 2017, available at https://www.justice.gov/opa/press-release/file/968146/download
[3] Enforcement of the executive order has been preliminarily enjoined by a federal district court and the case is proceeding. *County of Santa Clara v. Trump*, Nos. 17-CV-00574-WHO, 17-CV-00485-WHO, 2017 WL 1459081 (N.D. Calif. April 25, 2017).

31.     Texas has a population of 27,469,111 residents of which 4,627,888 are foreign born or 16.8% of the Texas population.  The Pew Research Institute estimates there are an estimated 1.65 million undocumented immigrants in Texas.[4]  North Texas is home to the second largest population of immigrants in the State of Texas.  The Dallas, Fort Worth, Arlington Metropolitan Statistical Area has an immigrant population of 1.2 million residents which is 8th among all MSAs in the United States.[5]   In 2014, immigrants in the Metroplex had a combined household income of $33.9 billion dollars, paid $8.4 billion dollars in taxes, had a joint spending power of $25.5 billion dollars and the number of homes owned by immigrants was 267,827.[6]  Dallas County has an approximate immigrant population of 582,200.[7]  The City of Dallas has a population of 1.19 million residents of which 42% are of Hispanic origin.[8]   An estimated one in four City of Dallas residents are foreign born.

32.     As significant contributors to Dallas's economic, social and cultural milieu, Dallas has a number of initiatives to connect immigrants and refugees.  The City of Dallas has an Office of Welcoming Communities and Immigrant Affairs focusing on five key areas including; 1) leadership and communications, 2) civic involvement, 3) economic development and education, 4) equitable access, and 5) safe and connected communities.  Additionally, the Dallas Police Department has been recognized for its outreach initiatives which include, Coffee with Cop, the Unidos Program, the Citizens Police Academy, and other initiatives.  Involvement in the

---

[4] Pew Research Institute, *U.S. Unauthorized Immigration Population Estimates,* Nov. 3, 2016, http://www.pewhispanic.org/interactives/unauthorized-immigrants/.
[5] Migration Policy Institute, U.S. Immigrant Population by Metropolitan Statistical Area, 2011-2015; http://www.migrationpolicy.org/programs/data-hub/charts/us-immigrant-population-metropolitan-area(2015).
[6] New American Economy, http://www.newamericaneconomy.org/city/dallas-fort-worth/.
[7] Migration Policy Institute, U.S. Immigrant Population by State and County, 2011-2015.
[8] United States Census Bureau, American Fact Finder, Dallas City, Texas, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml?src=bkmk (last visited June 13, 2017).

community and assessing the needs of all Dallas residents is at the core of Dallas city governance. A restrictive law like SB4 detracts from the core mission of providing public safety, combating crime, and addressing the needs of all Dallas residents. The Dallas Police Department cooperates with federal law enforcements partners and complies with ICE detainer requests. As a percentage of total ICE requests nationwide, Texas represents less than 1% of declined detainer requests.[9]

33.     While a cooperative law enforcement partner on issues related to combating serious crime, the Dallas Police Department does not enforce U.S. civil immigration laws. The Dallas Police Department has neither the resources nor the capacity nor the statutory authority to detain non-citizens for civil immigration infractions.

## VII.     The Effects and Consequences of SB4

### A.  SB4 is not limited to law enforcement, detentions, arrests, or detainers.

34.     The purported focus of SB4 was limited to criminal immigrants and immigration detainers requests. However, SB4 is not so limited and imposes restrictions on local governments and their officials on any aspect of "immigration law." Federal immigration laws encompass such activities as eminent domain proceedings for construction of such facilities as "the Wall" between Mexico and the United States or other detention facilities; ICE's warrantless searches on public and private property; searches and enforcement actions against employers; the various incarnations of the travel ban; inspection and enforcement actions for failure to maintain required I-9 forms; investigations and prosecution of violations of the tax laws related to aliens and immigrants; addressing refugees and asylum seekers and/or related humanitarian assistance; managing the admission and granting visas and other status to the millions visiting, working, traveling through, and/or residing in the country; and the host of other matters within the federal statutes and

---

[9] Morgan Smith and Jay Root, *Jails Refused to Hold Thousands of Immigrants Sought by Feds*, TEX. TRIBUNE, Jan. 15, 2016.

regulations.  SB4 specifically recognizes that local governments, their officials, and employees are

now charged with enforcing all immigration law.

### B.  SB4 is an impediment and determent to law enforcement.

35.     One of the purported reasons for the enactment of SB4 was to assist law

enforcement and address crime.  It has already had the opposite effect.

36.     Dallas has encountered crime victims and witnesses who are no longer willing to

report crimes, be witnesses, or otherwise take part in the prosecution of a criminal defendant

because of fears they or their relatives will be subject to immigration enforcement actions.  The

number of dismissals of domestic violence cases has increased because the complainants fail to

appear or respond to prosecutors' attempt to contact them.

37.     Dallas anticipates that there will be an increase in criminal cases that can no longer

be successfully prosecuted to a final conviction.  This will in part be due to the loss of witnesses

and victims willing to testify in court.  It will also be in part to the loss of admissible evidence due

to the forced lack of training and policies concerning the proper reasons for detentions, scope of

questions, and length of any detention.  Because of the SB4's express limitations on policies,

Dallas will not be able to train its peace officers as to the circumstances when "inquiring into" a

person's immigration status is not lawful which may result in the suppression of evidence.

38.     Furthermore, the fear caused by SB4 will undermine Dallas's ongoing efforts to

promote community policing and to develop trust and cooperation in neighborhoods with large

immigrant populations.  The trust and cooperation is central to help prevent and investigate crime.

The erosion of trust and cooperation will extend beyond immigrant neighborhoods but reach into

all of Dallas.  Criminals know no boundaries and can be found anywhere in Dallas.  Also, any

police officer's encounter with any minority individual and questioning about citizenship status

will be laced with potential accusations of racial profiling.  For all citizens, questioning about alienage will be offensive and erode trust and cooperation with the police on a much wider scale.

39.     SB4 also will place peace officers in a no-win situation regarding encounters with Dallas residents.  Because of SB4's express limitation on the creation of policies, Dallas will not be able to provide operational training and education to its peace officers as to when is it proper to ask about status, when is further detention proper, what is sufficient information regarding status, what happens if the person does not have legal status, and when is transfer to ICE proper.   The peace officers will be forced to sort those issues out by themselves.  If the officers get the answer wrong they will be subject to possible litigation and personal liability.  The destruction of trust and cooperation will not only place officers at greater risk of accusations but greater risk of harm.

40.     SB4 also places restrictions on the district and county attorneys and deprives them of the necessary discretion as to how to obtain convictions.  Successful prosecution of criminal cases is important to Dallas's overall safety and security which may be harmed by SB4.

41.     In addition, SB4 will require a re-allocation of the already limited, stretched, and strained resources of the Dallas Police Department.  Resources will need to be diverted as to whatever immigration law training is permitted.  Local governments will be required to comply with any ICE request to assist and cooperate including providing enforcement assistance.  Dallas will no longer have discretion to decline assistance and cooperation.  A refusal because resources are demanded elsewhere may trigger a complaint by ICE or someone else to the Texas Attorney General.

42.     Additional detention caused by detainer requests will impose additional costs.  SB4 requirements will force a diversion of limited time and resources from pursuing a primary law enforcement priority of the investigation and prosecution of serious crimes.  SB4 will deny the

discretion for Dallas and its officials to decide the best allocation of resources. Any diversion of law enforcement resources, time, and facilities caused by SB4 will expose Dallas's residents to greater threats. The removal of local discretion will hamper Dallas's ability to provide effective law enforcement to the residents of Dallas.

### C. SB4's damaging effects on education, social service programs, and neighborhoods.

43. At schools within Dallas, students, regardless of their status, have missed class due to fears that they or their relatives will be subject to immigration enforcement actions on the way to or from school. These children will lose the benefit of education which will ultimately cause lost opportunities. At public meetings concerning policies, programs, and governance of Dallas, there has been a decrease in participation in immigrant/minority neighborhoods. SB4 will thwart Dallas's ongoing efforts to broaden involvement by all communities into the governance of Dallas and the participation in its programs.

44. Community non-profit organizations that provide services for minority and immigrant neighborhoods report that families are afraid to leave their homes because of fears they or their relatives will be subject to immigration enforcement actions if they travel away from their homes. This includes a fear to seek preventive medical care or participating in health and social service programs. The delay then translates to the need for emergency care at greater cost and burden to the families and public health care providers. Churches and other places of worship in minority and immigrant neighborhoods report that families have altered their lives out of fear of fear of immigration actions.[10]

---

[10] Elvia Limón, *In Dallas' Hispanic Communities, Fear Seaps Into Everyday Routi*nes, Dallas Morning News, May 24, 2017 https://www.dallasnews.com/news/dallas/2017/05/24/dallas-hispanic-communities-fear-seeps-everyday-routines.

45.     In neighborhoods with greater concentration of immigrants the fear that any encounter with the police could result in immigration action, crime in these neighborhoods will not be reported as frequently and result in greater overall crime.  This coupled with fear to take part in social programs will contribute to the downward cycle of poverty.   Often these neighborhoods are already predominantly minority.  These neighborhoods and their residents will be harmed as a result of SB4.

**D.  SB4 will negatively impact tourism in Texas and Dallas**

46.     SB4 will have an adverse effect on tourism in Texas and in Dallas.  The DFW Metroplex has already seen the cancellation of one approximate 3,000 person event in direct response and boycott because of SB4.  The cancellation is an estimated loss of $3 million.  Dallas owns and operates its own convention center and already is experiencing negative reaction in its marketing efforts in specific response to SB4.   Even the loss of one convention opportunity will result in direct loss of revenues for the Dallas as well the loss of millions of dollars to the economy for the City.

47.     Apart from conventions, Dallas and Texas are tourist destinations for millions of domestic and international visitors each year.  Approximately 48.1 million domestic visitors, and 2.7 million international visitors annually travel to the Metroplex with a large share of those visitors coming to and/or staying in Dallas.   In 2015, this included approximately 1.8 million from Mexico, 63,000 from South America, 21,000 from Central America, and 10,000 from the Caribbean.  Total annual earnings supported from tourism spending in the Dallas area is $4.8 billion and supports approximately 130,000 jobs within the Dallas area.  Again, a large share of the spending and the created jobs are in Dallas.

48.     SB4 will lead to domestic and international visitors fearing profiling and create an unwelcoming environment for travelers and residents alike.   Any decrease in tourism to the Metroplex will be a direct economic loss to Dallas.

**E. SB4's damage to the Dallas's economy and reputation.**

49.     Dallas prides itself as being a city that can compete with any city in the world.   It is the headquarters for famous international, national, and regional businesses.   It has world renowned museums, theaters, and architecture.   It is located by and surrounded by equally dynamic cities.   The Metroplex and Dallas have a vibrant economy based in part on businesses, trade, and investment from around the world.   Dallas's success and continued vitality is in no small way based on the contributions of immigrants.   They represent approximately 25.2% of the labor force and a significant percentage of the business owners.   Their work is critical for construction, food service, education, health care, and social services.

50.     Dallas has recently created its Welcoming Communities and Immigration Affairs office as part of that recognition and to further the contributions of immigrants and refugees to Dallas.   The oppressive and regressive components in SB4 will harm Dallas's economy and reputation.

**F. SB4 shifts responsibility and costs to enforce federal law to local governments.**

51.     SB4 forces local governments to perform federal immigration investigations, enforce federal immigration laws, and detain individuals based solely on questioned immigration status.   SB4 shifts the risks and costs of enforcement of federal law to local governments.

**G. SB4 strips local governments of discretion and authority and attempts to create an atmosphere of fear and second-guessing.**

52.     Through its provisions, SB4 seeks to prevent local governments, their officials, and their employees from speaking, taking lawful actions, and preventing unlawful actions.   It imposes

extreme penal measures on those that have the audacity to speak or act in defiance of SB4's provisions.  SB4 seeks to remove local control and discretion and place it the hands of the State and federal officials without regard to local circumstances.

## VIII.   Causes of Action

### First Cause of Action
### SB4 Violates the Supremacy Clause of the U.S. Constitution.

53.    Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

54.    SB4 violates the Supremacy Clause of the United States Constitution by the State's intrusion and attempt to regulate matters that are exclusively reserved to the federal government. Congress has exercised exclusive authority over the aspects of SB4.  Further and in the alternative, SB4 conflicts and interferes with the implementation and enforcement of federal laws and regulations and has been preempted by Congress.  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

### Second Cause of Action
### SB4 Violates the Due Process Clauses of the U.S. and Texas Constitutions.

55.    Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

56.    SB4 is unconstitutionally vague and overbroad under the due process clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution.  It fails to provide sufficient notice and definiteness to local governments, their elected representatives, their officials, and their employees concerning actions and inactions that could allegedly violate SB4 and result in civil penalties, writ, removal from office, withholding of funding, and conviction.  SB4 is so vague, indefinite, and overbroad that it allows arbitrary and

discriminatory actions.    The Court should declare SB4 is unconstitutional and enjoin its

implementation and enforcement.

57.    The Due Process Clauses of the Fourteenth Amendment of the United States

Constitution and Article I, Section 19 of the Texas Constitution provide procedural and substantive

due process rights to individuals.    SB4 directs and compels local governments, their elected

representatives, their officials, and their employees to ignore those rights in formulating policy or

in taking or declining to take actions. The Court should declare SB4 unconstitutional and enjoin

its implementation and enforcement.

**Third Cause of Action**
**SB4 Violates the Freedom of Speech Clauses of the U.S. Constitution**
**and Texas Constitution.**

58.    Dallas incorporates all of the allegations contained in the previous paragraphs of

this complaint as though fully set forth here.

59.    SB4 violates the First and Fourteenth Amendments of the United States

Constitution and Article I, Section 8 of the Texas Constitution because it restricts and penalizes

the protected speech and actions by local governments, their elected representatives, their officials,

and their employees.  The vagueness and overbreadth of SB4 is demonstrated that "endorsing" a

policy such as speaking out against or legally challenging SB4 is a violation of SB4 that could

result in fines, removal from office, and /or conviction.    The Court should declare SB4

unconstitutional and enjoin its implementation and enforcement.

**Fourth Cause of Action**
**SB4 Violates the Freedom from Unreasonable Searches and Seizures Clauses of the U.S.**
**Constitution and the Texas Constitution.**

60.    Dallas incorporates all of the allegations contained in the previous paragraphs of

this complaint as though fully set forth here.

61.     SB4 violates the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Texas Constitution because each constitutional provision provides that the people shall not be subject to "unreasonable searches and seizures" without a warrant and without probable cause.  SB4 directs and compels local governments, their elected representatives, their officials, and their employees to ignore those rights in formulating policy or in taking or declining to take actions. SB4 denies these persons discretion to formulate instruction and policies to prevent unconstitutional searches and seizures. It forces local governments to seize individuals pursuant to immigration detainer requests regardless of whether the detention may not be authorized by law. The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Fifth Cause of Action**
**SB4 Violates the Equal Protection Clauses of the U.S. and Texas Constitutions.**

62.     Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

63.     The Equal Protection Clauses in the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Texas Constitution provide that the law shall be applied equally to all individuals.  Any law cannot be formulated, applied, or have a disparate impact based on an individual's race, color, national origin, alienage, or religion.  Any law that creates non-suspect classifications between individuals must be rationally based.  There are no compelling, rational, or legal bases for the classifications created in SB4.  SB4 is not narrowly tailored, and SB4 is not the least restrictive means of achieving the requisite government interest. SB4 directs and compels local governments, their elected representatives, their officials, and their employees to ignore individuals' equal protection rights in formulating policy or in taking or declining to take actions. SB4 denies these persons discretion to formulate instruction and policies to prevent equal

rights violations and instead will expose those persons to accusations of racial profiling. Indeed, SB4 creates a likelihood of violation of its statutory duty to have a policy prohibiting racial profiling. The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Sixth Cause of Action**
**SB4 Violates the Contract Clause of the U.S. Constitution**

64.     Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here. The Contract Clause states that "[n]o State shall… pass any… [l]aw impairing the Obligation of Contracts."

65.     On information and belief, various private and public institutions of higher education have contracts with undocumented students. On information and belief, other private individuals, businesses, and entities have contracts with undocumented individuals. SB4 directs and compels local governments, their elected representatives, their officials, and their employees to ignore these persons' rights in formulating policy or in taking or declining to take actions and expose them to liability for claims of impairment of contracts. The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Seventh Cause of Action**
**SB4 Violates Section 2 of the Voting Rights Act of 1965**

66.     Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

67.     SB4's provision for the removal from office of an elected official who is found to have failed to comply with SB4, results in a denial or abridgment of the right to vote of Dallas residents on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength of minorities in Texas. Dallas's elected official include many individuals of varied racial and ethnic backgrounds. Any attempt to remove a minority

elected official based on an alleged violation of SB4 will be an attempt to deprive the minority citizens of their vote by replacing an elected who endorsed a policy contrary to the State's view of immigration laws.

## Eighth Cause of Action
### SB4 violates the Tenth Amendment of the U.S. Constitution

68.      Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

69.      The Tenth Amendment states "the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."  SB4 violates the Tenth Amendment by directing local governments to administer federal regulatory laws, programs, and policies.  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

## Ninth Cause of Action
### SB4 Violates the Home Rule Provisions of the Texas Constitution

70.      Dallas incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

71.      Dallas is a home-rule City as defined by Article 11, Section 5 of the Texas Constitution.  Pursuant to that constitutional authority, the City adopted a charter that asserts the full power of self-government, including the power to determine how local officials may be elected and removed from office and the power to promote the welfare, health, morals, comfort, safety, and convenience of the city and its inhabitants.

72.      SB4 violates the Home Rule provision of the Texas Constitution authority by denying the City the power of self-government, including the right to elect and remove local officials and the right to determine for itself how to exercise its police power. The People of Texas

**CITY OF DALLAS's COMPLAINT IN INTERVENTION – Page 22**

did not grant the Texas legislature any authority to regulate the immigration status of foreign nationals and to the extent that SB4 seeks to regulate the manner in which Dallas provides for the public health and safety of all of its residents and visitors, including foreign nationals, the law is unconstitutional.  SB4 further represents an improper delegation of federal obligations onto local governments.  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Tenth Cause of Action**
**SB4 Violates Article 1, Section 30 of the Texas Constitution.**

73.     Article I, Section 30 of the Texas Constitution provides in part that "a crime victim has … (1) the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process; and (2) the right to be reasonably protected from the accused throughout the criminal justice process."

74.     SB4 impacts crime victims by its amendment of article 2.13 of the Texas Code of Criminal Procedure.  The amendment provides that a peace officer investigating a criminal offense "may inquire as to the nationality or immigration status of a victim of or witness to the offense only if the officer determines that the inquiry is necessary to: (1) investigate the offense; or (2) provide the victim or witness with information about federal visas designed to protect individuals providing assistance to law enforcement.  The new provision continues that a peace officer is not prevented from "(1) conducting a separate investigation of any other alleged criminal offense; or (2) inquiring as to the nationality or immigration status of a victim of or witness to a criminal offense if the officer has probable cause to believe that the victim or witness has engaged in specific conduct constituting a separate criminal offense."

75.     The amendment begs the question, when is the status of any victim or witness going to be relevant to the criminal offense under investigation or any other possible criminal offense?

**CITY OF DALLAS's COMPLAINT IN INTERVENTION – Page 23**

More importantly how is that question not an invasion of the victim's dignity and privacy and an affront to being treated fairly.  Furthermore, creating classifications between crime victims based on citizenship and immigration status does not advance any rational or compelling State interest.

76.     Finally, local governments, including Dallas, and their officials are prohibited from adopting a policy that will protect its peace officers from claims of violating the rights of victims. Local governments, including Dallas, and their officials are prohibited by SB4 from adopting any policy to instruct its peace officers intended to protect crime victims and avoid violation of the constitutional rights of crime victims

77.     SB4 ignores, disregards, and is contrary to the constitutional rights of crime victims. The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Eleventh Cause of Action**
**SB4 Violates Article 1, Sections 11 and 11a of the Texas Constitution.**

78.     Article I, Sections 11 and 11a of the Texas Constitution generally provides that "All prisoners shall be bailable by sufficient sureties" except for certain types of offenses and felons The protections afforded by the Texas Constitution are not limited by any type of classification, except those listed.  In disregard of this constitutional command, SB4 requires that any law enforcement agency that has custody of a person subject to an ICE immigration detainer request must comply with the request.  The typical detainer request is a request to continue to detain the individual and refuse to honor any bail request.  Complying with, honoring, and fulfilling any such request which results in the denial of bail violates this provision of the Texas constitution.  SB4 ignores, disregards, and is contrary to this constitutional right by requiring local governments to detain individuals without bail if they are subject to an immigration detainer request.  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Twelfth Cause of Action**
**SB4 Violates Article 3, Section 1 of the Texas Constitution.**

79.     Article 3, Section 1 of the Texas Constitution prohibits the legislature from delegating legislative power to any other body or authority.  SB4 impermissibly delegates legislative power to the federal government.  The statute grants the federal government authority to determine how local governments make policy, allocate resources, and spend local taxpayer dollars.  It grants the federal government authority to restrict speech of local governmental officials by what the federal government determines to be "immigration law."  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

**Thirteenth Cause of Action**
**SB4 Is Unfunded Mandate and Violates the Texas Constitution.**

80.     Through a series of provisions in the Texas Constitution, the people of Texas have restricted the power of the Texas legislature to create unfunded mandates and to extend governmental credit.  Article II, Section 49 of the Texas constitution states "no debt shall be created by or on behalf of the State …"  Article III, Section 52 states, "Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever …" Article XI, Section 5 requires that "no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent."  Article XI, Section 7 provides that "no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund."     SB4 requires local government to incur debt to spend unknowable sums that are unfunded and not budgeted.  The expenditure of those funds will

be for the benefit of the federal government.  The Court should declare SB4 unconstitutional and enjoin its implementation and enforcement.

## Conclusion and Prayer

81.     The City of Dallas requests that the Court declare that SB4 is unconstitutional, in whole, or alternatively in part; enjoin SB4's effect and implementation by granting a preliminary and permanent injunction; award the City of Dallas it attorney fees and costs; and grant the City of Dallas such other and further relief as the Court determines is just and proper.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY

CITY OF DALLAS, TEXAS

LARRY E. CASTO.
Dallas City Attorney


    s/ Charles S. Estee

CHARLES S. ESTEE

Assistant City Attorney
State Bar of Texas No. 06673600
charles.estee@dallascityhall.com

City Attorney's Office
1500 Marilla Street, Room 7B North
Dallas, Texas  75201
Telephone:     214-670-3519
Telecopier:     214-670-0622

Attorneys for Intervenor City of Dallas

## CERTIFICATE OF SERVICE

I certify that on June 16, 2017, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Western District of Texas using the electronic case failing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

 s/ Charles Estee_____
CHARLES ESTEE
