**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| City of El Cenizo, Texas, *et al.*., )<br><br>Plaintiffs, )<br><br>v. )<br><br>Texas, *et al.*, )<br><br>Respondents. ) | Civil Action No. 5:17-cv-404-OLG |

**STATEMENT OF INTEREST ON BEHALF OF**
**THE UNITED STATES**

CHAD A. READLER
*Acting Asst. Attorney Gen.*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Senior Litigation Counsel*
U.S. Dept. of Justice
Civil Division,
450 5th St. NW
Washington D.C. 20530
Tel: 202-307-4293
Email: Erez.r.reuveni@usdoj.gov

VINITA ANDRAPALLIYAL
JOSEPH DARROW
JOSHUA PRESS
*Trial Attorneys*

Dated June 23, 2017                     *Counsel for the United States*

# TABLE OF CONTENTS

INTERESTS OF THE UNITED STATES ........................................................................1

STATEMENT OF THE CASE ........................................................................................1

I.     STATUTORY AND REGULATORY BACKGROUND ..........................................2

      A.    Federal/State Cooperation Under the INA..................................................3

      B.    Information Sharing Through Section 1373 ................................................5

      C.    Federal Immigration Detainers ..................................................................6

II.    SB 4'S INFORMATION SHARING AND DETAINER PROVISIONS...................11

SUMMARY OF THE ARGUMENT ............................................................................13

ARGUMENT ..............................................................................................................14

I.     SB 4 CONTEMPLATES COOPERATION WITH THE FEDERAL
      GOVERNMENT AND IS NOT PREEMPTED BY FEDERAL LAW OR
      INCONSISTENT WITH THE TENTH AMENDMENT. ...........................................14

      A.    States May Cooperate with Immigration Enforcement at the Request of the
           Federal Government Merits ......................................................................16

      B.    SB 4 is Not Preempted..............................................................................20

      C.    SB 4 is Consistent with the Tenth Amendment ......................................24

II.    IT IS NOT UNCONSTITUTIONAL TO COOPERATE WITH THE FEDERAL
      GOVERNMENT'S DETAINER REQUESTS, WHICH ARE ACCOMPANIED BY
      WARRANTS BASED ON FINDINGS OF PROBABLE CAUSE ............................26

      A.    Complying with detainers issued pursuant to the federal government's detainer
           policies is fully consistent with the Fourth Amendment. ......................26

      B.    Speculation that a detainer might not comport with ICE policy provides no
           support for a facial challenge to SB 4.....................................................30

CONCLUSION ...........................................................................................................37

CERTIFICATE OF SERVICE ....................................................................................38

# TABLE OF AUTHORITIES

## CASE LAW

*Abel v. United States*,
  362 U.S. 217 (1960) ........................................................................................ 8, 29, 34

*Allen v. City of Portland*,
  73 F.3d 232 (9th Cir. 1995) ......................................................................................... 36

*Anderson v. Edwards*,
  514 U.S. 143, (1995) ............................................................................................. 16, 33

*Andrews v. State*,
  962 So. 2d 971 (Fla. Dist. Ct. App. 2007) ............................................................... 11

*Appling County v. Municipal Electric Authority*,
  621 F.2d 1301 (5th Cir. 1980) ................................................................................... 22

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................. *passim*

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ..................................................................................................... 35

*Atwater v. City of Lago Vista*,
  532 U.S. 318 (2001) ..................................................................................................... 34

*Chamber of Commerce of the U.S. v. Whiting*,
  563 U.S. 582 (2011) ........................................................................................... 3, 15, 24

*Chavez v. City of Petaluma*,
  No. 14-CV-5038, 2015 WL 6152479 (N.D. Cal. Oct. 20, 2015) ............................ 36

*Chung Young Chew v. Boyd*,
  309 F.2d 857 (9th Cir. 1962) ........................................................................................ 6

*Columbus v. Ours Garage & Wrecker Service, Inc.*,
  536 U. S. 424 (2002) .................................................................................................... 22

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*,
  644 F. Supp. 2d 1177 (N.D. Cal. 2009) ...................................................................... 7

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ............................................................................................. 15, 23

*De La Paz v. Coy,*
786 F.3d 367 (5th Cir. 2015) ................................................................... 34

*DeCanas v. Bica,*
424 U.S. 351 (1976) ....................................................................... 18, 24

*Duamutef v. I.N.S.,*
386 F.3d 172 (2d Cir. 2004) .................................................................. 8

*Florida Lime & Avocado Growers, Inc. v. Paul,*
373 U.S. 132 (1963) ............................................................................ 15

*Furrow v. U.S. Bd. of Parole,*
418 F. Supp. 1309 (D. Me. 1976) ....................................................... 11

*Galarza v. Szalczyk,*
745 F.3d 634 (3d Cir. 2013) ............................................................ 6, 25

*Garcia v. Speldrich,* No. 13–CV–3,
182, 2014 WL 3864493 (D. Minn. Aug. 6, 2014) ............................... 35

*Gardner v. Cal. Highway Patrol,*
No. 2:14-CV-2730, 2015 WL 4456191 (E.D. Cal. July 20, 2015) ........... 36

*Gonzales v. Peoria,*
722 F.2d 468 (9th Cir. 1983) ............................................................... 19

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) ............................................................................ 25

*Henderson v. Simms,*
223 F.3d 267 (4th Cir. 2000) ............................................................... 36

*Hines v. Davidowitz,*
312 U.S. 52 (1941) .............................................................................. 15

*Illinois v. Andreas,*
463 U.S. 765 (1983) ............................................................................ 28

*In re Korner,*
50 Cal. App. 2d 407 (Cal. Dist. Ct. App. 1942) .................................. 6

*John Doe v. Metro. Police Dep't of D.C.,*
445 F.3d 460 (D.C. Cir. 2006) ............................................................. 36

iii

*Kleindienst v. Mandel,*
 408 U.S. 753 (1972) ................................................................................ 2

*Koog v. United States,*
 79 F.3d 452 (5th Cir. 1996) ................................................................... 22

*La. Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor,*
 745 F.3d 653 (3d Cir. 2014) .................................................................... 5

*Liu v. Phillips*
 234 F.3d 55 (1st Cir. 2000) .................................................................... 35

*Locke v. United States,*
 11 U.S. (7 Cranch) 339 (1813) ............................................................... 35

*Lopez v. I.N.S.,*
 758 F.2d 1390 (10th Cir. 1985) ....................................................... 27, 35

*Lynch v. Cannatella,*
 810 F.2d 1363 (5th Cir. 1987) ............................................................... 19

*Manigault v. Springs,*
 199 U.S. 473 (1905) ............................................................................... 16

*Matter of Lehder,*
 15 I. & N. Dec. 159 (BIA 1975) .............................................................. 6

*Mayor of New York v. Miln,*
 36 U.S. 102 (1838) ................................................................................. 16

*McKinney v. Fields,*
 2010 WL 3583017 (E.D. Mich. Sept. 10, 2010) ................................... 36

*Mercado v. Dallas Cty., Texas,*
 No. 3:15-CV-3481-D, 2017 WL 169102 (N.D. Tex. Jan. 17, 2017) ....... 36

*Miller v. United States,*
 357 U.S. 301 (1958) ............................................................................... 18

*Miranda–Olivares v. Clackamas Cnty.,*
 No. 3:12–cv–02317–ST, 2014 WL 1414305 (D. Or. Apr. 11, 2014) .......... 10, 27, 31, 33

*Morales v. Chadbourne,*
 No. 12-301-M-LDA, 2017 WL 354292 (D.R.I. Jan. 24, 2017) .................. 31

*Moreno v. Napolitano*,
   213 F. Supp. 3d   (N.D. Ill. 2016) ............................................................ 27, 31, 33, 34

*NFIB v. Sebelius*,
   132 S. Ct. 2566 (2012) ................................................................................. 25

*New York v. United States*,
   505 U.S. 144 (1992) ...................................................................................... 25

*Orellana v. Nobles County*,
   15-3852, 2017 WL 72397 (D. Minn. Jan. 6, 2017) ................................... 34

*Parkside Partners v. City of Farmers Branch*,
   726 F.3d 524 (5th Cir. 2013) ....................................................................... 24

*People v Xirum*,
   993 N.Y.S.2d 627 (N.Y. Sup. Ct. 2014) ................................................ 33, 35

*Printz v. United States*,
   521 U.S. 898 (1997) ) ................................................................................... 24

*Puccini v. United States*,
   No. 96-2402, 1996 WL 556987 (N.D. Ill. Sept. 26, 1996) ........................ 36

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 230 (1947) ................................................................................... 3, 15

*Rinaldi v. United States*,
   484 F. Supp. 916 (S.D.N.Y. 1977) ............................................................... 6

*Santos v. Frederick Cnty. Bd. of Comm'rs*,
   725 F.3d 451 (4th Cir. 2013) .................................................................. 18, 35

*Slavik v. Miller*,
   89 F. Supp. 575 (W.D. Pa.), *aff'd*, 184 F.2d 575 (3d Cir. 1950); ............. 6

*Smith v. State*,
   719 So. 2d 1018 (Fla. Dist. Ct. App. 1998) ............................................... 35

*Sturges v. Crowninshield*,
   17 U.S. (4 Wheat.) 122 (1819) .................................................................... 16

*United States v. Bowdach*,
   561 F.2d 1160 (5th Cir. 1977) ..................................................................... 19

*United States v. Capelton,*
   350 F.3d 231 (1st Cir. 2003) ........................................................ 29

*United States v. Celio,*
   945 F.2d 180 (7th Cir. 1991) ........................................................ 29

*United States v. Chaklader,*
   987 F.2d 75 (1st Cir. 1993) .......................................................... 11

*United States v. Craft,*
   535 U.S. 274 (2002) ..................................................................... 22

*United States v. Di Re,*
   332 U.S. 581 (1948) ..................................................................... 18

*United States v. Head,*
   693 F.2d 353 (5th Cir. 1982) ........................................................ 28

*United States v. Hensley,*
   469 U.S. 221 (1985) ..................................................................... 28

*United States v. Hernandez,*
   477 F.3d 210 (5th Cir. 2007) ........................................................ 28

*United States v. Lucas,*
   499 F.3d 769 (8th Cir. 2007) ........................................................ 36

*United States v. Ovando-Garzo,*
   752 F.3d 1161 (8th Cir. 2014) ................................................. 18, 35

*United States v. Phillips,*
   834 F.3d 1176 (11th Cir. 2016) .................................................... 34

*United States v. Powell,*
   732 F.3d 361 (5th Cir. 2013) ........................................................ 28

*United States v. Quintana,*
   623 F.3d 1237 (8th Cir. 2010) ...................................................... 18

*United States v. Ramirez,*
   473 F.3d 1026 (9th Cir. 2007) ...................................................... 28

*United States v. Salerno,*
   481 U.S. 739 (1987) ................................................................ 16, 30

vi

*United States v. Santana-Garcia,*
   264 F.3d 1188 (10th Cir. 2001) ......................................................... 19

*United States v. Vasquez Alvarez,*
   176 F.3d 1294 (10th Cir. 1999) ......................................................... 19

*United States v. Winter,*
   730 F.2d 825 (1st Cir. 1984) ............................................................. 11

*Williams v. Mayor,*
   289 U.S. 36 (1933) ........................................................................... 22

*Wisconsin Public Intervenor v. Mortier,*
   501 U. S. 597 (1991) ......................................................................... 22

## PUBLIC LAW

Pub. L. No. 99-570.............................................................................. 7

## FEDERAL STATUTES

6 U.S.C. § 202 .................................................................................... 5

6 U.S.C. § 291 .................................................................................... 5

6 U.S.C. § 557 .................................................................................... 5

8 U.S.C. § 1101 .................................................................................. 3

8 U.S.C. § 1101(a)(13)(A) ................................................................ 28

8 U.S.C. § 1101(a)(13)(A) ................................................................ 28

8 U.S.C. § 1182(d)(5) ....................................................................... 28

8 U.S.C. § 1225(b)(2)(A) .................................................................... 9

8 U.S.C. § 1226........................................................................ 1, 3, 6, 27

8 U.S.C. § 1226(a) ..................................................................... *passim*

8 U.S.C. § 1226(c)(1) ......................................................................... 8

8 U.S.C. § 1231 .................................................................................. 3

8 U.S.C. § 1231(a) .................................................................. 11, 14, 27, 31

8 U.S.C. § 1231(a)(1)(B)(iii) ................................................................................ 8

8 U.S.C. § 1231(a)(4)(A) .................................................................................... 8

8 U.S.C. § 1252(a) ............................................................................................. 8

8 U.S.C. § 1324(c) ............................................................................................. 4

8 U.S.C. § 1357 ...................................................................................... 3, 14, 21, 34

8 U.S.C. § 1357(a)(2) .................................................................................. 8, 9, 34

8 U.S.C. § 1357(d) .......................................................................................... 6, 7, 17

8 U.S.C. § 1357(g) ............................................................................................ 4

8 U.S.C. § 1357(g)(1) ..................................................................................... 17, 22

8 U.S.C. § 1357(g)(1)-(9) ................................................................................. 4

8 U.S.C. § 1357(g)(2) ......................................................................................... 17

8 U.S.C. § 1357(g)(3) ......................................................................................... 4

8 U.S.C. § 1357(g)(10) ........................................................................... 4, 16, 21, 24

8 U.S.C. § 1357(g)(10)(B) ..................................................................... 17, 18, 20, 21

8 U.S.C. § 1373 ............................................................................................... 5, 22

8 U.S.C. § 1373(c) ............................................................................................. 23

8 U.S.C. § 1644 ................................................................................................ 5, 23

28 U.S.C. § 517 ................................................................................................ 1

## FEDERAL REGULATIONS

8 C.F.R. § 241.2(a)(1) ....................................................................................... 27

8 C.F.R. § 242.2 ................................................................................................ 7

8 C.F.R. § 287.5(c) ............................................................................................ 9

8 C.F.R. § 287.7 ................................................................................................ 7

8 C.F.R. § 287.7(a) ........................................................................................ 6, 9, 17

8 C.F.R. § 287.7(b) .............................................................................................. 9

8 C.F.R. § 287.7(b)(1)-(8) ................................................................................... 9

8 C.F.R. § 287.7(d) .............................................................................................. 6

8 C.F.R. § 242.2 .................................................................................................. 7

8 C.F.R. § 287.7 .................................................................................................. 7

## FEDERAL REGISTER

53 Fed. Reg. 9281 ............................................................................................... 7

53 Fed. Reg. 9283-84 .......................................................................................... 7

62 Fed. Reg. 10312 ............................................................................................. 7

62 Fed. Reg. 10392 ............................................................................................. 7

## ACTS OF CONGRESS

Act of June 25, 1798, c. 58, § 2, 1 Stat. 571 ...................................................... 8

Act of Oct. 19, 1888, c. 1210, 25 Stat. 566 ........................................................ 8

Act of Mar. 3, 1903, c. 1012, § 21, 32 Stat. 1218 .............................................. 8

Act of Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904 ............................................... 8

Act of Feb. 5, 1917, c. 29, § 19, 39 Stat. 889 ..................................................... 8

Act of Oct. 16, 1918, c. 186, § 2, 40 Stat. 1012 ................................................. 8

Act of May 10, 1920, c. 174, 41 Stat. 593 .......................................................... 8

Act of 1950, c. 1024, Title I, § 22, 64 Stat. 1008 ............................................... 8

## LEGISLATIVE HISTORY

Cong. Rec. H6716-03 .......................................................................................... 7

H.R. Rep. No. 104-725 ................................................................................................ 5

## STATE STATUES

Texas Code Crim. Proc. art. 42.039 .................................................................... 13, 30

Texas Code Crim. Proc. art. 42.039(b) .................................................................... 30

Texas Code Crim. Proc. art. 2.251 ................................................................. 12, 20, 23

Texas Code Crim. Proc. art. 2.251(b) ................................................................. 23, 29

## MISCELLANEOUS

DHS, Guidance on State and Local Governments' Assistance in Immigration Enforcement and
    Related Matters (Sept. 21, 2011) (DHS Guidance),
    http://www.dhs.gov/xlibrary/assets/guidance-state-local-assistance-immigration-enforcement.
    pdf ......................................................................................................................... 5

FY 2016 ICE Immigration Removals, U.S. Immigration and Customs Enforcement,
    https://www.ice.gov/ removal-statistics/2016#wcm-survey-target-id ....................................... 5

ICE, "Detainer Policy" (Mar. 24, 2017),
    *available at* https://www.ice.gov/detainer-policy) ....................................... 10, 27, 31

Infographics 2015," U.S. Dep't of Homeland Sec., https://www.dhs.gov/immigration-statistics/
    visualization/2015 ......................................................................................................... 5

The United States respectfully submits this brief pursuant to 28 U.S.C. § 517.[1]

## INTERESTS OF THE UNITED STATES

The United States has a substantial interest in, and long history of, working cooperatively with state and local governments on a range of law-enforcement priorities, including violent crime, homeland security, illegal narcotics, human trafficking, and immigration. On the immigration front, the federal government and local governments cooperate by sharing information regarding aliens who are illegally present in the country and have committed serious crimes, rendering such aliens a removal priority. Texas Senate Bill 4 ("SB 4") represents an important decision by the State of Texas to ensure this cooperation occurs uniformly throughout the State.

Senate Bill 4 prohibits localities in Texas from implementing or maintaining policies that prevent local officials from sharing immigration-related information with the federal government, as those policies disrupt proper enforcement of federal immigration law. Senate Bill 4 also directs local officials in Texas to cooperate with immigration detainer requests issued by the federal government under federal law. U.S. Immigration and Customs Enforcement ("ICE") policy provides that such detainers issue only when there is probable cause to believe that the subject of the detainer is a removable alien, and ICE detainers are accompanied by an administrative warrant issued pursuant to 8 U.S.C. §§ 1226 or 1231. The detention period,

---

[1] 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 518 separately provides that "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so."

moreover, may last no more than 48 hours. State and local cooperation with detainer requests facilitates the orderly transfer of removable aliens to federal custody when they are released from state or local custody. Absent cooperation, removable aliens would be released back into the community. Given the population addressed by immigration detainer requests – generally aliens with pending criminal charges or convictions – they are an important tool to promote public safety. When criminal aliens are released from state or local custody, they have the opportunity to reoffend and abscond. There are also many risks and uncertainties involved when apprehending criminal aliens at-large in the community, rather than in a controlled custodial setting. At-large arrests increase the risk to the officers and agents conducting the arrests, the alien arrested, and members of the public.

These issues involving the sharing of information regarding aliens in state criminal custody, and the lawful cooperation by state and local authorities with federal immigration detainer requests, are of deep concern to the United States and present serious public safety and immigration enforcement issues. For those reasons, the United States is filing this statement of interest. Specifically, the United States writes to address two threshold questions of federal law: (1) whether SB 4 is preempted by federal law or inconsistent with the Tenth Amendment; and (2) whether SB 4 is facially invalid under the Fourth Amendment.

**STATEMENT OF THE CASE**

### I.   STATUTORY AND REGULATORY BACKGROUND

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This broad authority is in part based upon the federal government's power to "establish a[] uniform Rule of Naturalization," *id.* (quoting U.S. Const. art. I, § 8, cl. 4), and in part on the federal

-2-

government's inherent power as a sovereign to control and conduct relations with foreign governments, *id.*, and to police its borders and exclude or deport aliens. *See, e.g.*, *Kleindienst v. Mandel,* 408 U.S. 753, 765-66 & n.6 (1972). Nonetheless, "courts should assume that 'the historic police powers of the states" are not superseded "unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400 (quoting *Rice*, 331 U.S. at 230); *see Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) ("a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act"). The relevant inquiry is not whether Congress affirmatively gave states authority, but rather whether Congress either expressly withdrew authority through the INA or otherwise preempted the exercise of State authority. *See Arizona*, 567 U.S. at 399.

Congress codified and consolidated federal power over immigration in the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 *et seq*. The INA establishes a comprehensive federal statutory regime for the regulation of immigration and naturalization. Among its key provisions, the INA authorizes the Secretary of the Department of Homeland Security with the authority to enforce the immigration laws and "the power and duty to control and guard the borders and boundaries of the United States against the illegal entry of aliens," *id*. § 1103(a)(1), (5); (2) establishes categories of aliens who are barred from admission to the United States, *id*. § 1182, or may be removed from the United States after their admission, *id*. § 1227; (3) grants immigration officials broad discretion as to their enforcement priorities, *id*. § 1252; (4) instructs the Secretary of Homeland Security to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority" under the INA, *id*. § 1103(a)(3); and (5) provides specific authority to arrest and detain certain aliens both with and without warrants, *id*. §§ 1226,

-3-

1231, 1357.

A.      Federal/State Cooperation Under the INA

The INA contemplates state and local cooperation in enforcement of the INA, both in formal and informal respects. Formally, Congress has authorized the Department of Homeland Security ("DHS") to enter into cooperative agreements with States and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, appropriately trained and qualified State and local officers may perform specified functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens. 8 U.S.C. § 1357(g)(1)-(9). The State officers' activities under these agreements are "subject to the direction and supervision of the [Secretary]." 8 U.S.C. § 1357(g)(3).

On a more informal basis, even in the absence of a written agreement, State and local officers may "communicate with the [Secretary] regarding the immigration status of any individual," or "otherwise to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10); *see also* 8 U.S.C. § 1324(c) (authorizing State and local law-enforcement officers to make arrests for violations of the INA's prohibition against smuggling, transporting, or harboring aliens); 8 U.S.C. § 1252c (affirming State and local officers' authority to arrest certain felons who have unlawfully returned to the United States).

Other instances of cooperation include State and local participation in joint task forces with federal officers, providing operational support in executing a warrant, allowing federal immigration officials to gain access to detainees held in State or local facilities and holding an alien in custody so that the federal government can effectuate an arrest, responding to requests for information about when an alien will be released from custody, requesting immigration status

-4-

information from aliens, and sharing that information with federal officials. *See* DHS, Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters (Sept. 21, 2011) (DHS Guidance), http://www.dhs.gov/xlibrary/assets/guidance-state-local-assistance-immigration-enforcement.pdf; *see also Arizona*, 567 U.S. at 410, 412-13. These cooperative efforts are critical to facilitating federal processing of the hundreds of thousands of aliens arrested for immigration violations each year.[2]

B.     Information Sharing Through Section 1373

In 8 U.S.C. § 1373, Congress has also recognized the validity and importance of the reciprocal exchange of information between the federal government and states and localities. Subsections (a) and (b) prevent states and localities from adopting laws or policies that "prohibit[] or in any way restrict" the ability of state and local officers to cooperate with federal officials by sending and receiving "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," or maintaining and exchanging such information. *See also* 8 U.S.C. § 1644 (similar). These provisions were enacted to "to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the [Immigration and Nationality Service (INS)]."[3] H.R. Rep. No. 104-725, at 383 (1996)

---

[2] *See, e.g.*, "FY 2016 ICE Immigration Removals," U.S. Immigration and Customs Enforcement, https://www.ice.gov/ removal-statistics/2016#wcm-survey-target-id (last visited June. 22, 2017) (noting that DHS apprehended 415,816 aliens in fiscal year 2016); "Infographics 2015," U.S. Dep't of Homeland Sec., https://www.dhs.gov/immigration-statistics/visualization/2015 (last visited June. 22, 2017) (462,388 apprehensions in fiscal year 2015).

[3] The INS was part of the Department of Justice until it was abolished and its functions were transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 202, 291, 557; *La. Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 659 (3d Cir. 2014). INA references to the "Attorney General" now generally pertain to the Secretary of Homeland Security, with limited exceptions not relevant to this case. *See id.*

(Conf. Rep. to Welfare Reform Act, codified at 8 U.S.C. § 1644).

To meet these ends, Subsection (c) of 8 U.S.C. § 1373 provides that DHS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." To facilitate responses to such inquiries, DHS has established the Law Enforcement Support Center (LESC), to respond to inquiries around the clock. *See* https://www.ice.gov/lesc.

C.     Federal Immigration Detainers

States may also cooperate with federal immigration enforcement by responding to requests for assistance contained in federal "immigration detainers." An immigration detainer is a document by which DHS provides notice of its intent to assume custody of a removable alien detained in the custody of another law enforcement agency, and seeks state or local cooperation in those efforts. *See* 8 U.S.C. §§ 1226; 1357(d); 8 C.F.R. § 287.7(a) and (d). The Department's current detainer form, the Form I-247A (Immigration Detainer – Notice of Action), sets forth the basis for the agency's determination that it possesses probable cause to believe that the subject is a removable alien. The detainer serves as a request for other Federal, State, local, or tribal law enforcement agencies to inform DHS of a pending release date for the alien in question, and, in certain circumstances, to hold the alien for up to 48 hours thereafter, so that DHS can assume custody in an orderly manner.[4] 8 C.F.R. § 287.7(a) and (d).

Use of detainers in immigration enforcement dates back at least to the 1940s. *See, e.g.*,

---

[4] *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014) (finding that an immigration detainer is in the nature of a "request," rather than a mandate, and Tenth Amendment concerns are therefore not implicated); 8 C.F.R. § 287.7(a) ("The detainer is a request that such agency advise the Department, prior to release of the alien . . . .")

*Chung Young Chew v. Boyd*, 309 F.2d 857 (9th Cir. 1962); *Rinaldi v. United States*, 484 F. Supp. 916 (S.D.N.Y. 1977); *Slavik v. Miller*, 89 F. Supp. 575 (W.D. Pa.), *aff'd*, 184 F.2d 575 (3d Cir. 1950); *In re Korner*, 50 Cal. App. 2d 407, 408-09 (Cal. Dist. Ct. App. 1942); *Matter of Lehder*, 15 I. & N. Dec. 159 (BIA 1975). In 1986, Congress formally codified the longstanding use of immigration detainers by federal immigration officers, in part, for aliens arrested for "violation[s] of any law relating to controlled substances." Pub. L. No. 99-570, § 1751 (codified at 8 U.S.C. § 1357(d)). Notably, through this provision, Congress did not purport to limit the Executive's preexisting, broad detainer authority.[5] *See, e.g.*, *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009) ("[N]othing in the statute ... purports to limit the issuance of immigration detainers to cases where an alien is arrested ... for a violation of any law relating to controlled substances."). The INS subsequently issued regulations governing the issuance of immigration detainers.[6] Those regulations codified the agency's existing authority to request other law enforcement agencies to temporarily maintain custody of the alien in order to permit assumption of custody by the INS. *See* 53 Fed.

---

[5] Rather than define detainers or provide language limiting their contemporary use, Congress instead mandated that an immigration officer promptly determine whether to issue a detainer for an individual who has been arrested for a controlled substance violation by a state, local, or federal law enforcement agency, if the law enforcement agency officer has "reason to believe" that the individual arrested "may not have been lawfully admitted . . . or is not lawfully present in the United States." This provision was added at the urging of law enforcement officials concerned that the former INS did not always lodge detainers for aliens charged with drug-related offenses. *See, e.g.*, 132 Cong. Rec. H6716-03 (daily ed. Sept. 11, 1986), 1986 WL 790075 (statement of Rep. Ackerman as read by Rep. Smith) (stating that the Act's purpose, among other things, was to address "local law enforcement complaints concerning INS' inability to issue judgment on a suspect's citizenship status fast enough to allow the authorities to continue to detain him"). Although this statutory mandate is limited to arrests for controlled substance violations, it presupposes the existence of DHS's general authority to issue detainers.

[6] INS and DHS have amended those regulations on a number of occasions. *See, e.g.*, Dep't of Justice, INS, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, Interim Rule, 62 Fed. Reg. 10312, 10392 (Mar. 6, 1997); 8 C.F.R. §§ 242.2, 287.7 (1988).

Reg. 9281, 9283-84 (Mar. 22, 1988).

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress rewrote much of the INA. Through these amendments, Congress codified and reaffirmed legacy INS and now DHS's preexisting authority to arrest and detain aliens unlawfully present in the United States pending a determination of their removability from the United States. 8 U.S.C. § 1226(a) provides that "on a warrant issued by the [Secretary of DHS], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[7] Section 1226(c) further provides that "the [Secretary] shall take into custody any alien who" has committed certain criminal offenses. *See* 8 U.S.C. § 1226(c)(1). These authorities carried forward the authorities to issue detainers in carrying out the Secretary's arrest authority. In addition, 8 U.S.C. § 1357(a)(2), which was not altered by IIRIRA, provides for warrantless arrests of "any alien in the United States" by immigration officers if there is "reason to believe that the alien so arrested is in the United States in violation of [the immigration laws] and is likely to escape before a warrant can be obtained for his arrest."[8]

Detainers are also essential because immigration law embodies a policy of comity with the states in ensuring criminals serve out their state criminal sentence prior to removal. Congress did not wish to interfere with Federal or State criminal processes, *see, e.g.*, *Duamutef v. INS*, 386 F.3d 172, 179 (2d Cir. 2004), and thus "the [Secretary of Homeland Security] may not remove an

---

[7] These provisions recodify longstanding authority to conduct immigration arrests with an administrative warrant. *See Abel v. United States*, 362 U.S. 217, 233 (1960); 8 U.S.C. § 1252(a) (1952); Act of June 25, 1798, c. 58, § 2, 1 Stat. 571; Act of Oct. 19, 1888, c. 1210, 25 Stat. 566; Act of Mar. 3, 1903, c. 1012, § 21, 32 Stat. 1218; Act of Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904; Act of Feb. 5, 1917, c. 29, § 19, 39 Stat. 889; Act of Oct. 16, 1918, c. 186, § 2, 40 Stat. 1012; Act of May 10, 1920, c. 174, 41 Stat. 593; Internal Security Act of 1950, c. 1024, Title I, § 22, 64 Stat. 1008.

[8] *See* 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.5(c) (listing immigration officers with authority to make warrantless arrests); 8 C.F.R. § 287.7(b) (same, for immigration detainers).

alien who is sentenced to imprisonment until the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4)(A). Accordingly, Congress required the agency to take custody of such aliens after their release from State or local confinement. *Id.* at § 1231(a)(1)(B)(iii) ("removal period begins ... [on] the date the alien is released from detention or confinement"); *see also* 8 U.S.C. § 1226(c)(1) (providing that the Secretary of Homeland Security is to take certain deportable aliens into custody "when the alien is released").

In view of these statutory and historical authorities, DHS's current regulations provide that "[a]ny authorized immigration officer may at any time issue a Form I-247 ... to any other Federal, State, or local law enforcement agency," 8 C.F.R. § 287.7(a), and identify the personnel who may issue immigration detainers, 8 C.F.R. § 287.7(b)(1)-(8).

Earlier this year, ICE updated its detainer policy and DHS then created a new detainer form, Form I-247A, and ICE implemented a comprehensive detainer policy, ICE Policy No. 10074.2.[9] The new detainer form states that that there is probable cause to believe the subject is a removable alien based upon: (1) a final order of removal against the alien; (2) the pendency of

---

[9] This policy to include arrest warrants with detainers has been issued by ICE. While the large majority of immigration detainers are issued by ICE pursuant to the policy, some are issued by CBP, a separate component of DHS whose primary mission is to secure the U.S. border. CBP normally encounters individuals either at or between the ports of entry. In the course of conducting an immigration inspection during those encounters, CBP sometimes determines that an alien is wanted by a state or local entity for prosecution or other similar investigation. CBP, may issue a detainer, for instance, because "DHS transferred the alien to your custody for a proceeding" and in circumstances under which, "upon the completion of the proceeding or investigation . . . DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination." DHS Detainer Form I-247A (Box 2). Given its distinct operational environment, CBP does not issue warrants with its detainers. Because of CBP's operational focus on securing the border, the issues presented by CBP detainers are largely distinct from the issues addressed by the ICE policy. Indeed, the relevant pleadings in this case do not appear to raise questions about CBP policy or its border protection role. The United States thus addresses here only ICE's role conducting immigration enforcement in the interior and in the Texas communities challenging the State law.

ongoing removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks lawful immigration status or, notwithstanding such status, is removable under Federal immigration law; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence indicating that the alien either lacks lawful immigration status or, notwithstanding such status, is removable.[10] Moreover, the I-247A may state that DHS is requesting that an alien whom DHS initially apprehended and then transferred to the custody of a state/local entity for a proceeding or investigation be returned to DHS upon completion of that proceeding or investigation.

The I-247A requests that recipient law enforcement agencies (1) notify DHS as early as practicable before a removable alien is released from criminal custody and (2) maintain custody of the alien for a period not to exceed 48 hours beyond the time he would otherwise have been released to allow DHS to assume custody (without any exception for Saturdays, Sundays, and holidays). Furthermore, ICE Policy No. 10074.2, also released March 24, 2017, directs that all immigration detainers issued by ICE with respect to removable aliens must now be accompanied by either a Form I-200 (Warrant for Arrest of Alien) or a Form I-205 (Warrant of Removal), signed by an authorized immigration officer. *See* ICE, "Detainer Policy" and accompanying hyperlinks (Mar. 24, 2017), available at https://www.ice.gov/detainer-policy. Thus, no ICE detainer request is issued to any law enforcement agency that is not supported by an

---

[10] Prior versions of the detainer form, then Form I-247, indicated that DHS had initiated an investigation to determine whether the alien was subject to removal, rather than had probable cause to believe the alien was already subject to removal. *See, e.g., Miranda–Olivares v. Clackamas Cnty.,* No. 3:12–cv–02317–ST, 2014 WL 1414305, at *9–11 (D. Or. Apr. 11, 2014). This language was removed from the Form I-247 in December 2012, and the current detainer form, Form I-247A, also no longer uses the earlier language.

administrative warrant (and the probable cause determination concerning removability underlying that warrant) that affirmatively authorizes DHS to take that alien into custody. See 8 U.S.C. §§ 1226(a), 1231(a).

Like DHS, other federal agencies also use detainers as a way to request that State or local law enforcement agencies temporarily hold individuals they have arrested until federal authorities can take them into custody. Such circumstances range from being absent without leave from the armed forces, *see, e.g.*, *Andrews v. State*, 962 So. 2d 971, 973 (Fla. Dist. Ct. App. 2007) (recounting how a DD Form 553 was issued for the desertion of a military officer and Federal agents enlisted local police in the search of his residence and arrest), to parole and probation violations, *see, e.g.*, *United States v. Chaklader*, 987 F.2d 75, 77 (1st Cir. 1993) (per curiam); *Furrow v. U.S. Bd. of Parole*, 418 F. Supp. 1309, 1312 (D. Me. 1976), to major felony offenses, *see, e.g.*, *United States v. Winter*, 730 F.2d 825, 826 (1st Cir. 1984).

## II.     SB 4's Information Sharing and Detainer Provisions

This case concerns a State enactment, SB 4, through which Texas has responded to the federal government's invitation to cooperate where permitted. SB 4, Article 1, Section 1.01 amends the Texas Government Code, Chapter 752, to add Subchapter 752, Sections 752.051-752.057. Section 752.053 bars "local entities" or "campus police department[s]" from "prohibit[ing] the enforcement of immigration laws." *Id.*, § 752.053(a). Elaborating, subsection (b) prohibits any policy or "pattern or practice" of prohibiting:

> (1) inquiring into the immigration status of a person  under a lawful detention or under arrest;
> (2) with respect to information relating to the immigration status, lawful or unlawful, of any person under a lawful detention or under arrest, including information regarding  the person's place of birth:
>> (A) sending the information to or requesting or receiving the information from United States Citizenship and Immigration Services, United States Immigration

and Customs Enforcement, or another relevant federal agency;
(B) maintaining the information; or
(C) exchanging the information with another local entity or campus police department or a federal or state governmental entity;
(3) assisting or cooperating with a federal immigration officer as reasonable or necessary, including providing enforcement assistance; or
(4) permitting a federal immigration officer to enter and conduct enforcement activities at a jail to enforce federal immigration laws.

*Id.*, § 752.053(b). Section 752.053 of the Texas Government Code separately provides that in performing any action under section 752.053(b) or other provisions of SB 4, individuals cooperating with federal immigration authorities may not "consider race, color, religion, language, or national origin while enforcing immigration laws except to the extent permitted by the United States Constitution or Texas Constitution."

SB 4 also amends provisions of the Texas Code of Criminal Procedure. Article 2.251, entitled "duties related to immigration detainer requests," provides that law enforcement entities that receive an immigration detainer request -- defined as a "federal government request to a local entity to maintain temporary custody of an alien, including a [DHS] Form I-247 document or a similar or successor form" -- regarding a person in their custody shall:

(1) comply with, honor, and fulfill any request made in the detainer request provided by the federal government; and
(2) inform the person that the person is being held pursuant to an immigration detainer request issued by United States Immigration and Customs Enforcement.

Art. 2.251(a). However, this subsection makes clear that a "law enforcement agency is not required to perform a duty imposed by Subsection (a) with respect to a person who has provided proof that the person is a citizen of the United States or that the person has lawful immigration status in the United States, such as a Texas driver's license or similar government-issued identification." *Id.*, 2.251(b).

SB 4, Article 2, Section 2.03, amends Chapter 42 of the Code of Criminal Procedure, to

add Article 42.039. Article 42.039 separately provides that in criminal cases resulting in a judgment requiring "the defendant to be confined in a secure correctional facility" where the defendant is also subject to an immigration detainer request, the defendant shall "serve in federal custody the final portion of the defendant's sentence, not to exceed a period of seven days," if a correctional officer determines "that the change in the place of confinement will facilitate the seamless transfer of the defendant into federal custody" and "the federal government consent[s] to the transfer of the defendant into federal custody under the circumstances described by this subsection." Art. 42.039(b). Here, again, Texas has responded to Congress and DHS's invitation to cooperate with federal immigration enforcement, including by ensuring the safe transfer of criminals from State to Federal custody in a secure environment, rather than requiring federal officials to make more dangerous arrests on the streets.

## SUMMARY OF THE ARGUMENT

Texas enacted SB 4 to codify the State's decision to cooperate with the federal government in the federal government's enforcement of federal immigration law. The State enactment generally prohibits localities within the State from adopting policies that limit communication with the federal government or otherwise impede the enforcement of federal immigration law, and generally requires State and local officials to comply with requests from the federal government to transfer (and briefly detain, if necessary) state prisoners who are the subject of administrative warrants issued by immigration officers.

Cooperation with federal officials is plainly permitted under the INA and the Constitution. Parties may disagree with the state legislature's policy determinations in enacting SB 4, but nothing in federal immigration law precludes a state from directing law enforcement officers in the state to cooperate with the federal government, rather than merely permitting them

to do so on an *ad hoc* basis. Nor does SB 4 raise Tenth Amendment concerns. No federal statute commandeers state officials, which would be necessary for such a challenge. The Tenth Amendment does not prohibit a state from voluntarily cooperating with the federal government and directing its subdivisions and localities to participate in that cooperation. For Tenth Amendment purposes, whether cooperation is initiated by the State or locality, both are equally voluntary.

Moreover, SB 4 does not violate the Fourth Amendment. The federal detainer requests with which SB 4 directs localities to cooperate are issued under the authority of federal statutes, 8 U.S.C. §§ 1226(a), 1231(a), and 1357, and in all instances where ICE seeks custody of an alien initially apprehended by State or local authorities, include administrative warrants supported by a separate finding of probable cause. Compliance with such detainers does not violate the Fourth Amendment. Speculation that a detainer request might be issued in contravention of federal policies, and might be constitutionally improper, provides no basis for the facial invalidation of a state law that provides for cooperation with a system of warrants authorized by Congress. SB 4 also provides that a law enforcement agency is not required to comply with a detainer request when the subject of a detainer provides proof of citizenship or lawful immigration status, mitigating any concern that it violates the Fourth Amendment.

## ARGUMENT

### I.  SB 4 CONTEMPLATES COOPERATION WITH THE FEDERAL GOVERNMENT AND IS NOT PREEMPTED BY FEDERAL LAW OR INCONSISTENT WITH THE TENTH AMENDMENT.

SB 4's detainer and information sharing provisions are not preempted. Under the Supremacy Clause, federal law "shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary

notwithstanding." Art. VI, cl. 2. Congress may preempt state law in three ways. *See Arizona*, 567 U.S. at 399.

First, "Congress may withdraw specified powers from the States by enacting a statute containing an express pre-emption provision." *Id.* Second, states may be precluded from regulating in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. *Id.* The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive . . . that Congress left no room for the states to supplement it" or where there is a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230. Third, state laws may be preempted when they conflict with federal law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). This includes cases where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963), and where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 64 (1941).

"What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373. Moreover, "courts should assume that 'the historic police powers of the states" are not superseded "unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400 (quoting *Rice*, 331 U.S. at 230); *see Whiting*, 563 U.S. at 607 ("a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act"). The relevant inquiry is not whether Congress affirmatively gave states authority, but rather whether Congress affirmatively withdrew or otherwise preempted State authority through the INA. *See Arizona*,

-15-

567 U.S. at 399. And, where, as here, Plaintiffs raise a pre-enforcement, facial challenge to a state law, Plaintiffs must satisfy the rigorous standard articulated in *United States v. Salerno*, 481 U.S. 739, 746 (1987), by demonstrating "that no set of circumstances exists under which [SB 4] would be valid." *See Anderson v. Edwards*, 514 U.S. 143, 155 n.6, (1995).

### A. States May Cooperate with Immigration Enforcement at the Request of the Federal Government

In our system of dual sovereignty, States possess broad "police powers," which are "an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people." *Manigault v. Springs*, 199 U.S. 473, 480 (1905). The states' status as sovereign governments means they possess all residual powers not abridged or superseded by the United States Constitution. *Mayor of New York v. Miln*, 36 U.S. 102, 139 (1838). This residual authority preexists any statutory invocation or clarification of that authority by a state's legislature. *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 193 (1819) (Marshall, C.J.).

Reflecting these background principles, the federal immigration scheme expressly contemplates that states may assist the federal government with immigration enforcement and makes clear that states can provide the type of assistance that Texas has elected to provide through enactment of SB 4. Even in the absence of a formal agreement, "any officer or employee of a state or political subdivision of a state" may "communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States," and may otherwise "cooperate with the [Department of Homeland Security] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). And governing

statutes and regulations authorize the Department of Homeland Security to seek assistance from state and local officers by issuing "detainers" that request that states or localities transfer such aliens to the federal government. *Id.* § 1226(a), 1357(d); 8 C.F.R. § 287.7(a).

In *Arizona*, the Supreme Court held that the INA "put[s] in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances," and that the INA preempted a provision of state law that had "nonetheless authoriz[ed] state and local officers to engage in these enforcement activities as a general matter" without "any input from the Federal Government about whether an arrest is warranted in a particular case." 567 U.S. at 408, 410. The Court was clear, however, that some of the "specific, limited circumstances" in which state detention of aliens for possible removability does *not* conflict with the INA include (1) when the state or locality enters into an agreement with the federal government to assist in the enforcement of the immigration laws, see *id*. at 408-409 (citing 8 U.S.C. 1357(g)(1)); and (2) even absent such an agreement, when the state or locality is "cooperat[ing] with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id*. at 409 (quoting 8 U.S.C. § 1357(g)(10)(B). Indeed, the Court was careful to distinguish such federal-state cooperation from the state law at issue in *Arizona*, which authorized a "*unilateral* decision of state officers to arrest an alien for being removable *absent any request, approval, or other instruction from the Federal Government*." *Id*. at 410 (emphasis added).

Under *Arizona*, state or local cooperation with a detainer request is consistent with the INA and is not otherwise preempted because it involves this kind of cooperation, not a "unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Id*. Indeed, a detainer is itself a

"request … from the Federal Government" to a state or locality to assist the federal government's efforts to take a particular alien into custody, *id.*, by temporarily holding the alien for a short time so that the federal government can effectuate custody in an orderly manner. Accordingly, such cooperation is well within the cooperative authority *Arizona* concluded that the States retain.

Since the Supreme Court's decision in *Arizona*, federal appellate courts have approved state cooperation with immigration enforcement, including through detention when requested by federal officials or authorized by federal statute. *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 465-67 (4th Cir. 2013) (recognizing that Court had upheld detention by state officer when "at ICE's express direction"); *accord United States v. Ovando-Garzo*, 752 F.3d 1161, 1164-65 (8th Cir. 2014) ("no written agreement is required for a state official to cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States" so long as the actions are "not unilateral"); *see also United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (holding that a state officer was authorized under Section 1357(g)(10)(B) to detain an alien at DHS's behest until DHS could take him into custody the following day).

Even before *Arizona*, however, it had "never [been] held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* preempted by this constitutional power, whether latent or exercised." *DeCanas v. Bica*, 424 U.S. 351, 355 (1976). *See United States v. Di Re*, 332 U.S. 581, 589 (1948); *Miller v. United States*, 357 U.S. 301, 305-06 (1958) (lawfulness of a warrantless arrest for violation of federal criminal law by state peace officers "is to be determined by reference to state law. And multiple federal courts of appeal addressing state or local authority to assist with immigration enforcement – including the

-18-

Fifth Circuit – have held that states retain authority to make arrests for civil immigration offenses. *See United States v. Santana-Garcia*, 264 F.3d 1188, 1190-94 (10th Cir. 2001); *United States v. Vasquez Alvarez*, 176 F.3d 1294, 1295-1300 (10th Cir. 1999); *Lynch v. Cannatella*, 810 F.2d 1363, 1366 & 1371 (5th Cir. 1987); *United States v. Bowdach*, 561 F.2d 1160, 1167-68 (5th Cir. 1977); *see also Gonzales v. Peoria*, 722 F.2d 468, 474 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999). As the Fifth Circuit explained, "[n]o statute precludes other federal, state, or local law enforcement agencies from taking other action to enforce this nation's immigration laws.'" *Lynch*, 810 F.2d at 1371. After *Arizona*, that authority at the least remains intact where it is exercised in response to a "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410.

Accordingly, as *Arizona* and its progeny make clear, Federal law does not preempt a state's authority to continue detaining an alien for violations of civil immigration law, at least where such arrests respond to *requests* for such assistance from the federal government and are otherwise lawful under the Fourth Amendment. *See* 567 U.S. at 410 (discussing examples). And that is precisely what a state or local law enforcement officer does when complying with the federal government's request contained in an immigration detainer or general inquiries concerning immigration status.[11]

---

[11] Many states have consequently chosen to work with the federal government by sending biometric information (such as fingerprints) of all persons booked in their local jails, allowing local enforcement agencies to better understand whom they are detaining. DHS relies upon numerous partnerships with State law-enforcement agencies to identify certain removable aliens. Specifically, State and local arrestees' fingerprints are voluntarily sent to the Federal Bureau of Investigation's ("FBI") National Crime Information Center, which uses its Integrated Automatic Fingerprint Identification System to send those fingerprints to DHS's Automated Biometric Identification System. This automatically notifies ICE whenever the fingerprints of a State or local arrestee match those of a person previously encountered and fingerprinted by immigration officials. ICE will then determine whether the person is an alien present in the United States

**B. SB 4 is Not Preempted**

SB 4 reflects the State of Texas's permissible determination that state and local officers in Texas will cooperate with federal officials in the ways approved by *Arizona* and authorized by 8 U.S.C. § 1357(g)(10). SB 4 provides that law enforcement agencies in Texas must comply with detainer requests issued by the federal government (except as to people who have proof that they are citizens or have lawful immigration status), Texas Code Crim. Proc. art. 2.251. Because a detainer request is always a direct request for detention by federal immigration officials, the State's decision to cooperate with such requests presents no serious preemption issue. SB 4 also prohibits localities or police departments within the state from enacting policies that prohibit or materially limit cooperation in the enforcement of immigration laws, Texas Gov't Code § 752.053. Again, because this policy simply provides for cooperation by the State and its instrumentalities with federal officials, it presents no preemption concerns.

First, the federal immigration laws permit state and local officials to cooperate with detainer requests or otherwise to assist federal officials in enforcing federal immigration law, and such cooperation does not obstruct the federal immigration enforcement scheme. The INA specifically provides that state and local officers may "communicate with the [Secretary] regarding the immigration status of any individual," or "otherwise [] cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id*. § 1357(g)(10). SB 4 is therefore fully consistent with the approach Congress has approved. Importantly, the INA does not restrict the extent to which a state government can direct state and local officers to cooperate with DHS. Cooperation is permitted by the INA irrespective of whether the cooperation is directed by a state statute or by a

illegally or is otherwise removable.

local sheriff: in neither case does it exceed the bounds of the cooperation permitted by Congress. Plaintiffs evidently disagree with their state government's policy determination to cooperate with the federal government, but they cannot transform that disagreement into a claim of federal preemption.

Second, the fact that Texas has decided to ensure cooperation statewide through a statute, instead of leaving cooperation to *ad hoc* decision-making at the local level, does not raise a preemption issue. The INA does not require *ad hoc*, as opposed to more systematic, forms of cooperation by states and localities when requested by DHS, and nothing in the INA limits states to cooperation only where decisions are made at the local level. Indeed, the purposes of 8 U.S.C. § 1357(g)(10) in encouraging state and local cooperation are furthered by a state law mandating communication with federal officials and other "cooperat[ion] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* Nothing in that provision suggests it permits *ad hoc* efforts at cooperation by individual officers but not state enactments to provide that same type of cooperation by all state officers. To be sure, Section 1357(g)(10) does not specifically mention state legislation, but that simply reflects that federal law is appropriately indifferent to how a state manages its affairs, including whether a state decides to cooperate statewide, as Texas has done, or leaves the decision to cooperate with local entities or individual officers. Indeed, the Supreme Court has explicitly relied on section 1357(g)(10) to uphold a state enforcement mandate promulgated through legislative action against a facial challenge, observing that the state could implement that mandate lawfully by cooperating with the federal government. *Arizona*, 567 U.S. at 413. The Court explained that Sections 1357 and 1373 evince a clear intent to encourage cooperation, such that the "federal scheme thus leaves room for a [statewide] policy requiring state officials to contact ICE as a

-21-

routine matter." *Id*.[12]

Third, the penalties SB 4 imposes on state officers who prohibit their employees from sharing information with the federal government or cooperating with detainer requests do not create a preemption issue, but are a matter of internal state management. While it is true that 8 U.S.C. 1373, which addresses the sharing of information between federal, state, and local governments, does not establish penalties for failure to comply with the provision, a state may direct the operations of its officials and discipline them for failing to comply with the state direction without implicating federal preemption principles or requiring congressional approval. *See, e.g.*, *Wisconsin Public Intervenor v. Mortier*, 501 U. S. 597, 607-608 (1991) (state municipal subdivisions "are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion"); *Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U. S. 424, 433 (2002); *Koog v. United States*, 79 F.3d 452, 460 (5th Cir. 1996) ("Whatever the outer limits of state sovereignty may be, it surely encompasses the right to set the duties of office for state-created officials and to regulate the internal affairs of governmental bodies.").[13] Further, the penalty provision held invalid in *Arizona*, 567 U.S. at 401, is not like this provision because it regulated *private persons* in matters regulated by the INA, whereas the SB 4 provision addresses management of the State's own instrumentalities.

---

[12] Any suggestion that Congress's consideration of – but decision not to pass – additional forms of cooperation demonstrates Congress's intent to explicitly limit cooperation is wrong. *See United States v. Craft*, 535 U.S. 274, 287 (2002) (explaining why "congressional inaction lacks persuasive significance"). And given sections 1357(g)(10) and 1373, it is untenable to argue that Congress actually sought to limit cooperation, rather than, as *Arizona* holds, invite it. *See* 567 U.S. at 412-13

[13] The Supreme Court has stated that a "municipal corporation, created by a state for the better ordering of government, has no privileges . . . under the federal constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor*, 289 U.S. 36, 40 (1933).

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000), underscores this conclusion. In *Crosby,* the state's attempt to discourage private entities from doing business with Burma interfered with the federal government's calibrated scheme of sanctions against that nation. But a state's exercise of control over its subordinates to ensure cooperation with the federal government as requested by Congress -- however the State chooses to implement that control over its instrumentalities -- does not interfere with the federal government's effort to regulate immigration, and no party makes an argument to the contrary.

Fourth, federal immigration law does not prohibit state or local officials from inquiring about immigration status by taking appropriate action under Texas Code of Criminal Procedure., Art. 2.251(b) and Texas Government Code, §§ 752.053(b)(1), (2)(A). The Supreme Court in *Arizona* upheld against a facial preemption challenge provisions that required State officers to make "reasonable attempt[s] to determine the immigration status" of anyone lawfully detained, and also to verify with DHS whether the individual was unlawfully present in the United States. *See* 567 U.S. at 413. The Court held that "Congress has done nothing to suggest it is inappropriate to communicate with ICE in these situations," and the "federal scheme thus leaves room for a policy requiring state officials to contact [or receive information from] ICE as a routine matter." *Id.*; *see* U.S.C. § 1373(c) (directing that federal authorities "shall respond" to any inquiry by a state or locality "seeking to verify or ascertain the citizenship or immigration status of any individual within [its] jurisdiction" by "providing the requested verification or status information.").

Here, the challenged provisions simply reject policies that preclude inquiring about status (§ 752.053(b)(1)) or provide for sharing information with DHS (§ 752.053(b)(2)(A)), and provide that the localities must cooperate with detainers except where the alien furnishes proof of

citizenship or lawful immigration status (Art. 2.251(b)). Those provisions fall comfortably within the holding in *Arizona*, and the exception simply sets a reasonable term under which the State and its instrumentalities will cooperate with detainer requests to help avoid making mistakes. Such an accommodation cannot plausibly be compared to the ordinance invalidated in *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) (en banc), which contemplated that a state court would *unilaterally* make a binding determination about immigration status that would govern whether an individual was allowed to rent an apartment in the city. *Id.* at 534 (plurality opinion).

Finally, the suggestion that Congress has completely "occupied the field" with respect to immigration enforcement such that cooperative State or local action is preempted cannot be squared with Section 1357(g)(10) – which invites state and local cooperation – or the Supreme Court's cases addressing preemption and immigration enforcement. *See, e.g.*, *Arizona*, 567 U.S. at 413; *Whiting*, 563 U.S., at 609-610. As the Court recently reaffirmed, "courts should assume that the historic police powers of the states are not superseded unless that was the clear and manifest purpose of Congress." *Arizona*, 567 U.S. at 400.

**C.  SB 4 is Consistent with the Tenth Amendment**

The Tenth Amendment limits the federal government's authority to direct state and local officers to take particular actions; it does not limit the prerogatives of the states to provide direction to their own officials. To the contrary, the Tenth Amendment expressly *reserves* rights for the states. *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."). It is therefore unsurprising that Plaintiffs cite no example of a case in which a state enactment has been held to violate the Tenth Amendment. *See* ECF 24-1 at 39-40 (citing *Printz*

*v. United* States, 521 U.S. 898 (1997), *New York v. United States*, 505 U.S. 144 (1992) and *NFIB*

*v. Sebelius*, 132 S. Ct. 2566 (2012), challenges to *federal* laws). For example, in *New York v.*

*United States*, 505 U.S. 144 (1992), on which Plaintiffs rely, the Supreme Court held that the fact

that state officials may have supported enactment of an Act of Congress does not matter when

"Congress exceeds its authority relative to the state." *Id.* at 182. But the Supreme Court did not

thereby implicitly limit a state's ability to direct local officials to assist federal officials pursuant

to federal statutes requesting such assistance when requested that are entirely consistent with the

Tenth Amendment.

        Here, SB 4 does not amount to federal commandeering of state personnel. Detainers are

voluntary, and through SB 4, the State of Texas has chosen to voluntarily cooperate with

detainers on a state-wide basis. This is fully consistent with the reasoning of courts that under the

Tenth Amendment federal immigration officials cannot *command* state or local government

officials to detain suspected aliens as persons of interest to the federal government. *See, e.g.*,

*Galarza v. Szalczyk*, 745 F.3d 634, 643-44 (3d Cir. 2014). But that the federal government may

not commandeer states and localities in no way means that the states cannot use the "powers . . .

reserved to the States" (Am. 10) to cooperate, on a state-wide basis, with detainer requests. *See,*

*e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("Through the structure of its government,

and the character of those who exercise government authority, a state defines itself as a

sovereign. 'It is obviously essential to the independence of the states, and to their peace and

tranquility, that their power to prescribe the qualifications of their own officers ... should be

exclusive, and free from external interference, except so far as plainly provided by the

Constitution of the United States.'"). In this case, the state may exercise its sovereign police

powers to implement a state-wide policy concerning cooperation with federal authorities

regarding information sharing and detainers, as Texas has done here.

## II.   IT IS NOT UNCONSTITUTIONAL TO COOPERATE WITH THE FEDERAL GOVERNMENT'S DETAINER REQUESTS, WHICH ARE ACCOMPANIED BY WARRANTS BASED ON FINDINGS OF PROBABLE CAUSE.

As the parties themselves acknowledge, SB 4, at least with respect to immigration detainers, can be unlawful under the Fourth Amendment only if it requires Texas' employees or subdivisions to take unlawful actions. ECF 24-1 at 30-34. Plaintiffs recognize that ICE recently issued a policy requiring detainer requests to be accompanied by administrative warrants authorized by statute that are premised on a finding of probable cause. Under well-established constitutional principles that are not in dispute, local officials are entitled to carry out such warrants in reliance on ICE's finding of probable cause that an alien in state or local custody is removable from the United States. Accordingly, compliance with the federal detainer requests that will be issued under ICE's current policy is fully consistent with the Fourth Amendment. Facial invalidation of SB 4's detainer provision cannot be supported by speculation that ICE's detainer policy might be disregarded and Fourth Amendment violations might result.

### A.   Complying with detainers issued pursuant to the ICE's detainer policies is fully consistent with the Fourth Amendment.

The parties assert that arrests under SB 4 will violate the Fourth Amendment because detainers are issued without probable cause. ECF 24-1 at 31. But as all parties must concede, ICE has issued a policy under which it only issues detainers when there is probable cause on the face of the detainer to arrest an individual on the basis that he is a removable alien, and the detainer is accompanied by an administrative warrant issued pursuant to 8 U.S.C. § 1226 or, if a removal order is final, under 8 U.S.C. § 1231(a); 8 C.F.R. § 241.2(a)(1). *See* ICE, "Detainer Policy" and accompanying hyperlinks (Mar. 24, 2017), *available at*

https://www.ice.gov/detainer-policy. Thus, by definition, each ICE detainer is supported not just

by probable cause, but a Congressionally-sanctioned administrative warrant. *See, e.g.*, *Lopez v.*

*INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (aliens "may be arrested by administrative warrant

issued without an order of a magistrate"); *Moreno v. Napolitano*, 213 F. Supp. 3d 99, 1005 (N.D.

Ill. 2016) (citing Section 1226(a) provision that an alien may be detained "pursuant to 'a warrant

issued by the Attorney General'"); [14] *United States v. Smith*, 1994 U.S. App. LEXIS 42795, *10

(5th Cir. 1994) (holding that officer acted "objectively reasonably in relying on the

administrative warrant for authority to arrest"); *Miranda–Olivares v. Clackamas Cnty.,* No.

3:12–cv–02317–ST, 2014 WL 1414305, at *9–11 (D. Or. Apr. 11, 2014) (noting probable cause

was lacking for civil detention in part because plaintiff "was not subject to a warrant for arrest or

order of removal or deportation by ICE"); *accord Gonzalez v. ICE*, No. 13-4416 (C.D. Cal. June

12, 2017), Slip Op. at 18 ("[I]t is not unconstitutional under the Fourth Amendment for the

Legislature to delegate a probable cause determination to an executive officer, such as an ICE

agent, rather than to an immigration, magistrate, or federal district court judge."). Each detainer

issued by ICE, coupled with the warrant, explains for the receiving state or local officer the

identity of the individual at ICE who made the probable cause determination, the information

that formed the basis for that determination, and when that determination was made.

These probable-cause determinations are generally straightforward. If an alien is present

in the United States, ICE can often readily determine whether he or she was lawfully admitted or

paroled into the United States following inspection by an immigration officer, such that the alien

---

[14] The *Moreno* Court ultimately issued an order endorsing the legality of ICE's reliance on administrative warrants issued "in accordance with the applicable statute and regulations" as a basis for temporary detention of aliens. Order, ECF No. 239, *Moreno v. Napolitano*, No. 11-5452 (N.D. Ill. Nov. 28. 2016). Notably, the Court later rejected a request from Plaintiffs to limit that holding to criminal warrants issued by a judge. *See id.*, ECF No. 254.

is in fact lawfully present in the United States. *See* 8 U.S.C. §§ 1101(a)(13)(A), 1182(d)(5). If not, that fact alone will demonstrate probable cause. If so, ICE can often easily determine whether the alien has overstayed or otherwise violated the terms and conditions of his authorized period of admission or parole.

Local officers are entitled to rely on ICE's findings of probable cause as articulated in the I-247A and the administrative warrant. Where one officer obtains an arrest warrant based on probable cause, other officers may carry out the arrest even if they are "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985). "[W]here law enforcement authorities are cooperating ... the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983); *accord United States v. Head*, 693 F.2d 353, 357 (5th Cir. 1982) ("Reasonable suspicion may be predicated upon the collective knowledge of law enforcement officers where there has been reliable communication between them."); *United States v. Hernandez*, 477 F.3d 210, 215 (5th Cir. 2007) ("[I]n assessing whether an agent had reasonable suspicion, we look to the "collective knowledge" of all agents and officers.").[15] Moreover, SB 4 specifically contemplates that if a state prisoner or arrestee presents proof of citizenship or lawful status, the mandate to comply with the federal detainer no longer

---

[15] This doctrine applies regardless of whether law enforcement agencies are engaged in a formal, joint investigation. *See Hensley*, 469 U.S. at 231. Indeed, the rationale behind the rule was that an agency lacking any information about a case beyond a "wanted flyer" should be able to rely upon the information in the flyer from another jurisdiction. *See id.* at 231. The rule has regularly been applied by courts in scenarios involving a specialized federal investigation in which state officers are uninvolved but yet are asked for assistance by federal officers in detaining identified suspects. *See, e.g.*, *United States v. Powell*, 732 F.3d 361, 369-70 (5th Cir. 2013); *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007); *United States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991); *United States v. Capelton*, 350 F.3d 231, 239-40 (1st Cir. 2003); *see generally* 3 Wayne R. LaFave, SEARCH AND SEIZURE, § 3.5(b) (2016) (collective knowledge rule "governs whether the communication is from a superior or fellow officer within the department, between different agencies or agencies at different levels within a state, between officials in different states, and also between federal and state or local authorities").

applies. Texas Code Crim. Proc. art. 2.251(b).

Moreover, there is no dispute that warrants issued pursuant to express statutory authorization and supported by probable cause are sufficient to justify an arrest. As the Supreme Court has observed at length, there is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960). Although the Supreme Court in *Abel* concluded that the question whether arrests based on warrants issued by Executive Branch officials was not preserved, it nonetheless emphasized the "impressive historical evidence of acceptance of the validity of the statutes providing for administrative deportation arrest from almost the beginning of the Nation." *Id.* at 234. Here, similarly, Plaintiffs have not contested the issue, and in any event there remains no basis for questioning a local official's entitlement to rely on a duly executed warrant. *See also id.* at 230 ("Statutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time.").

Moreover, as to criminals sentenced to serve time – a large subset of individuals potentially affected – SB 4 itself does not require any detention beyond that already contemplated by state law. Rather, SB 4 provides for "the defendant to serve in federal custody the final portion of the defendant's sentence, not to exceed a period of seven days," if a correctional officer determines "that the change in the place of confinement will facilitate the seamless transfer of the defendant into federal custody" and "the federal government consent[s] to the transfer of the defendant into federal custody under the circumstances described by this subsection." Tex. Code Crim. Proc. art. 42.039(b). By definition, criminal aliens subject to this provision will not be subject to a new seizure for Fourth Amendment purposes, because they will not have been detained by Texas beyond the time they would otherwise be entitled to release.

*See, e.g.*, *Arizona*, 567 U.S. at 413.

**B.     Speculation that a detainer might not comport with ICE policy provides no support for a facial challenge to SB 4.**

As discussed, ICE's current policy requires that detainers be supported by a finding of probable cause and be accompanied by an administrative arrest warrant issued pursuant to procedures authorized by Congress. Speculation about *some possible* deviations from current federal policy premised on cases addressing a now-*defunct* ICE policy cannot form the basis for a pre-enforcement *facial* challenge to a state enactment. *See United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs rely on cases that predate ICE's current policy and involved detainers that would be inconsistent with the current policy. The current policy provides that "all detainers issued by ICE must be accompanied by" a warrant for arrest or warrant of removal/deportation. Policy Number 10074.2: Issuance of Immigration Detainers by ICE Immigration Officers, ¶ 2.4. It further provides that detainers may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6. And the detainer form specifies, in bolded, underlined, capital letters, that the state should only "**[m]aintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Immigration Detainer – Notice of Action, DHS Form I-247A (emphasis in original).

Cases involving detainers issued by ICE that would have violated one or more of these requirements and arose under prior policies are inapposite. *See Morales v. Chadbourne*, No. 12-301-M-LDA, 2017 WL 354292 (D.R.I. Jan. 24, 2017) (detainer stating that "investigation has

been initiated" based on failure to match individual in database); *Miranda-Olivares v. Clackamas County*, No. 12-cv-2317-ST, 2014 WL 1414305, at *1 (D. Or. Apr. 11, 2014) (detainer based on initiation of investigation that "was not accompanied by an arrest warrant"); *Moreno*, 213 F. Supp. 3d at 105 (N.D. Ill. 2016) (challenge to detainer without a warrant). The relevant inquiry concerns whether SB 4 impermissibly requires compliance with detainers that will actually be issued by the federal government, not how SB 4 might have applied in the context of policies that have been superseded.

Nor does SB 4 require officers to honor "informal" detention requests "such as a phone call." *Contra* ECF 24-1 at 31. Plaintiffs provide no basis for believing that ICE would issue such informal detainers or that the state law would apply to them. Indeed, SB 4 specifically defines a qualifying detainer to refer to a "Form I-247 document or a similar or successor form" (Sec. 1.02), *i.e.* a formal detainer request – which ICE now issues in conjunction with administrative warrants under 8 U.S.C. § 1226(a) and 1231(a) – and *not* to such "informal" communications. *See also* Texas Code of Criminal Procedure, art. 2.251 (describing duties of a "law enforcement agency that has custody of a person subject to an *immigration detainer request issued by United States Immigration and Customs Enforcement*") (emphasis added). And in any event ICE may only issue detainers through its operative policy framework. *See* at https://www.ice.gov/detainer-policy. In sum, the speculative possibility of such an informal detainer would provide no basis for invalidating the state statute, given that by SB 4's own terms it does not apply to such an informal request for detention.[16]

---

[16] Plaintiffs claim that ICE does not make probable cause determinations through its administrative warrants/detainers by citing to a civil *complaint* filed in 2012 challenging the detainer policy that existed *five* years ago which somehow shows "errors will occur" under the new policy. Plaintiffs do not explain how this complaint demonstrates that ICE's *current* policy

This Court's prior decision in *Santoyo v. United States*, No. 16-855 (W.D. Tex., June 5, 2017), addressing the now superseded ICE policy to issue detainers without including an administrative warrant issued under 8 U.S.C. § 1226(a), is not to the contrary. In that case, Bexar County asserted probable cause to detain an alien for *75 days* after his state charges were dropped based on detainer request issued in 2016, slip op. at 1-2, prior to the April 2, 2017 change of ICE policy now requiring that detainers be accompanied by an administrative warrant based on a separate finding of probable cause. The County conceded having a blanket policy of simply assuming "that any subject of an ICE detainer request has been determined by ICE to have committed a felony or multiple misdemeanors." *id.* at 11, and defended its decision by noting that evidence of the crime of illegal reentry was in the plaintiff's final order of removal. *Id.* at 12. This Court concluded "the ICE removal order describing plaintiff's illegal reentry violation is dated June 8, 2016--the day after Plaintiffs [additional 75 days of detention] ended," which means the basis for removability and the fact of the final order of removal could not have been known to the County's arresting officer at the time plaintiff was detained. *Id.* at 12-13.

No such facts are presented in this case. As we have explained, the detainers that Texas law addresses are only issued with probable cause; are accompanied by an administrative warrant; and are valid for only 48 hours. This makes the current policy and the factual circumstances vastly different from what this Court assessed in *Santoyo*.

Moreover, even assuming *Santoyo* would persuade this Court in this case as to the specific detainer request at issue in that case, the decision does not support Plaintiffs' Fourth

---

is unlawful. If anything, Plaintiffs' argument simply highlights why their facial challenge to a policy that does not yet exist must fail. *See, e.g.*, *Arizona*, 567 U.S. at 415. Indeed, the case Plaintiffs cite held that immigration detainers issued by ICE officers *satisfy* the Fourth Amendment. *See* ECF 264, *Gonzalez v. ICE*, No. 13-4416 (C.D. Cal. June 12, 2017), Slip Op. at 18 (consolidated with *Roy v. County of Los Angeles*, (C.D. Cal. June 12, 2017)).

Amendment facial challenge to SB 4. To prevail in a facial challenge, Plaintiffs must demonstrate "that no set of circumstances exists under which the [state law, and in turn ICE's *current* detainer policy] would be valid." *See Anderson*, 514 U.S. at 155 n.6. As we have explained, this kind of showing cannot be made for a variety of reasons, including because, as of April 2, 2017, all ICE detainer requests are based upon a probable cause determination by ICE and are accompanied by administrative warrants containing a probable cause determination by ICE that an alien is removable from the United States or subject to a final order of removal.[17] These warrants, including the Form-205, Warrant of Removal, that would have accompanied the detainer in *Santoyo* had it been issued after April 2, 2017, represent an important change to the ICE detainer policy and provide the very probable cause for removability that this Court considered lacking in *Santoyo* as of the date state or local officers received the detainer request.[18] *Cf.* Slip Op. at 12-13.

Finally, because *Santoyo* did not involve an administrative arrest warrant issued based on probable cause pursuant to 8 U.S.C. § 1226(a), this Court did not address the issue of whether a state or local government may rely on the probable cause determination made in such a warrant. For the reasons we have explained, it is well established that local governments may rely on such a determination, and this Court's assessment of the collective knowledge analysis in the absence

---

[17] Notably, Plaintiffs appear to concede the point as well. *See, e.g.*, San Antonio Mot. at 44 (discussing *Santoyo* and conceding that "not every enforcement of an immigration detainer request will necessarily create the same constitutional dilemma").

[18] Other cases addressing the pre-April 2, 2017 detainer policy specifically distinguished the situation involving a detainer accompanied by an administrative warrant or a warrant of removal issued by DHS in analyzing the Fourth Amendment issue, such that they do not support a facial challenge. *See, e.g.*, *Moreno*, 213 F. Supp. 3d at 1005; *Miranda-Olivares*, 2014 WL 1414305 at *11; *People v Xirum*, 993 N.Y.S.2d 627, 630 (N.Y. Sup. Ct. 2014).

of a warrant or actual probable cause in the detainer itself should not govern.[19] An alternative analysis would be contrary to 8 U.S.C. § 1226(a), which in fact authorizes arrest warrants based on probable cause of *civil* immigration offenses.[20] *See, e.g.*, *De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015) (rejecting an attempt to "equate civil immigration enforcement actions with federal criminal law enforcement" in light of the INA's intricate procedures and protections as well as the serious separation of powers concerns of injecting unasked-for judicial oversight into matters of immigration policy and enforcement).

Extending *Santoyo* in this way to *every* detainer presently issued by ICE would contravene the Act of Congress providing for immigration detention to be initiated based on civil administrative warrants, 8 U.S.C. § 1226(a). It would also be inconsistent with the bedrock principle that immigration enforcement is of a civil nature, and is effectuated through civil detention initiated by executive officers through administrative process rather than judicial officers.[21] *See, e.g.*, *Abel*, 362 U.S. at 233; *Lopez*, 758 F.2d at 1393; *Gonzalez v. ICE*, No. 13-

---

[19] Although ICE policy presently requires administrative warrants, it does so as a matter of policy. Even those cases analyzing the prior policy however, do not hold that detainers themselves, when supported by probable cause as required by 8 U.S.C. 1357's reference to "reason to believe", are unlawful. *See, e.g.*, *Moreno*, 213 F. Supp. 3d at 1005; Order, ECF No. 239, *Moreno*, No. 11-5452 (N.D. Ill. Nov. 28. 2016) (ICE detainers valid, among other things, if "ICE officer (i) has probable cause to conclude that an individual is a removable non-citizen and (ii) has reason to believe that the particular individual is likely to escape before a warrant can be obtained").

[20] *Orellana v. Nobles County*, 15-3852, 2017 WL 72397, at *8 (D. Minn. Jan. 6, 2017), on which *Santoyo* relies, does not hold that *only* evidence of a crime provides probable cause to arrest. Rather, *Orellana* stands for the far more modest proposition: that a *warrantless* arrest, unsupported by an administrative warrant, must be supported by probable cause that an alien is both subject to removal *and* a flight risk, just as the relevant statutory provision governing warrantless arrests provides. *See* 8 U.S.C. § 1357(a)(2). Neither *Orellana*, nor any case on which it relies, holds that the presence of an administrative warrant is insufficient to permit an arrest.

[21] It is well-settled that administratively issued warrants may be premised on suspected violations of civil, as opposed to criminal, law. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 328-32 (2001) (noting how common law authority constables had to arrest suspects); *United States v.*

-34-

4416 (C.D. Cal. June 12, 2017), Slip Op. at 18. And it would be contrary to *Arizona*, which Courts have read to permit "state and local law enforcement officers" to "detain or arrest an individual solely based on known or suspected civil violations of federal immigration law" if there is "express direction or authorization by federal statute or federal officials" to do so. *See, e.g.*, *Santos*, 725 F.3d at 465;[22] *accord Ovando-Garzo*, 752 F.3d 1161, 1164-65 (similar).

Further, courts have provided no reason not to extend the "collective knowledge" or "fellow officer" rule to the immigration context and violations of civil law. For example, in *Liu v. Phillips*, the First Circuit upheld qualified immunity for a local officer who arrested an alien at the direction of an INS officer for a suspected violation of the immigration laws. 234 F.3d 55, 57-58 (1st Cir. 2000) (Boudin, J.); *Garcia v. Speldrich*, No. 13–CV–3182, 2014 WL 3864493, at *8-9 (D. Minn. Aug. 6, 2014) (holding that qualified immunity applied for two state conservation officers who detained several individuals based on information provided by ICE officers who had interrogated the individuals); *Xirum*, 993 N.Y.S.2d at 631 ("the [state] had the right to rely

---

*Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) (assessing extensive founding era authority and holding that the "Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense."); *accord Locke v. United States*, 11 U.S. (7 Cranch) 339, 348 (1813) (Marshall, C.J.) (explaining that during founding era, "probable cause" meant a belief "made under circumstances which warrant suspicion," without distinguishing between criminal or civil offenses); *cf. Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (describing material witness warrants and explaining warrants may be issued based on probable cause of something other than a "violation of law"); *accord* 4 William Blackstone, Commentaries on the Laws of England, *281-289 (describing use of "capias" to compel appearance of civil defendants); Wayne LaFave et al., SEARCH AND SEIZURE § 5.1(b) ("[l]awful warrantless arrest is not necessarily limited to those instances in which the arrest is made for criminal conduct").

[22] This Court relied on *Santos* in *Santoyo* to observe that "'local officers generally lack authority to arrest individuals suspected of civil immigration violations.'" Slip. Op. at 11 (quoting *Santos*, 725 F.3d at 464. But the quoted language must be read in conjunction with the Fourth Circuit's actual holding: that "*absent express direction or authorization by federal statute or federal officials*, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." 725 F.3d at 465 (emphasis added).

upon [a detainer issued by] the very Federal law enforcement agency charged under the law with 'the identification, apprehension, and removal of illegal aliens from the United States'") (quoting *Arizona*, 132 S. Ct. at 2500); *Smith v. State*, 719 So. 2d 1018, 1022 (Fla. Dist. Ct. App. 1998) (upholding stop by local police based on the reasonable suspicion provided by immigration officer that defendant present illegally); *cf. Clackamas Cnty.*, 2014 WL 1414305, at *9–11 (observing local law enforcement lacked probable cause for civil detention in part because plaintiff "was not subject to a warrant for arrest or order of removal or deportation by ICE").[23]

These same considerations are at play when other forms of legal process authorize temporary detentions, including detainers or holds issued by other non-judicial entities. *See, e.g.*, *United States v. Lucas*, 499 F.3d 769, 776-79 (8th Cir. 2007) (administrative warrant issued by executive official for apprehension of prison escapee); *Henderson v. Simms*, 223 F.3d 267 (4th Cir. 2000) (so-called administrative "retake" warrant authorized by state law); *Chavez v. City of Petaluma*, No. 14-CV-5038, 2015 WL 6152479, at *6, *11 (N.D. Cal. Oct. 20, 2015) (dismissing a claim for allegedly improper detention and explaining that the plaintiff has "not asserted any allegations to show [the sheriff] was not acting pursuant to a facially valid detainer"); *Puccini v. United States*, No. 96-2402, 1996 WL 556987, at *1 (N.D. Ill. Sept. 26, 1996) (dismissing claims against defendants who held the plaintiff in state custody while subject to a Federal criminal detainer, and explaining that the defendants were "entitled to rely upon a duly issued and

---

[23] *Mercado v. Dallas Cty., Texas*, No. 3:15-CV-3481-D, 2017 WL 169102, at *6 (N.D. Tex. Jan. 17, 2017), finding to the contrary is unpersuasive, not only because it relies on an ICE policy that no longer exists, but because it relies on inapposite case law examining arrests for civil infractions for which detention is not contemplated. *See John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 469 (D.C. Cir. 2006) (underage possession of alcohol); *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (contract dispute); *McKinney v. Fields*, 2010 WL 3583017, at *6 (E.D. Mich. Sept. 10, 2010) (minor traffic code violations). Further, *Mercado* ignores the history and precedent thoroughly outlined in *Phillips* and discussed *supra*, and, indeed, does not cite to that opinion at all.

outstanding federal detainer"); *Gardner v. Cal. Highway Patrol*, No. 2:14-CV-2730, 2015 WL 4456191, at *16 (E.D. Cal. July 20, 2015) (explaining that county could reasonably rely on a facially valid probable-cause declaration from a highway patrol officer to detain the plaintiff in jail). There simply is no principled distinction justifying detainers, let alone those accompanied by administrative warrants, in other circumstances issued by non-judicial entities, but not here, particularly in circumstances where Federal immigration interests are paramount and those warrants are explicitly authorized by Congress.

## CONCLUSION

For these reasons, the United States respectfully asks that this Court reject Plaintiffs' Supremacy Clause, Tenth Amendment, and Fourth Amendment challenges to SB 4.

Dated: June 23, 2017

Respectfully Submitted,

CHAD A. READLER
*Acting Asst. Attorney Gen.*

WILLIAM C. PEACHEY
*Director*, Office of Immigration Litigation
District Court Section

/s/ Erez Reuveni
EREZ REUVENI
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division,
450 5th Street NW
Washington, D.C. 20530
Tel: 202-307-4293
erez.r.reuveni@usdoj.gov

VINITA ANDRAPALLIYAL
JOSEPH DARROW
JOSHUA PRESS
*Trial Attorneys*

*Counsel for United States*

-37-

**CERTIFICATE OF SERVICE**

I certify that on June 23, 2017, I electronically filed the foregoing motion with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the attorneys of record for all parties.


/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
U.S. Department of Justice