UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF EL CENIZO, *et al.,* | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 5:17-CV-404-OG |
| | § | [Consolidated/Lead Case] |
| STATE OF TEXAS, *et al.,* | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO STRIKE, TO DISMISS, OR FOR A MORE DEFINITE STATEMENT**

Plaintiffs El Paso County, Sheriff Wiles, County Attorney Bernal (collectively, "El Paso County Plaintiffs"), Texas Organizing Project Education Fund ("TOPEF"), and MOVE Texas ("MOVE") have improperly filed a Second Amended Complaint ("SAC") in violation of this Court's order and Rule 15. It should be struck. Even if the Court forgives Plaintiffs' improper filing, it should dismiss the complaint. None of these Plaintiffs has established jurisdiction. In any event, their claims all fail as a matter of law.

**ARGUMENT**

**I.    Plaintiffs Filed Their Complaint in Violation of This Court's Order and Rule 15**

As an initial matter, the Court should strike Plaintiffs' purported Second Amended Complaint. This Court's scheduling order called for "motion to amend or supplement pleadings" by December 4, 2019. ECF 269. The Court then extended the "deadline to file motions to amend pleadings" until December 13, 2019. ECF 272. But on December 13, Plaintiffs filed not a motion for leave to amend but a Second Amended Complaint. ECF 274. Thus, Plaintiffs violated this Court's order.

But even if this Court had not specifically required motions for leave to amend prior to the filing of an amended complaint, Plaintiffs' filing would still be improper. Plaintiffs cannot rely on amendment as a matter of course both because they have already amended their complaint once and because it is too late. *See* FED. R. CIV. P. 15(a)(1). Plaintiffs did not receive Defendants' "written

consent or the court's leave." FED. R. CIV. P. 15(a)(2). In fact, to Defendants' knowledge, Plaintiffs have not sought either. The San Antonio Plaintiffs and the City of Austin sought Defendants' position on motions for leave to amend their complaints. Defendants consented to amendments dropping claims or parties. Defendants specifically opposed amendments adding claims or parties. *See* Ex. A; Ex. B. Counsel for the El Paso County Plaintiffs, TOPEF, and MOVE were copied on these emails.

Plaintiffs' purported Second Amended Complaint nonetheless adds a new claim: an as-applied equal protection claim. *See* SAC ¶¶ 118–22. This as-applied claim differs from the facial claim previously included in Plaintiffs' Complaint. *Compare* SAC ¶¶ 100–04 (facial claim), *and* First Am. Compl., ECF 51, ¶¶ 100–12 (same), *with* SAC ¶¶ 118–22 (as-applied claim). Defendants did not consent to this new claim.

The complaint, or at least the new claim asserted in the complaint, should therefore be struck. *See Drake v. Navistar Int'l Corp.*, 611 F. App'x 235, 236 (5th Cir. 2015) (per curiam); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 318 (5th Cir. 2014) (per curiam).

## II.   The El Paso County Plaintiffs Cannot Sue Defendants for Alleged Constitutional Violation

Municipalities cannot sue their parent states for alleged constitutional violations. Defendants explained this principle in their Motion to Dismiss the City of Austin's First Amended Complaint, ECF 279. To avoid duplicative briefing, Defendants incorporate by reference Part I of that motion. The arguments made there have equal force here.

Because El Paso County cannot sue Defendants, its officials acting in their official capacities cannot either. A government official can be a party to legal proceedings in two different capacities: an official capacity and a personal (or individual) capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In his official capacity, a government official is treated as the government entity he represents. *See id.* ("[T]he real party in interest in an official-capacity suit

is the governmental entity and not the named official . . . ."). In his personal capacity, on the other hand, a government official is treated as an individual, not as a governmental entity. *See id.*

"[I]n an official capacity claim, one can readily replace the named individual with the name of the office itself. For example, an official capacity claim brought by 'John Cooke, Sheriff of Weld County,' is actually a claim being brought by the Weld County Sheriff's Office." *Cooke v. Hickenlooper*, No. 13-cv-1300, 2013 WL 6384218, at *9 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom. Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016). Thus, an official-capacity plaintiff can assert only those rights that belong to the relevant governmental entity—and faces the same limitations the governmental entity would. *See id.*; *Williams v. Corbett*, 916 F. Supp. 2d 593, 598 (M.D. Pa. 2012), *aff'd sub nom. Williams v. Governor of Pa.*, 552 F. App'x 158 (3d Cir. 2014) ("[E]ven if we were to find that the Plaintiffs' official capacity claims cloaked them with the authority to litigate on behalf of the City, we would nonetheless conclude that the political subdivision standing doctrine bars the Plaintiffs' claims. It is illogical to presume that an officer suing in an official capacity on behalf of a political subdivision might have greater standing to maintain a lawsuit than would the political subdivision that official represents."); *Gregoire v. Rumsfeld*, 463 F. Supp. 2d 1209, 1223 (W.D. Wash. 2006) (holding that precedent prohibiting a state from suing without a private cause of action also prohibited a state's governor from suing in her official capacity without a private cause of action).

To proceed on their official-capacity claims, plaintiff officials must show that the relevant governmental entities would be able to proceed. But for the reasons explained above, they cannot make that showing.[1]

---

[1] This inquiry is distinct from whether the plaintiff officials would be able to sue in their personal capacities. *See Alexander v. Todman*, 361 F.2d 744, 746 (3d Cir. 1966) ("A person who sues or is sued in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity and is a stranger to his rights or liabilities as an individual."); *Arpaio v. Obama*, 27 F. Supp. 3d 185, 200–03 (D.D.C. 2014) (analyzing a sheriff's standing to sue in his personal capacity separately from his standing to sue in his official capacity).

### III.     TOPEF and MOVE Failed to Plausibly Allege Standing

All claims brought by TOPEF and MOVE should be dismissed for lack of jurisdiction. Neither entity has established Article III standing. They cannot rely on associational standing because they have not identified any individual members who would have Article III standing. And they cannot rely on organizational standing because SB 4 does not affect their activities, it is not in direct conflict with their mission, and it does not force them to divert their resources.

### A.     TOPEF and MOVE Do Not Have Associational Standing

TOPEF and MOVE have not established associational standing. A plaintiff cannot have associational standing unless one of its members would have standing to sue individually. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019).

But TOPEF and MOVE have not identified a single member, much less a member who would have standing to sue individually. In *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009), the Supreme Court "required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm." 555 U.S. at 499. The dissent would have "accept[ed] the organization's self-description of the activities of its members" and "a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. But the majority rejected that approach because the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498–99. Even when "it is certainly possible—perhaps even likely—that one" member would have standing, "that speculation does not suffice." *Id.* at 499.

Similarly, in *NAACP v. City of Kyle*, the Fifth Circuit found no associational standing because the NAACP had not established that "a specific member of the NAACP has been" injured. 626 F.3d 233, 237 (5th Cir. 2010). "[E]vidence suggesting, in the abstract, that some minority members may be" injured was "insufficient." *Id.*

This pleading failure requires dismissal. *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (holding that the Georgia Republican Party lacked associational standing because it "failed to allege that a specific member will be injured by the rule, and it certainly offers no evidence to support such an allegation"); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (dismissing under Rule 12(b)(1) because plaintiff did not identify a member who was affected by the challenged regulation).

Indeed, TOPEF and MOVE do not even allege that they are membership organizations. Not having members is fatal to associational standing. *See Hunt*, 432 U.S. at 344 (requiring "indicia of membership in an organization"); *City of Olmsted Falls v. FAA*, 292 F.3d 261, 267–68 (D.C. Cir. 2002) (holding a city could not assert associational standing because it did not have members).

TOPEF and MOVE focus on the individuals they allegedly serve, SAC ¶ 17 ("referring to the "community [TOPEF] serves"); *id.* ¶ 21 (same for MOVE), but people an organization serves do not qualify as members for purposes of associational standing. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[T]he Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization."); *id.* at 1013 (McKeague, J., concurring) (rejecting associational standing based "on assertion of the interests of nonmembers," that is, the homeless people for whom the association "advocate[d]").

## B.    TOPEF and MOVE Do Not Have Organizational Standing

An organization lacks organizational standing unless it satisfies the same Article III requirements applicable to individuals: injury in fact, causation, and redressability. *See City of Kyle*, 626 F.3d at 237 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In an appropriate case, an organization can establish an injury in fact by showing that the challenged law conflicts with the organization's mission and "perceptibly impair[s]" its activities, if those activities further a cognizable legal interest, rather than an "abstract social interest[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363,

379 (1982). If an organization avoids the impairment of its activities by spending additional resources to combat the effects of the challenged law, then the "drain on the organization's resources" may constitute an injury in fact. *Id.*; *see City of Kyle*, 626 F.3d at 238.

These twin theories of standing are flip sides of the same coin. If the alleged effect of the challenged law on the plaintiff's activities would not qualify as an injury in fact, the plaintiff's reaction to the challenged law cannot qualify either. *See Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) ("[A]ny resources [the organizational plaintiff] used to counteract the lack of a privacy impact assessment—an assessment in which it has no cognizable interest—were a self-inflicted budgetary choice that cannot qualify as an injury in fact." (quotation omitted)). That is because a plaintiff "cannot manufacture standing by choosing to make expenditures based on" an alleged harm that does not itself qualify as an injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

Here, TOPEF and MOVE fail to plausibly allege standing at every step of the analysis.

### 1.   Plaintiffs Have Not Alleged a Cognizable Legal Interest

As an initial matter, they have not alleged their organizational activities are tied to a cognizable legal interest. They both claim that SB 4 impairs their activities designed to convince people "to organize." SAC ¶ 15 (TOPEF); *see also id.* ¶ 19 ("to mobilize, organize, and build power"). What that means is not clear. But such vague allegations cannot satisfy Plaintiffs' burden to establish a cognizable injury in fact. Various activities that might be included in "organizing" do not qualify as cognizable legal interests. *See, e.g.*, *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014) ("[T]he law purportedly injures AMOS by hampering AMOS's abstract social interest in maximizing voter turnout. Harm to abstract social interests cannot confer Article III standing."). Thus, TOPEF and MOVE do not have Article III standing.

Alternatively, Defendants move for a more definite statement. *See* Fed. R. Civ. P. 12(e). Defendants "cannot reasonably prepare a response," *id.*, to assertions regarding "organz[ing]" because TOPEF and MOVE do not specify what is encompassed within "organiz[ing]." SAC ¶¶ 15, 19. The same is true for "mobiliz[ing]" and "build[ing] power." *Id.* ¶ 19. Such allegations do not "provide[] sufficient notice." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). A more definite statement is all the more important in light of the Court's "independent obligation to assure that standing exists." *Earth Island Inst.*, 555 U.S. at 499.

### 2. SB 4 Does Not Impair Plaintiffs' Activities or Directly Conflict with Their Mission

Even if Plaintiffs had cognizable interests in "organizing," they would have to plausibly allege both that SB 4 makes their "*activities* more difficult" and that there is "a direct conflict between the defendant's conduct and the organization's *mission*." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996); *see also id.* at 1429 (requiring that the "action challenged" be "at loggerheads with the [plaintiff's] stated mission"). They have not done either. As a result, "it is entirely speculative whether the defendant's conduct is impeding the organization's activities." *Id.* at 1430.

TOPEF and MOVE do not allege that SB 4 prohibits their activities. Nor could they plausibly do so. SB 4 does not prohibit advocacy in favor of "organizing." Under SB 4, TOPEF and MOVE remain free to advocate for "organizing" in the same ways they did before SB 4 took effect.

Instead, TOPEF and MOVE rely on the contention that SB 4 will lead to fewer Latinos being willing "to organize." SAC ¶ 15 ("SB 4 directly impairs TOPEF's mission by making Latinos more afraid of the police and, therefore, negatively affecting their power and willingness to organize."); *id.* ¶ 19 ("SB 4 directly impairs MOVE's mission by making Latino youth more afraid of the police, and therefore, negatively affecting their willingness to mobilize, organize, and build power through the organization.").

Here, there is no "direct conflict" between SB 4 and Plaintiffs' mission. *Nat'l Treasury Emps. Union*, 101 F.3d at 1430. SB 4 does not prohibit individuals from "organizing." Thus, Plaintiffs rely on speculation about how various third parties will react to SB 4.

Such speculation does not suffice. In *National Treasury Employees Union*, a union wanted to challenge the Line Item Veto Act. But the union's "mission [wa]s to obtain improved worker conditions—a mission not necessarily inconsistent with the Line Item Veto Act." *Id.* Thus, the union rested its standing on the possibility the President would use his line-item veto authority to affect benefits for government workers. The court found no standing: "For a myriad of reasons, a given President may be disinclined to exercise the item veto power as to government employee benefits." *Id.* Such a speculative possibility could not be an injury in fact.

So too here. The Court cannot know whether SB 4 deters any individuals from "organizing." Plaintiffs certainly have not identified any. As discussed above, organizational plaintiffs must identify any individuals who are crucial to their Article III standing. *See supra* Part III.A (discussing *Earth Island Institute* and *City of Kyle*).

Plaintiffs theorize that SB 4 will lead local law enforcement officers to discriminate against Latinos, despite SB 4's express prohibition on discrimination. *See* Tex. Gov't Code § 752.054. Plaintiffs further speculate that individuals considering "organizing" with TOPEF or MOVE will be subjected to such discrimination, become fearful, and then decline to "organize." SAC ¶¶ 15, 19. But such individuals could just as easily react to any discrimination or fear by deciding that "organizing" is all the more important. These contentions regarding "the independent action[s] of some third part[ies] not before the court" cannot support standing. *Lujan*, 504 U.S. at 560 (quotation omitted).

To the extent there are individuals deterred from "organizing," Plaintiffs cannot plausibly allege that SB 4 is the cause. Individuals undoubtedly have numerous reasons for not participating in

TOPEF's and MOVE's "organizing" efforts. But even if some of those reasons were related to immigration, they would likely be attributable to federal enforcement efforts rather than SB 4.

Thus, TOPEF and MOVE cannot establish that SB 4 impairs their organizational activities or directly conflicts with their mission.

### 3.   Diversion of Resources

Nor can TOPEF and MOVE claim standing based on the theory that they divert their resources "to counteract the effects of SB 4." SAC ¶ 16; *accord id.* ¶ 20 ("in response to SB 4"). Because the alleged effects of SB 4 on Plaintiffs' activities are not injuries in fact, neither are Plaintiffs' reactions injuries in fact. As discussed above, a plaintiff "cannot manufacture standing by choosing to make expenditures based on" an alleged harm that does not itself qualify as an injury in fact. *Clapper*, 568 U.S. at 402.

That general principle applies with equal force to organizational standing. In *National Treasury Employees Union*, because the possibility that the President would line-item veto benefits for government workers was not an injury in fact, the union's reaction to that possibility was also not an injury in fact. "Absent a direct conflict between [the union's] mission and the Line Item Veto Act, we are unsure whether [the union's] additional expenditure of funds is truly necessary to improve the working conditions of government workers or rather is unnecessary alarmism constituting a self-inflicted injury." *Nat'l Treasury Emps. Union*, 101 F.3d at 1430.

The same reasoning applies here. Because there is no "direct conflict" between SB 4's regulation of local law enforcement and their missions related to "organizing," TOPEF and MOVE base their claim to organizational standing on speculative possibilities. Thus, they cannot establish that their "additional expenditure of funds is truly necessary" for their mission rather than "unnecessary alarmism constituting a self-inflicted injury." *Id.*

Moreover, there are additional reasons TOPEF's and MOVE's expenditures cannot support standing. First, the alleged new expenditures seem to be *additional* resources, not *diverted* resources. TOPEF alleges that it has "applied for and obtained grants for projects related to SB 4." SAC ¶ 16. In other words, TOPEF is receiving new funding because of SB 4. Plaintiffs cannot complain about alleged budgetary harms from the diversion of resources if the law they are challenging has actually improved their budgetary conditions.

Even if TOPEF and MOVE had diverted resources, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 237. To establish standing, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities,'" and must "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238).

TOPEF and MOVE cannot satisfy either requirement. First, their alleged reactions to SB 4 do not meaningfully differ from their "day-to-day operations." *ACORN v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) (holding that an organization's expenditures must be "caused by [the defendant's] action" that the organization "claims is illegal, as opposed to part of the normal, day-to-day operations of the group"). TOPEF generally engages in "community organizing," SAC ¶ 14, and it does not allege how its normal community organizing differs from its post–SB 4 "presentations," "projects," and "program[s]." *Id.* ¶ 16. The same is true for MOVE. It generally engages in "civic engagement, leadership development, and progressive issue advocacy." *Id.* ¶ 18; *accord id.* ¶ 19. MOVE does not explain how those activities differ from its post–SB 4 "trainings and activities." *Id.* ¶ 20.

Second, TOPEF and MOVE "have not identified any specific projects that [they] had to put on hold or otherwise curtail in order to respond to" SB 4. *City of Kyle*, 626 F.3d at 238. On the contrary,

TOPEF alleges that it "expanded its immigration program," "creat[ed] at least one new position," and "obtained [new] grants." SAC ¶ 16. Likewise, MOVE alleges that it has undertaken various new activities, including conducting new "trainings and activities to raise awareness" as well as "co-found[ing] and participat[ing] in a coalition designed to combat the effects of SB 4." *Id.* ¶ 20. Allegations of creating new activities and expanding old ones do not establish that TOPEF and MOVE are "put[ting] on hold or otherwise curtail[ing]" any projects at all. *City of Kyle*, 626 F.3d at 238.

## IV.     The State and the Governor Are Not Proper Defendants

In their Motion to Dismiss the City of Austin's First Amended Complaint, ECF 279, Defendants explained that sovereign immunity, standing, and § 1983 preclude Plaintiffs from suing the State itself and Governor Abbott. To avoid duplicative briefing, they incorporate by reference Part II of that motion. The arguments made there have equal force here.

## V.     Each of Plaintiffs' Claims Fails

### A.     Plaintiffs' Facial Equal Protection Claim Fails for Lack of Standing and on the Merits

Plaintiffs do not have standing to challenge SB 4 under the Equal Protection Clause. As discussed above, the El Paso County Defendants, like all municipalities, do not have Fourteenth Amendment rights against their parent State. *See supra* Part II. TOPEF and MOVE have not established standing of any kind, *see supra* Part III, but regardless, SB 4 does not apply to them. It regulates local law enforcement, not private organizations. Even if SB 4 did affect TOPEF and MOVE, those organizations do not have a "race, national origin, and/or gender" and cannot suffer that kind of discrimination. SAC ¶ 102.

To the extent they rely on discrimination against third parties, Plaintiffs lack statutory standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (explaining statutory standing). Section 1983 provides a cause of action only when the *plaintiff* suffers "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It does

not provide a cause of action to plaintiffs claiming an injury based on the violation of a *third party's* rights.

Thus, Section 1983 follows the general rule that a plaintiff "must assert her own legal rights and interests, and cannot rest her claim to relief on the legal rights or interests of third parties." *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (brackets omitted). When "[t]he alleged rights at issue" belong to a third party, rather than the plaintiff, the plaintiff lacks statutory standing, regardless of Article III standing. *Id.*; *see also Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986).

TOPEF and MOVE therefore cannot rely on alleged discrimination against third parties. Because this follows from the statute itself, Plaintiffs cannot invoke any exceptions related to prudential standing. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("Because Congress specified in the statute who may sue, prudential standing principles do not apply."); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45 (explaining that § 1983 "incorporates, but without exceptions, the Court's 'prudential' principle that the plaintiff may not assert the rights of third parties.").

But even if TOPEF and MOVE could invoke prudential-standing exceptions, their complaint does not do so. They do not allege that they have "a 'close' relationship with" anyone allegedly affected, and there is no reason to think those allegedly affected face any "hindrance" to protecting their "own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (noting the Supreme Court has generally "not looked favorably upon third-party standing").

Turning to the merits, Plaintiffs assert that SB 4 is unconstitutionally discriminatory on its face. *See* SAC ¶¶ 100–04. But conclusory allegations of discrimination do not suffice:

> These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that petitioners adopted a policy because of, not merely

in spite of, its adverse effects upon an identifiable group. As such, the allegations are conclusory and not entitled to be assumed true.

*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quotations and citations omitted).

SB 4 furthers the State's legitimate, non-discriminatory interests. The State has a strong interest in regulating local governments and local law enforcement. It also has a strong interest in immigration-related issues and cooperating with federal immigration enforcement. Those interests provide an "obvious alternative explanation" for SB 4 that renders implausible "the purposeful, invidious discrimination" Plaintiffs ask the Court "to infer." *Id.* at 682.

Plaintiffs' claim of discrimination is especially implausible because SB 4 expressly prohibits discrimination. *See* TEX. GOV'T CODE § 752.054.

Plaintiffs rely on statements from public officials, but those statements fail to support an inference of discriminatory motive. For example, the idea that "[a] surge of illegal crossings is a threat to the safety of Texas families" has nothing to do with race. SAC ¶ 51. The same is true for concerns about local cooperation with federal immigration enforcement. *See id.* Needless to say, the statements of people who do not hold any Texas office are not attributable to Defendants here. *Id.* ¶ 52.

Plaintiffs' allegations that "SB 4 flew through the legislative process with unusual speed" are conclusory and fail to plausibly allege any inference of discriminatory motive. *Id.* ¶ 53. It should come as no surprise that bills on high-profile issues often have different legislative paths than the average bill does. The supposed departures from normal procedures cannot support an inference of discriminatory motive because Plaintiffs failed to allege what the "normal procedures" would be for unusually high-profile bills like SB 4. *See id.* ¶¶ 53–66.

Moreover, SB 4 does not affect private individuals, so it cannot discriminate against them. A policy of giving discretion to individual law enforcement officers is not a policy of discrimination. As the Supreme Court recognized in *Wal-Mart Stores, Inc. v. Dukes*, a "policy of allowing discretion by local supervisors over employment matters" is "a very common and presumptively reasonable way of doing

business—one that we have said should itself raise no inference of discriminatory conduct." 564 U.S. 338, 355 (2011) (quotations omitted). The same is true for law enforcement here. The Legislature decided that local governments should not have policies forbidding cooperation with federal immigration enforcement. As a result, local law enforcement officers now have more discretion. The decision to give them that discretion is not discriminatory.

### B.   Plaintiffs Have Not Plausibly Alleged a Violation of the First Amendment

Plaintiffs bring three First Amendment claims. Each one fails as a matter of law.

#### 1.   Plaintiffs' Free Speech Claim Fails

Plaintiffs lack Article III standing to challenge the "endorse" provision. Standing to seek prospective relief against the enforcement of a state statute requires "a credible threat of prosecution." *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotations and brackets omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (requiring that "the threatened enforcement [be] sufficiently imminent"). Plaintiffs have not made that showing here.

The Attorney General, the only official empowered to enforce SB 4, has never brought an enforcement action based on the "endorse" provision. Plaintiffs point to the Attorney General's enforcement action against the City of San Antonio, SAC ¶ 9, but that merely highlights Plaintiffs' problem. That suit does not involve the "endorse" provision.

But even if Plaintiffs were able to establish that enforcement of the "endorse" provision was "certainly impending," they would not be able to establish that such enforcement would have threatened their free speech rights. The Fifth Circuit found the "endorse" provision constitutionally problematic only insofar as it affects "core political speech." *City of El Cenizo*, 890 F.3d at 184. The Attorney General had previously interpreted the "endorse" provision as "providing that a local law-

enforcement official may not ratify, confirm, authorize, or permit in their agency a policy contrary to § 752.053(b)(1)-(4)." Defs.' Resp. to Applications for Prelim. Injunction, *City of El Cenizo v. Texas*, No. 5:17-cv-404, 2017 WL 5472171, at *43 (W.D. Tex. June 23, 2017); *see also City of El Cenizo*, 890 F.3d at 182 ("Texas urges this court to adopt a narrowing construction that interprets 'endorse' to mean 'sanction' and limits the verb's scope to official speech."). Thus, Plaintiffs cannot plausibly allege that an enforcement action against them based on a broader interpretation of SB 4's "endorse" provision was "certainly impending." *Clapper*, 568 U.S. at 409.

To be sure, the Fifth Circuit declined to adopt the Attorney General's interpretation of the "endorse" provision as a limiting construction. *See City of El Cenizo*, 890 F.3d at 184. But a federal court's broader interpretation of a statute does not override a state official's decision not to enforce the statute so broadly. What matters for purposes of standing is the likelihood the state official will bring an enforcement action. Because this issue was not raised in the rushed proceedings surrounding the preliminary injunction, neither the Fifth Circuit nor this Court previously considered it. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.").

Moreover, even if there were a certainly impending enforcement action, the El Paso County Plaintiffs' free-speech claims would fail because cities (and their official-capacity officials) cannot sue their parent States (or its official-capacity officers). *See supra* Part II.

Even if the El Paso officials had sued in their personal capacities, their claims would still fail on the merits. The officials have not alleged any protected speech in which they would like to engage.

County Attorney Bernal is an appointed official, not an elected one. That matters because the Fifth Circuit's constitutional concerns with the "endorse" provision do not apply to appointed officials. "[N]on-elected officials and employees . . . may well be obliged to follow the dictates of SB4

as 'government speech.'" *City of El Cenizo v. Texas*, 890 F.3d 164, 184 (5th Cir. 2018); *see also id.* at 185 (affirming this Court's injunction only insofar as it protected "elected officials" from enforcement of the endorsement provision).

At most, County Attorney Bernal might attempt to invoke the framework from *Garcetti v. Ceballos*, 547 U.S. 410 (2006). But the Second Amended Complaint is devoid of any allegations about speech in which County Attorney Bernal might engage, much less speech "as a citizen addressing matters of public concern." *Id.* at 417. County Attorney Bernal failed to "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest." *Cruz*, 849 F.3d at 598–99. She thus does not have an injury in fact and has not established a violation of her free speech rights.

Similarly, the complaint contains no allegations regarding speech in which Sheriff Wiles might engage. Even an elected official like Sheriff Wiles cannot demonstrate standing, much less a violation of his free speech rights, without alleging speech in which he wants to engage. *See id.*

To the extent TOPEF and MOVE bring a free speech claim, it fails for the same reasons discussed above. SB 4 does not apply to TOPEF and MOVE, so there is no possibility of enforcement against them, much less a "certainly impending" enforcement action. *Clapper*, 568 U.S. at 409. Moreover, TOPEF's and MOVE's free speech claims rely on the rights of third parties. See SAC ¶ 92 (claiming "TOPEF and MOVE have been stymied in their efforts to work with officials" because some officials were reluctant "to engage in speech that might run afoul of certain SB 4 provisions"). Defendants explained above why SB 4 does not violate any officials' free speech rights. But even if officials could state a claim in their personal capacities, TOPEF and MOVE would lack statutory standing to rely on the rights of those officials. *See supra* Part V.A.

### 2. SB 4 Does Not Affect the Right to Peaceably Assemble

Plaintiffs include a cursory "public assembly" claim: "SB 4 impermissibly chills the right of TOPEF, MOVE, and the communities they serve to peaceably assemble." SAC ¶ 111. They include

no factual allegations at all, much less factual allegations about assemblies. SB 4 regulates local law enforcement. It has nothing to do with peaceful assemblies of individuals.

At most, Plaintiffs suggest that some individuals now decline to do anything "in the public square," perhaps including peaceably assemble. SAC ¶ 91. Such a reaction to SB 4 is patently unreasonable. It is therefore no surprise that Plaintiffs do not identify even a single person who has reacted in that way. But even on Plaintiffs' speculative theory, the burden on peaceable assembly is only incidental. Moreover, the people most likely to be deterred from activity by immigration enforcement—those without lawful status—cannot bring this type of claim under Fifth Circuit precedent. *See* U.S. CONST. amend. I (protecting "the right of the people peaceably to assemble"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) ("[T]he phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States . . . .").

Regardless, peaceable assembly rights belong to individuals. Plaintiffs are therefore necessarily relying on the rights of third parties. Their claims fail for lack of statutory standing for the same reasons explained above. *See supra* Part V.A.

This claim should be dismissed. Alternatively, Defendants move for a more definite statement because Plaintiffs have not "provide[d] sufficient notice" of their theory. *Swierkiewicz*, 534 U.S. at 514; *see* FED. R. CIV. P. 12(e); SAC ¶¶ 110–11.

### 3. Plaintiffs Have Not Plausibly Alleged Unconstitutional Retaliation

Plaintiffs also complain about a lawsuit the State of Texas and Attorney General Paxton filed in the Austin division. SAC ¶¶ 112–17. That suit sought a declaration that SB 4 is lawful. *See* First Am. Compl., *Texas v. Travis County*, No. 1:17-cv-425, ECF 23 (W.D. Tex. May 31, 2017). Although the case was dismissed for lack of standing, there is no plausible factual basis for asserting the action was brought maliciously. *See Iqbal*, 556 U.S. at 680–81 (rejecting as "bare assertions" allegations that the

defendants acted "maliciously"). The filing of that lawsuit regarding the constitutionality of SB 4 is no more evidence of malice than Plaintiffs' filing of this lawsuit is.

Moreover, even if the Court accepted Plaintiffs' assertions of malice, it would not support the relief Plaintiffs seek. Plaintiffs seek prospective relief, SAC ¶ 127, but they admit that the previous lawsuit has already been dismissed. *See id.* ¶ 114. Plaintiffs do not claim Defendants are likely to file another lawsuit regarding the constitutionality of SB 4, so there is no justification for prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 95–96 (1983) (dismissing for lack of standing because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" (quotation omitted)).[2]

### C.   Plaintiffs' As-Applied Equal Protection Claim Is Not Plausible

As discussed above, the Court should not consider Plaintiffs' improperly-filed as-applied claim. *See supra* Part I. But even if the Court considers it, Plaintiffs' as-applied equal protection claim fails necessarily fails.

First, Plaintiffs have not identified any "certainly impending" injury for purposes of their as-applied equal protection claim. *Clapper*, 568 U.S. at 409. Implicitly acknowledging that SB 4 does not directly affect private individuals, Plaintiffs theorize that "SB 4 allows the opportunity for unlawful detentions and the use of national origin, race, and gender for unlawful disparate treatment in policing, in violation of constitutional guarantees." SAC ¶ 96. That is not true in any meaningful sense. SB 4 no more "allows the opportunity" for unlawful discrimination than having a police force does. Giving rank-and-file officers "greater discretion" is not discriminatory for the same reasons explained above in the context of Plaintiffs' facial challenge. *Id.* ¶ 97; *see supra* Part V.A. Moreover, SB 4 does not give anyone discretion to unlawfully discriminate. It expressly prohibits discrimination. *See* TEX. GOV'T

---

[2] Moreover, Governor Abbott is not a proper defendant for this claim because he was not a party to the lawsuit about which Plaintiffs complain. *See* First Am. Compl., *Texas v. Travis County*, No. 1:17-cv-425, ECF 23 (W.D. Tex. May 31, 2017).

CODE § 752.054. But even if there were an "opportunity" for discrimination, as Plaintiffs claim, SAC ¶¶ 96, 98, that would not make discrimination "certainly impending." *Clapper*, 568 U.S. at 409.

Second, for the reasons explained above, Plaintiffs do not have statutory standing to bring an equal protection claim based on the fear that third parties' rights will be violated. *See supra* Part V.A.

Third, Plaintiffs provide no factual allegations to support their merits contention. Even if it were sufficient for standing, the mere "opportunity" for discrimination to occur would not establish a violation of the Equal Protection Clause. The most Plaintiffs can muster is the allegation "[o]n information and belief, SB 4 has caused discriminatory policing acts in multiple jurisdictions since its implementation in its current form on May 8, 2018." SAC ¶ 99. That is not sufficient to plausibly allege an as-applied equal protection claim. There are no details about who, what, when, or where. If Plaintiffs cannot identify any actual instances of discrimination under SB 4, the only plausible inference is that SB 4's prohibition on discrimination is working well.

### D. Plaintiffs' Request for a Declaratory Judgment Interpreting SB 4 Should Be Dismissed

In the alternative, Plaintiffs request a judgment declaring that El Paso County and Sheriff Wiles are not violating SB 4. *See* SAC ¶¶ 123–26. Again, Plaintiffs have not established standing. There is no "certainly impending" enforcement action challenging each and every one of El Paso County's and Sheriff Wiles' policies. *Clapper*, 568 U.S. at 409.

Even if it had jurisdiction, this Court should not decide a fact-intensive state-law question that has been statutorily committed to a state-court process. SB 4 creates an enforcement scheme that begins with a citizen complaint. *See* Tex. Gov't Code § 752.055(a). That triggers an investigation by the Attorney General. If the investigation reveals that the complaint "is valid, the attorney general may file a petition for a writ of mandamus or apply for other appropriate equitable relief in a [state] district court." *Id.* § 752.055(b). That is the process provided by the Texas Legislature for assessing whether a local government is complying with SB 4. El Paso and Sheriff Wiles would apparently abandon that

process in favor of a federal lawsuit, replacing an investigation with discovery, a mandamus action with a declaratory judgment action, and a state court with a federal one. That disregards the principles of comity and federalism that govern federal-state relations.

This Court should decline to exercise supplemental jurisdiction over this state-law question. Litigating each and every one of the relevant local policies would "raise[] novel or complex issue[s] of State law." 28 U.S.C. § 1367(c)(1). And the comity and federalism interests identified above provide "compelling reasons for declining jurisdiction" and exercising discretion in favor of dismissal. *Id.* § 1367(c)(4). These considerations also favor abstention. *See Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997); *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993).

## CONCLUSION

Plaintiffs' claims suffer from multiple jurisdictional defects, including that no Plaintiff has standing.[3] Each claim also fails on the merits because SB 4 is constitutional. Defendants respectfully request that the Court strike or dismiss Plaintiffs' Second Amended Complaint.

---

[3] Even if this Court finds that one or more plaintiffs has standing, it should dismiss the plaintiffs that do not. "[W]hile some courts have refrained from a standing analysis once one plaintiff has established standing to assert a claim, there is at least some authority suggesting that this doctrine may be limited to appellate review." *Town of Southold v. Town of E. Hampton*, 406 F. Supp. 2d 227, 235 n.5 (E.D.N.Y. 2005), *aff'd in part and vacated in part on other grounds*, 477 F.3d 38 (2d Cir. 2007). Moreover, "nothing in the cases addressing this principle suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing." *Thiebaut v. Colo. Springs Utilities*, 455 F. App'x 795, 802 (10th Cir. 2011). Here, multiple factors weigh in favor of fully considering standing: (1) any other approach "would not fully address [Defendant's] motion," (2) failing to decide standing "would leave at least some of the plaintiffs in a state of legal limbo," (3) "if one group of plaintiffs lack[s] standing, defendants would at least be entitled to partial dismissal," and (4) "judicial economy" supports quickly deciding issues that can narrow or streamline the case at an early stage. *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1092–93 (D. Ariz. 2011).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

PATRICK K. SWEETEN
Associate Deputy for Special Litigation

*/s/ William T. Thompson*
WILLIAM T. THOMPSON
Texas Bar No. 24088531
Special Counsel for Civil Litigation
will.thompson@oag.texas.gov

ADAM ARTHUR BIGGS
Texas Bar No. 24077727
Special Litigation Counsel
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
adam.biggs@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on the 13th day of January, 2020, via the electronic case filing system with the Court causing electronic service upon all counsel of record.

*/s/ William T. Thompson*
WILLIAM T. THOMPSON