UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF EL CENIZO, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 5:17-CV-404-OG |
| | § | [Consolidated/Lead Case] |
| STATE OF TEXAS, *et al.*, | § | |
|     *Defendants*. | § | |

**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAN ANTONIO PLAINTIFFS' SECOND AMENDED COMPLAINT**

i

## TABLE OF CONTENTS

Table of Contents ...................................................................................................................... ii

Argument ..................................................................................................................................... 1

    I.    Local Governments Cannot Bring Constitutional Claims against Their Parent States ............................................................................................. 1

        A.    Local Governments Lack Standing ............................................... 1

        B.    Local Governments Do Not Have Constitutional Rights ............. 2

    II.    Local Officials Cannot Bring Constitutional Claims against Their Parent States ............................................................................................. 2

    III.    The Other Plaintiffs Do Not Have Standing Either .............................. 3

        A.    LUPE, TACHE, and WDP Lack Standing ................................... 3

        B.    Valladarez and Simon Also Lack Standing ................................. 5

    IV.    Plaintiffs Cannot Sue the State or the Governor .................................. 5

    V.    Plaintiffs' Claims Fail as a Matter of Law ............................................. 7

    VI.    Plaintiffs Cannot Avoid *Younger* Abstention ......................................... 8

    VII.    The Court Should Reject Plaintiffs' Invitation to Ignore State Defendants' Arguments ................................................................................ 9

        A.    The Court Should Consider the Standing of Each Plaintiff ........ 9

        B.    There Is No Reason to Ignore State Defendants' Incorporated Arguments .......................................................... 10

Conclusion ............................................................................................................................... 10

**ARGUMENT**

**I.     Local Governments Cannot Bring Constitutional Claims against Their Parent States**

**A.     Local Governments Lack Standing**

Precedent firmly establishes that local governments lack standing to sue their parent States. *See, e.g.*, *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1052 n.1 (5th Cir. 1984). A narrow exception for a political subdivision suing to vindicate a federally-created statutory right under the Supremacy Clause does not help Plaintiffs here. In *Rogers v. Brockette*, a school district "allege[d] that Congress has made it the proper body to decide" a question but that the State had deprived it of that federally-conferred discretion. 588 F.2d 1057, 1062 (5th Cir. 1979). The school district asserted that it had a statutory "right." *Id.* at 1060. Here, no Plaintiff claims Congress "interfere[d] with a state's internal political organization" to create a federal statutory right. *Id.* at 1070. Nor could they. The Fifth Circuit rejected the idea "that Congress *specifically intended* that 'political subdivisions' be able to choose whether to cooperate in immigration enforcement." *City of El Cenizo v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018). This case does not involve "a congressionally conferred power," so *Rogers* does not apply. *Town of Ball*, 746 F.2d at 1052 n.1 (distinguishing *Rogers*).

San Antonio Plaintiffs cite four cases in response, but none supports their position. *See* ECF 300 at 5. First, *Donelon v. La. Div. of Admin. Law ex rel. Wise* rejected standing after noting that *Rogers* "not very convincingly distinguished the long line of cases holding that a political subdivision did not have standing to sue the parent state that created it." 522 F.3d 564, 567–68 & n.6 (5th Cir. 2008). Second, *Board of Education v. Allen* pre-dated modern standing doctrine, and its analysis applied to individuals, not governments. 392 U.S. 236, 241 n.5 (1968); *see City of Hugo v. Nichols*, 656 F.3d 1251, 1260 (10th Cir. 2011). Third, *Municipality of San Sebastian v. Puerto Rico* did not involve a State. 89 F. Supp. 3d 266 (D.P.R. 2015). Even that case held municipalities do not have Fourteenth Amendment rights. *See id.* at 277. Fourth, *San Diego Unified Port Dist. v. Gianturco*, 457 F. Supp. 283 (S.D. Cal. 1978),

1

*aff'd*, 651 F.2d 1306 (9th Cir. 1981), recognized that "political subdivisions have no legitimate basis for asserting constitutional rights." *Id.* at 290. Its discussion of political subdivision standing was dicta because it ultimately relied on a private party's standing. *See* 651 F.2d at 1308 n.7; 457 F. Supp. at 290.[1]

### B. Local Governments Do Not Have Constitutional Rights

Even if San Antonio, Bexar County, and El Paso had standing, they would lose on the merits. Assuming *arguendo* that local governments have standing under *Rogers*, they would still have to show they have rights under each constitutional provision they invoke and that those rights can be asserted against their parent State. *See* ECF 295 at 3. But a local government "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." ECF 279 at 3 (quoting *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009)); *see also* ECF 291 at 1. San Antonio Plaintiffs do not dispute this argument. In fact, they do not respond to it at all.

Their Supremacy Clause claim fails for the same reason. To the extent *Rogers* allows local governments to vindicate a "congressionally conferred power" or statutory right, *Town of Ball*, 746 F.2d at 1052 n.1, the local government Plaintiffs do not have any such right here.

## II. Local Officials Cannot Bring Constitutional Claims against Their Parent States

Local officials acting in their official capacities are subject to the same limitations that local governments are. In response, Plaintiffs cite *Allen*. *See* ECF 300 at 6. But *Allen* does not apply to official-capacity plaintiffs, who are treated as the government.

For the first time, San Antonio Plaintiffs assert that "Plaintiffs McManus, Sandoval and Gallegos do not proceed solely in their official capacity." ECF 300 at 6. But even if the local official Plaintiffs were proceeding in their individual capacities, *Allen* would require that their violation of SB4 "would be likely to bring their expulsion from office and also a reduction in state funds for their [local

---

[1] Plaintiffs suggest the Court can dispense with any further standing inquiry because there is "an adversarial dispute." ECF 300 at 6. But the Supreme Court has repeatedly refused to "fram[e] the standing question solely in terms of whether the dispute would be presented in an adversary context." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 611 (2007).

governments]." 392 U.S. at 241 n.5. Plaintiffs do not plausibly allege that would happen. *Cf.* ECF 282 ¶ 135. Here, the possibility of being expelled from office "simply [is] too speculative and too insubstantial to support standing." *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys.*, 60 F.3d 106, 112 (2d Cir. 1995) (distinguishing *Allen*).

Even if Plaintiffs could satisfy *Allen*, that would not be enough. "[S]ubsequent decisions from the Supreme Court have limited [*Allen*'s] reach." *Baca v. Colo. Dep't of State*, 935 F.3d 887, 916 (10th Cir. 2019); *see also Donelon*, 522 F.3d at 567 n.5; *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 236 (9th Cir. 1980). Under modern standing doctrine, the local official Plaintiffs have not plausibly alleged a "*certainly impending*" enforcement action that would affect them in their individual capacities. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).[2]

## III. The Other Plaintiffs Do Not Have Standing Either

### A. LUPE, TACHE, and WDP Lack Standing

The organizational plaintiffs do not have associational standing because they have not identified an injured member. *See* ECF 291 at 3–4. San Antonio Plaintiffs do not dispute that binding precedent requires them to produce evidence identifying an injured member at the summary judgment stage. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Instead, they argue that they need not plausibly allege facts they will later have to prove. *See* ECF 300 at 7–8. That argument contradicts *Comcast Corp. v. National Association of African American-Owned Media*, in which the Supreme Court explained that "the essential elements of a claim remain constant through the life of a lawsuit." 140 S. Ct. 1009, 1014 (2020). "[T]he legal elements themselves do not change," even if "[w]hat a plaintiff

---

[2] The Fifth Circuit's earlier discussion of standing does not apply, as Plaintiffs recognize by not briefing it. That discussion was limited to the ICE detainer mandate and was predicated on the State being a defendant. *See City of El Cenizo,* 890 F.3d at 186 ("The injury claimed by the plaintiffs stems directly from Texas's enactment of the ICE-detainer mandate."). But Texas is not a proper defendant, so standing to bring claims against the State is irrelevant. Moreover, the Fifth Circuit seems to have erroneously assumed that the plaintiffs before it were suing in their individual capacities. *See id.* (discussing Plaintiffs' potential personal liability in "damage suits"). Because the court did not have the benefit of briefing addressing this issue, that aspect of the analysis should not be read to apply beyond the narrow confines in which the court provided it.

must do to satisfy those elements may increase as a case progresses from complaint to trial." *Id.* "So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Id.* Here, the organizational Plaintiffs do not dispute they will each have to eventually prove the identity of an injured member. Thus, they must each plausibly allege the identity of an injured member in their complaint.

That is consistent with the language in *Summers* requiring "specific *allegations* establishing that at least one identified member had suffered or would suffer harm," 555 U.S. at 498 (emphasis added), as well as the precedent cited in State Defendants' motion to dismiss. *See* ECF 291 at 3–4. For example, Justice Souter's opinion in *Draper v. Healey* rested on the fact that "the complaint did not identify any member of the group." 827 F.3d 1, 3 (1st Cir. 2016). The dismissal occurred "at the pleading stage," and the court refused to let the case proceed to "formal discovery." *Id.* To the extent there are non-binding cases to the contrary, they are not persuasive after *Comcast*.[3]

Moreover, Plaintiffs acknowledge dismissal is appropriate when an organizational plaintiff "ha[s] no members." ECF 300 at 8 n.4. LUPE, TACHE, and WDP have not plausibly alleged that they have members within the meaning of the associational standing test. *See* ECF 291 at 4. Plaintiffs do not argue otherwise. Dismissal is appropriate for this additional, independent reason.[4]

The reason for these requirements is simple. When plaintiffs refuse to identify their allegedly injured members, the Court cannot "assure itself" of jurisdiction. *Summers*, 555 U.S. at 499. Here, for

---

[3] Plaintiffs cite *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), but as the Supreme Court has previously explained, that case did not require naming an affected member because "*all* the members of the organization [were] affected by the challenged activity." *Summers*, 555 U.S. at 499. Plaintiffs do not argue that SB 4 necessarily affects all their members, and the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities" that a subset of unnamed members will be affected. *Id.* at 498–99.

[4] By offering no argument on organizational standing, the organizational Plaintiffs concede they cannot support standing on that theory. *See* ECF 291 at 4 n.1. "Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019).

4

example, there are no underlying factual allegations that would allow the Court to conclude future injuries to Plaintiffs' members are imminent.[5]

### B.    Valladarez and Simon Also Lack Standing

Valladarez and Simon do not have standing for prospective relief because they do not plausibly allege an imminent future arrest. *See* ECF 291 at 4–5. Plaintiffs try to distinguish *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on its facts, *see* ECF 300 at 9, but that case stands for a broader proposition. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 157–58 (1990) (collecting cases applying the same principle); *Stringer v. Whitley*, 942 F.3d 715, 723 & n.28 (5th Cir. 2019). Plaintiffs' claim that Valladarez and Simon "were not engaged in illegal conduct," ECF 300 at 8–9, does nothing to establish that they face a "certainly impending" injury. *Clapper*, 568 U.S. at 409. That is particularly true when their only alleged past detention occurred in a jurisdiction about forty miles away from where they currently reside and one of them allegedly may "be removed from the United States." ECF 282 ¶ 167.[6]

Moreover, Plaintiffs allege no reason to think any arrest would be attributable to SB 4 or State Defendants. *See* ECF 291 at 5–6. Plaintiffs do not deny that Valladarez and Simon were not held pursuant to SB 4's detainer provision, *see* ECF 291 at 6 (citing ECF 282 ¶ 165), so their focus on that provision is misplaced. *See* ECF 300 at 9. Similarly, the pending enforcement action against San Antonio is irrelevant to Valladarez and Simon's claim. *See id.* Valladarez and Simon never allege any connection between it and their alleged past detention, much less any future detention.

### IV.    Plaintiffs Cannot Sue the State or the Governor

The State and the Governor are not proper defendants. ECF 291 at 6; *see also* ECF 279 at 4–7; ECF 295 at 6. Plaintiffs' response contradicts binding precedent.

---

[5] Contrary to Plaintiffs' suggestion, State Defendants never argued their complaint must contain "evidence." ECF 300 at 7 & n.3. State Defendants simply quoted Eleventh Circuit precedent ordering dismissal because an organizational plaintiff "failed to allege that a specific member will be injured by the rule, and it certainly offers no evidence to support such an allegation." ECF 291 at 3 (quoting *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018)).
[6] ECF 282 ¶¶ 13–14 (residence in Arlington); *id* ¶¶ 157–66 (detention in Rowlett). The distance is based on Google Maps.

Regarding the State, Plaintiffs cite *Arizona v. United States*, 567 U.S. 387 (2012). That case is irrelevant because a suit by the federal government does not implicate sovereign immunity or the scope of Section 1983. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 752 (2002). Plaintiffs also suggest Texas has waived its immunity from this suit. *See* ECF 300 at 11 n.5. Not so. One provision of SB 4 waives sovereign immunity of other entities "to the extent of liability created by this section." Tex. Gov't Code § 752.056(e). That section makes "[a] local entity or campus police department" liable for "a civil penalty" when the Attorney General brings an enforcement action. *Id.* § 752.056(a). Because that provision does not apply here, there is no relevant "waiver of sovereign immunity . . . expressly and unequivocally stated in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 290 (2011).

San Antonio Plaintiffs claim the Governor is a proper defendant because he "is the chief law enforcement officer of the State." ECF 300 at 11. That is not true, *see City of Austin v. Paxton*, 325 F. Supp. 3d 749, 755 (W.D. Tex. 2018) (recognizing "the Attorney General is the chief law enforcement officer of the state"), but even if it were, it would be irrelevant. *See City of Austin v. Paxton*, 943 F.3d 993, 1001–02 (5th Cir. 2019) (reversing due to *Ex parte Young*). Plaintiffs also point to the Governor's public statements, *see* ECF 300 at 11–12, but the quoted statements did not say *the Governor* would bring SB 4 enforcement actions. *Ex parte Young* is not satisfied when an official "threatened that [the challenged law] *would be enforced*, not that *he* would enforce it." *In re Abbott*, No. 20-50296, 2020 WL 1911216, at *6 (5th Cir. Apr. 20, 2020). "Moreover, [Fifth Circuit] cases do not support the proposition that an official's public statement alone establishes authority to enforce a law, or the likelihood of his doing so, for *Young* purposes." *Id.* That is especially true here because the quoted statements pre-date SB 4's enactment, *see* ECF 57-14, and because SB 4 clearly gives enforcement responsibility to the Attorney General, *see* Tex. Gov't Code § 752.055, .0565(b). Finally, Plaintiffs point to the Governor's "general duty to see that the laws of the state are implemented," but the Fifth Circuit has held that is

6

not a sufficient connection to enforcement for *Ex parte Young*. *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014); *see* ECF 300 at 12.

### V.     Plaintiffs' Claims Fail as a Matter of Law

Free Speech: Plaintiffs cannot plausibly allege a certainly impending enforcement action threatens their free-speech rights. Plaintiffs do not dispute that their facial claim for non-elected officials must be dismissed or that Plaintiffs McManus and Gallegos have not identified any protected speech that could support an as-applied claim. *See* ECF 291 at 10–11; *cf.* ECF 300 at 10.

Supremacy Clause: Plaintiffs do not dispute that their facial claim must be dismissed. *See* ECF 300 at 12; ECF 291 at 8. They claim to have also brought an as-applied preemption claim, *see* ECF 300 at 12, but their complaint does not identify any application of any provision of SB 4 that would conflict with federal law or alter the Fifth Circuit's preemption analysis. *See* ECF 282 ¶ 179–81.

Academic Freedom: Plaintiffs do not respond to the argument that "SB 4 does not affect [the academic] interests" identified in their complaint. ECF 291 at 11. They never explain how a putative right to academic freedom overrides the government's ability to control government speech. *See id*. And they do not respond to the alternative request for a more definite statement. *See id.* at 11–12.

Fourth Amendment: Plaintiffs do not deny that their facial claim must be dismissed. *See* ECF 300 at 13; ECF 291 at 12. They cannot maintain an as-applied challenge because they have not alleged any application of the detainer provision, much less one that "occur[red] where probable cause was lacking" or after "ICE policy changes." *City of El Cenizo*, 890 F.3d at 190. Plaintiffs do not argue that Valladarez and Simon were held pursuant to the detainer provision. *See* ECF 291 at 12.

Due Process: Plaintiffs do not dispute that SB 4 provides constitutionally adequate process in state-court proceedings. *See* ECF 291 at 13. They also do not identify any substantive due process right. *See id.* at 13–14. Instead, they argue SB 4 is vague. *See* ECF 300 at 14. But the Fifth Circuit has rejected that facial claim. *See City of El Cenizo*, 890 F.3d at 190–91. Plaintiffs identify one application

of SB 4 (the state-court enforcement action), but they never argue that anything about that case makes SB 4 vague. *See* ECF 300 at 15. Thus, any as-applied claim fails as well.

Excessive Fines Clause: Plaintiffs' facial claim fails because they do not argue SB 4 fines would be unconstitutional in all situations. *See* ECF 291 at 15. Their as-applied claim fails because the amount of any future fine is speculative. *See id.* The fine requested in the enforcement action is irrelevant because the Constitution regulates fines "imposed," not fines sought. U.S. Const. amend. VIII.

Equal Protection: Plaintiffs concede SB 4 is "facially neutral" and "prohibits discrimination." ECF 300 at 16. Their complaint contains no non-conclusory allegation of racial motive, and Plaintiffs do not even brief the *Arlington Heights* factors. *See id.* "By failing to rely on the *Arlington Heights* factors to oppose [a dispositive] motion," Plaintiffs have "waived any argument based on the factors." *Elliott v. Versa CIC, L.P.*, No. 16-cv-288, 2019 WL 414499, at *13 (S.D. Cal. Feb. 1, 2019).

## VI. Plaintiffs Cannot Avoid *Younger* Abstention

*Younger v. Harris* prevents this Court from hearing Plaintiffs' as-applied claims based on the pending state-court enforcement action. 401 U.S. 37 (1971); *see* ECF 291 at 7–8. Plaintiffs' only response is an irrelevant fact: Other plaintiffs filed a different complaint in federal court before the Attorney General filed the enforcement action. *See* ECF 300 at 16–17.

First, Plaintiffs point to the City of El Cenizo's complaint, *see* ECF 300 at 17 (citing ECF 1), but that is irrelevant. Unrelated parties cannot "automatically be thrown into the same hopper for Younger purposes." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975). In any event, that complaint did not include any as-applied claims, much less the one at issue here. *See* ECF 262 at 2; ECF 260 ¶¶ 2, 5. The *Younger* analysis is claim-specific. *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 414–15 (3d Cir. 2005); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004).

Second, by the time San Antonio Plaintiffs first raised an as-applied claim on January 16, 2020, the enforcement action had been pending for more than a year. *See* ECF 282 ¶ 134; ECF 275 at 3.

8

Third, the date a federal complaint was filed is immaterial. A state-court action "begun against the federal plaintiffs after the federal complaint is filed" can still trigger *Younger* abstention. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Regarding Plaintiffs' new as-applied claims, there have been no federal proceedings at all, except for briefing on this motion to dismiss.

## VII. The Court Should Reject Plaintiffs' Invitation to Ignore State Defendants' Arguments

### A. The Court Should Consider the Standing of Each Plaintiff

San Antonio Plaintiffs argue that the Court need not assess their standing as individual parties because "one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." ECF 300 at 5 (quotation omitted). But the case-or-controversy requirement must be satisfied for each provision challenged and each remedy sought. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing . . . ."); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (rejecting the idea that "the right to complain of *one* administrative deficiency automatically confer[s] the right to complain of *all* administrative deficiencies").

The Court's "determination of standing is both plaintiff- and provision-specific" because the conclusion "[t]hat one plaintiff has standing to assert a particular claim does not mean that all of them do." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008); *see also Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006) ("The standing inquiry is both plaintiff-specific and claim-specific."). Allowing plaintiffs without standing to seek injunctive relief "would obviously expand the scope of the case or of the proper relief." Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke L.J. 481, 501 (2017).

A "district court . . . lack[s] authority to enjoin enforcement of [a challenged law] as to anyone other than the named plaintiffs," *In re Abbott*, 954 F.3d 772, 786 n.19 (5th Cir. 2020). That rule would be meaningless if non-parties could be brought within the scope of an injunction by naming them as plaintiffs without establishing standing.

Even if Article III did not require a particularized standing analysis, it would remain appropriate. "[N]othing in the cases addressing this principle suggests that a court must permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing." *Thiebaut v. Colo. Springs Utilities*, 455 F. App'x 795, 802 (10th Cir. 2011). Here, multiple factors weigh in favor of fully considering standing: (1) any other approach "would not fully address [this] motion," (2) failing to decide standing "would leave at least some of the plaintiffs in a state of legal limbo," (3) "if one group of plaintiffs lack[s] standing, defendants would at least be entitled to partial dismissal," and (4) "judicial economy" supports streamlining the case. *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1092–93 (D. Ariz. 2011).

### B.  There Is No Reason to Ignore State Defendants' Incorporated Arguments

"[T]o avoid duplicative briefing," State Defendants incorporated certain arguments by reference. *E.g.*, ECF 291 at 1. Plaintiffs argue this was a bad-faith attempt to circumvent the local rules. *See* ECF 300 at 2–4. On the contrary, in light of the overlapping issues raised in the three complaints, incorporation by reference was a reasonable way to avoid burdening the Court with unnecessary briefing. Litigants frequently incorporate arguments by reference without any objection from this Court. *See, e.g.*, *HRF Enters., Inc. v. Advance Food Co., Inc.*, No. 5:13-cv-121-OLG, 2013 WL 12129971, at *13 n.231 (W.D. Tex. Oct. 9, 2013), *report and recommendation adopted*, 2013 WL 12130309 (W.D. Tex. Oct. 29, 2013) (noting parties' incorporation by reference "[f]or the sake of brevity").

Plaintiffs' claimed inability to respond to incorporated arguments is belied by their response. Their suggestion that the Court might ignore incorporated arguments (without filing a motion to strike) would simply delay resolution of important threshold issues because those arguments are not subject to wavier. *See* Fed. R. Civ. P. 12(h)(2)–(3).

### CONCLUSION

State Defendants respectfully request that the Court grant their motion to dismiss.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

PATRICK K. SWEETEN
Associate Deputy for Special Litigation

/s/ William T. Thompson
WILLIAM T. THOMPSON
Texas Bar No. 24088531
Special Counsel
will.thompson@oag.texas.gov

ADAM ARTHUR BIGGS
Texas Bar No. 24077727
Special Litigation Counsel
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
adam.biggs@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on the 24th day of April, 2020, via the electronic case filing system with the Court causing electronic service upon all counsel of record.

/s/ William T. Thompson
WILLIAM T. THOMPSON