IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **CITY OF EL CENIZO, et al.,** § | |
| *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION NO. 5:17-CV-404-OG |
| § | [Consolidated/Lead Case] |
| **STATE OF TEXAS, et al.,** § | |
| *Defendants*. § | |

**DEFENDANTS THE CITY OF ROWLETT, CHIEF GODFREY, OFFICER WELK AND OFFICER RICKMAN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [DKT. NO. 282]**

To the Honorable United States District Court Judge Orlando Garcia—

I.  **PLAINTIFFS FAIL TO MEET THEIR BURDEN TO SHOW THIS COURT HAS JURISDICTION OVER THEIR CLAIMS UNDER FED. R. CIV. P. 12(B)(1).**

   A.  **Plaintiffs Lack Standing to Seek Prospective Declaratory and Injunctive Relief Against City Defendants.**

City Defendants' motion to dismiss shows that Plaintiffs' amended complaint fails to state facts that confer standing upon them to seek injunctive or declaratory relief. Plaintiffs respond with three arguments that lack merit. First, Plaintiffs claim they have standing because "City Defendants have already unlawfully arrested Plaintiffs once." Dkt. No. 311 at 4. But as previously argued, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 95-96 (1983)). And "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal...." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Thus, even taking Plaintiffs'

allegation of a prior unlawful arrest as true, this does not provide them standing to seek injunctive or declaratory relief.

Second, Plaintiffs assert they have "adequately alleged that they remain subject to the enforcement of the City Defendants' policy and/or custom." Dkt. No. 311 at 4. Tellingly, Plaintiffs do not cite to any portion of their complaint following this claim. *See id.* This is likely because the facts alleged in Plaintiffs' amended complaint actually support the opposite conclusion. As City Defendants explained in their Motion, Plaintiffs never allege in their complaint that they will be detained again. In fact, their complaint reflects that Plaintiffs live an hour from Rowlett in Arlington, Texas and that Plaintiff Valladarez is currently awaiting a removal order. Dkt. No. 282 at ¶¶13, 167. There are no facts within the complaint that suggest Plaintiffs will suffer future injury in the form of being in a city they do not reside anywhere near and being detained upon suspicion of an immigration violation. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013) (stating that, to obtain prospective injunctive relief, a plaintiff must show that future injury is "certainly impending.").

Third, Plaintiffs are incorrect that they have standing simply because of their claim that they "were not engaged in illegal conduct at the time of their arrest."[1] Dkt. No. 282 at ¶¶13, 167. The case Plaintiffs cite to, *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990), does not support their position. See *id*. at 235. The plaintiff in *Hernandez* sought to enjoin harassment that accompanied his pursuit of a legal activity–crossing the border between the United States and

---

[1] The second portion of that sentence reads "and they continue to share the characteristics of a subset of individuals who are vulnerable to illegal questioning, detention and/or arrest on the basis of suspected immigration status pursuant to SB 4." *Id.* Plaintiffs are seeking injunctive and declaratory relief against City Defendants. Thus, as explained in the paragraph above, there must be a showing that future injury to Plaintiffs, by *City Defendants* is "certainly impending." An allegation that Plaintiffs generally remain subject to future injury from SB4 or the State of Texas does not satisfy that burden.

Mexico by a United States Citizen. *Id*. Hernandez was therefore "entitled to travel to and from Mexico without deprivation of his Fifth Amendment due process rights," and "there [was] at the very least a reasonable expectation that Hernandez [would] exercise his right to travel" in the future *Id*. at 234. Thus, as the Fifth Circuit pointed out, the "critical factual distinction between *Lyons* and the [case before them]" was that Hernandez "was engaged in an activity protected by the Constitution" at the time of his arrest. *Id*. at 234.

This distinction does not fall in Plaintiffs' favor.

There are no facts that suggest Plaintiffs were engaged in any activity protected by the Constitution at the time they were approached for questioning while standing outside a stranger's home. *See* Dkt. No. 282. And standing does not manifest itself merely because a plaintiff was not later arrested for the offense they were suspected of when the alleged unlawful detention or investigation occurred. *See Lyons*, 461 U.S. at 115; *see also Bradshaw v. McLennan County*, W-08-CV-246, 2009 WL 10700850, at *1 (W.D. Tex. May 19, 2009); *see also Burks v. Price*, CV 6:13CV746, 2015 WL 3622684, at *11 (E.D. Tex. June 10, 2015), aff'd, 654 Fed. Appx. 670 (5th Cir. 2016).

Dismissal for lack of standing is therefore appropriate pursuant to *Lyons*. There, the Fifth Circuit made clear that the reason standing did not exist was because Lyons failed to show that "he, himself, will not only again be stopped by the police, but will also be choked without any provocation or legal excuse." *Lyons*, 461 U.S. at 106 n. 7. Similarly here, Plaintiffs point to nothing in their complaint that suggest they will not only again be stopped by police in a different city from where they reside but also that they will be detained upon suspicion of an immigration violation. *See* Dkt. No. 311 at 3-6.

### B. This Court Lacks Jurisdiction Over City Defendants Where it Cannot Redress Plaintiffs' Purported Injuries.

Plaintiffs fail to support their claim that the injunctive and declaratory relief they seek against City Defendants will redress the injuries they have suffered as a result of SB4 being applied to them. *See* Dkt. No. 311 at 6-7. "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). As explained immediately above, there are no facts in Plaintiffs' amended complaint that indicate an "actual or imminent, not 'conjectural' or 'hypothetical'" future injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Moreover, as City Defendants' Motion argued, Plaintiffs' amended complaint contained no factual allegations that their detentions were "pursuant to SB4." *See* Dkt. No. 302 at 12 (citing Dkt. No. 282 at ¶¶13–14). Revealingly, Plaintiffs' Response not only lacks any cite to their amended complaint to contest this argument, but also fails to remedy the fact that no such citation exists by pointing to the provision of SB4 they believe the City Defendants' alleged policy is based on. *See* Dkt. No. 311 at 6-7. Because Plaintiffs have twice failed to prove that their injury is likely to be redressed by a favorable judicial decision, this Court should find Plaintiffs lack standing to bring their as-applied challenge.

### C. Plaintiffs' Claim for Injunctive and Declaratory Relief Against Officers Welk and Rickman are Barred by Sovereign Immunity.

"[T]he Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). But in order "[t]o fall within the *Ex parte Young* exception to sovereign immunity…a plaintiff must name individual state officials

as defendants in their official capacities." *Id*. To receive Eleventh Amendment immunity, a defendant need not be expressly labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997).

Plaintiffs assert that Officers Welk and Rickman are "city police officers" that do not enjoy Eleventh Amendment immunity because they were not acting as an arm of the State during their detention. Dkt. No. 311 at 8. Plaintiffs' amended complaint and response are replete with the opposite contention: that the Officer were acting under color of, and pursuant to, state law, namely SB4, in detaining Plaintiffs. *See e.g.,* Dkt. No. 282 at ¶ 198 ("Defendants OFFICER JASON WELK and OFFICER BRANDON RICKMAN were acting under color of state law during the time period relevant to this claim."); *see also, e.g.,* Dkt. No. 311 at 6 ("Plaintiffs were unlawfully detained by Rowlett police officers pursuant to SB 4 and the enforcement of SB 4.").

Plaintiffs should not be permitted to classify Officers Welk and Rickman's actions as those of a city actor to overcome sovereign immunity while simultaneously arguing they have standing to seek injunctive relief or have not brought a *Bivens* action because City Defendants were acting pursuant to state law. *Compare* Dkt. No. 311 at 7 *with id.* at 6, 9. To the extent this Court finds Plaintiffs have alleged the latter, however, this Court should dismiss Plaintiffs' claim for injunctive and declaratory relief against the Officers as impermissible under *Ex Parte Young. See, e.g., Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (holding that *Ex Parte Young* suits must be "brought against individual persons in their official capacities as agents of the state.").

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CITY DEFENDANTS UNDER THE SUPREMACY CLAUSE.

Plaintiffs incorrectly argue that this Court is foreclosed from dismissing their Supremacy Clause cause of action because they have pleaded that City Defendants' alleged policy and/or custom all is both conflict and field preempted by federal law. Dkt. No. 311 at 22-23. Plaintiffs' reliance on *White v. U.S. Corr., LLC* for the proposition that "factual arguments and reliance on evidence are inappropriate at the motion to dismiss stage" does not require such a result in this case. 2019 WL 5106019, at *4 (W.D. Tex. Oct. 11, 2019), *report and recommendation adopted, White v. U.S. Corr., LLC*, 2019 WL 7759342 (W.D. Tex. Nov. 18, 2019). *White* involved remarkably different circumstances than those presented here. In *White*, defendant's motion to dismiss raised an affirmative defense that required the Court to engage in a factual inquiry, including a review of extrinsic evidence, in order to determine the applicability of the affirmative defense. *Id*. In declining to engage in such an inquiry, the Court stated that "Courts in this circuit have specifically held that the applicability of the [Motor Carrier Act] 'is not appropriate on a motion to dismiss' and 'is better suited for summary judgment.' *Id*. (citing *Aston v. Glob. Prisoner Servs.*, 2016 WL 4079547, at *4 (W.D. Tex. July 29, 2016)).

Here, City Defendants' argument that their alleged policy is not preempted by federal law did not raise an affirmative defense or require the Court to consider evidence that is extrinsic to the pleadings. ECF No. 302 at 15. Rather, City Defendants have attacked the sufficiency of the claims alleged in Plaintiff's amended complaint. *See id.*

Plaintiffs' amended complaint and Response make only conclusory assertions that City Defendants' alleged policy and/or custom is both conflict and field preempted by federal law. ECF No. 282 at 46, ¶¶ 170-72 & at 49, ¶ 181; Dkt. No. 311 at 22. To avoid dismissal on a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *White*, 2019 WL 5106019, at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While Plaintiffs state that they "do not allege that they were detained pursuant to a federal request" in an attempt to analogize their case to that of *Arizona*, the only facts provided as to why Plaintiffs were detained involve (1) the existence of a federal warrant; and (2) an ICE agent appearing at the scene where the subject of that federal warrant just so happened to be. *Arizona v. United States*, 567 U.S. 387, 410, (2012); ECF No. 282 at ¶165. These facts do not lead to the reasonable inference that Officers Welk and Rickman detained them without a federal request. Thus, this case does not fall within the holding of *Arizona*, and this Court should find that Plaintiffs have failed to state a claim for which relief can be granted under the Supremacy Clause.

### III. Plaintiffs' Facts Give Rise to a *Bivens* Claim because the Specific Conduct they Complain of is Fundamentally a Federal Function.

Plaintiffs do not insulate themselves from a finding that their suit against City Defendants gives rise to a *Bivens* claims simply by arguing that "Plaintiffs nowhere allege [in their amended complaint] that Defendants Welk and Rickman acted under color of federal law." Dkt. No. 311 at 9. Instead, this Court's analysis must focus on whether the "specific conduct" Plaintiffs complain of is either "fairly attributable to the State," or was "fundamentally a federal function." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Doe v. United States*, 831 F.3d 309, 316 (5th Cir. 2016). If it is the latter, the claim gives rise to a *Bivens* action, regardless of how many times a complaint contains the conclusory allegation that a defendant was acting under color of state law.

It is Plaintiffs' burden to plead facts that allow the Court to draw the reasonable inference that a defendant was acting under color of state law. Here, Plaintiffs' amended complaint states

that Officers Welk and Rickman learned of Plaintiff Valladarez's outstanding federal immigration after running a routine records check, and that an ICE agent appeared on the scene to execute that warrant a short while later. Dkt. No. 282 at ¶¶164-165. While Plaintiffs also allege that Officers Welk and Rickman did not detain Plaintiffs pursuant to any federal request, there are no facts in their complaint to support this conclusory allegation. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating a court need not "strain to find inferences favorable to the plaintiffs" and "will not accept conclusory allegations, unwarranted deductions, or legal conclusions."). The only facts provided as to why Plaintiffs were detained involve (1) the existence of a federal warrant; and (2) an ICE agent appearing at the scene where the subject of that federal warrant just so happened to be. The reasonable inference from these facts lead to the same conclusion as in *Doe*: Officers Welk and Rickman were "detaining [Plaintiffs] pending a determination of their immigration status pursuant to ICE specifications" which is "fundamentally a federal function."[2] *Doe*, 831 F.3d at 316.

Thus, in properly considering the facts stated in Plaintiffs' amended complaint, as opposed to their conclusory allegations, it appears that Plaintiffs' claims give rise to a *Bivens* action. As previously explained, such an action would be a "new context" for the purposes of *Bivens*. *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (stating *Bivens'* expansion to "new contexts" is "a 'disfavored' judicial activity."). Therefore, to the extent this Court construes Plaintiffs' claims as being brought under *Bivens*, this case should not proceed on such a theory.

---

[2] Plaintiffs argue *Doe* is inapplicable because it was a decision rendered against "defendant federal contractors" running a detention center. Dkt. No. 311 at 9-10. The section of *Doe* that City Defendants' argument relies on, however, clearly applies specifically to the "CCA Defendants," a private company, whose only contract in that case was with Williamson County to operate a detention facility. *See Doe*, 831 F.3d at 314. That contract, in fact, "provide[d] that its terms are governed by Texas law" and the facts indicated that the County played a "critical role" in how the CCA defendants operated the detention center. *Id*. at 315. Despite this, the Court still concluded the CCA defendants were performing a "federal function" when it was transporting plaintiffs pursuant to ICE standards. *Id*. at 315-316.

IV. **PLAINTIFFS' UNSUPPORTED AND CONCLUSORY ALLEGATIONS DO NOT SUPPORT A FINDING THAT OFFICERS WELK AND RICKMAN LACKED REASONABLE SUSPICION TO DETAIN OR PROBABLE CAUSE TO ARREST.**

City Defendants' Motion to Dismiss cited directly to Plaintiffs' alleged facts in their complaint to explain why reasonable suspicion existed to conduct an investigatory stop of both[3] Plaintiffs. Dkt. No. 302 at 20-24. In response, Plaintiffs assert that no reasonable suspicion existed because (1) they alleged, in their complaint, that it was so; and (2) they provided a plausible story to the officers as to why they were in front of a stranger's house. Dkt. No. 311 at 12-15.

As to their first argument, Plaintiffs' continued declarations that "[Officers] Welk and Rickman did not have reasonable suspicion to conduct an investigatory stop of Plaintiffs" is a conclusory allegation that does not suffice to avoid dismissal under Fed. R. Civ. P. 12(b)(6). Dkt. No. 311 at 12. "Factual allegations of [a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, Plaintiffs' "conclusory allegations or legal conclusions masquerading as factual conclusions [do] not suffice to prevent dismissal under Rule 12(b)(6)." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002).

Plaintiffs also were not subject to an unreasonable investigatory stop under the Fourth Amendment simply because they told the Officers they were there as the result of a Craigslist ad. *See* Dkt. No. 311 at 12-13. A determination of reasonable suspicion is based on a consideration of the facts available to the officer at the time of the detention. *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013). Plaintiffs offer no facts that suggest the Officers would have known Plaintiffs'

---

[3] Contrary to the argument made in Plaintiffs' response, the section of Defendants' Motion to Dismiss regarding Plaintiffs' Fourth Amendment cause of action clearly and continually references the constitutionality of the officers' interactions with *both* Plaintiffs. *See, e.g.,* Dkt. No. 302 at 20 (subsection IV(B)(1)(i) arguing that "The Officers' investigatory stop of Plaintiffs did not violate the Fourth Amendment."); *id.* at 24 (subsection IV(B)(1)(ii) arguing that any arrest of Plaintiffs was supported by probable cause).

story to be true at the time of the stop. *See* Dkt. Nos. 282, 311. And the other facts Plaintiffs *do* offer indicate that, at the time of their encounter, the Officers knew only that (1) a resident of the home at 25 Victoria Drive had been continuously harassed by an unknown person(s) coming to his home and banging on his door as the result of a Craigslist ad; (2) there was a 911 call from that same resident that there were strangers outside his home, knocking on his door again, that would not leave; (3) that Plaintiffs identified the same Craiglist ad that was the cause of the resident's harassment as the reason for their presence to the officers; and (4) Plaintiffs had driven a vehicle to the location but did neither offered a driver's license when asked for identification. Dkt. No. 282 at ¶¶159, 161-163.

These facts are sufficient to find reasonable suspicion existed to conduct an investigatory stop of Plaintiffs. *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) ("The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances."). Thus, under a proper application of the law, Plaintiffs fail to state a Fourth Amendment claim for the period of time in which the Officers conducted an investigatory stop, which lasted, at the earliest, from the initial encounter, to the arrival of a federal agent to effectuate Plaintiff Valladarez's federal warrant. Although Plaintiffs argue the taking of their identifications constituted an arrest, the case law does not support this. [4] The Fifth Circuit has been clear that "a registration and license check, as well

---

[4] Plaintiffs cite case law out of other circuit courts in support of their argument that the period of time in which their identifications were being checked amounted to an arrest. Dkt. No. 311 at 13. None of these cases make such a holding. Instead, the cases state that taking identification from a suspect amounts to an *investigatory* detention or stop. None of the cases state the taking of identification amounts to an arrest or requires probable cause. *See, e.g., United States v. Tyler*, 512 F.3d 405, 411 (7th Cir. 2008) ("So we have a seizure [based on the taking of plaintiff's identification], and our next question is whether *reasonable suspicion* justified it."); *United States v. Villa-Gonzalez*, 623 F.3d 526, 534 (8th Cir. 2010) (requiring "reasonable suspicion of wrongdoing" in order to justify detention that include, among other actions, taking of identification); *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007) (stating plaintiffs were detained when their licenses were taken and "[i]nvestigative detentions must be supported by reasonable suspicion.").

as the questions [an officer asks] before, and while waiting for, the computer results [does] not violate the Fourth Amendment." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006); *see e.g., United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) ("Like other circuits, this court has found no constitutional impediment to a law enforcement officer's request to examine a driver's license and vehicle registration...and to run a computer check on both.").

Because a check of Plaintiffs' records did not come back clean, there remained a legitimate reason for extending the stop. *See United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006). This does not become untrue simply because a civil warrant, as opposed to a criminal warrant, returned against Plaintiff Valladarez.[5] Dkt. No. 311 at 14. As the Fifth Circuit has twice made clear, the "Fourth Amendment does not require probable cause of criminality to detain in the immigration context."[6] *City of El Cenizo, Tex. v. Tex.*, 890 F.3d 164 (5th Cir. 2018); *see also Weisler v. Jefferson Par. Sheriff's Office*, 736 Fed. Appx. 468, 471 (5th Cir. 2018), cert. denied, 139 S. Ct. 795 (2019) ("the Fourth Amendment does not limit arrests to criminal law violations."). Thus, for this reason, as well as the reasons explained in Defendants' motion to dismiss, any period of time that may constitute an arrest under the Fourth Amendment was supported by probable cause.

### V.   Officers Welk and Rickman are Entitled to Qualified Immunity.

---

[5] Although there was no warrant returned as to Plaintiff Simon, Plaintiffs allege no facts that suggest Plaintiff Simon would have, or requested to, leave the scene while his wife was being detained pursuant to an outstanding federal warrant against her. And Plaintiff Simon was not under arrest at any time simply by virtue of wanting to remain with his wife pending the arrival of an ICE agent to execute her warrant. Notably, Plaintiff Simon has not pointed to any facts that suggest he did not feel free to terminate the encounter at any time. *Florida v. Bostick*, 501 U.S. 429, 436 (1991).

[6] Plaintiffs claim *El Cenizo* is inapplicable because "the Fifth Circuit only ruled that a civil arrest is constitutional when there is a state statute authorizing police to make a civil arrest." Dkt. No. 311 at 17 (citing *El Cenizo*, 890 F.3d at 188). The Fifth Circuit, however, "*also* disavow[ed] any district court decisions that have suggested the Fourth Amendment requires probable cause of criminality in the immigration context." *Id*. at 188 n. 22 (5th Cir. 2018) (emphasis added). Moreover, Plaintiffs reading of *El Cenizo* in this way leads to the illogical result of allowing officers to run records checks of warrants but only effectuate those that arise out of a state, rather than federal, offense. This is clearly not what the Fifth Circuit intended.

Plaintiffs' Response fails to demonstrate how their stated facts overcome Officers Welk and Rickman's presumption of qualified immunity. "Clearly established law" should not be defined at a high level of generality, but instead, with "specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019). Thus, Plaintiffs are incorrect when they assert that the inquiry for the "clearly established law" prong of qualified immunity is whether "the law was clearly established that local officers violate the Constitution when they detain or arrest individuals based solely on a suspected civil immigration warrant in the absence of state statutory authorization and federal request." Dkt. No. 311 at 19. This is the exact type of generality the Fifth Circuit and Supreme Court forbids. *See, e.g., White v. Pauly*, 137 S. Ct. 548, 552 (2017) (the clearly established law must be "particularized to the facts of the case.").

Defendants defined the clearly established law inquiry with specificity and granularity in their Motion to Dismiss. The question is whether the law was clearly established that running a check of Plaintiffs' state and federal warrants during an investigatory stop and detain Plaintiffs upon learning of an outstanding warrant for a civil immigration violation until a federal agent arrived violated the Fourth Amendment. Based on the Fifth Circuit's holdings in *El Cenizo* and *Weisler*, the answer is clearly "no." This is even more true considering other circuits are split on the issue. *Roy v. County of Los Angeles*, CV1209012ABFFMX, 2018 WL 3439168, at *3 (C.D. Cal. July 11, 2018) (recognizing the existence of a circuit split on the issue of whether probable cause of a *criminal* offense is required under the Fourth Amendment following the *El Cenizo* holding). "[W]hen the federal circuit courts are split on the issue, the law cannot be said to be clearly established...even when the circuit split developed after the events in question" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc).

Even if this Court defines the clearly established law in the general way Plaintiffs suggest, the result should be the same. Plaintiffs present no case law that supports their assertion that the law was clearly established, at the time, "that local officers violate the Constitution when they detain or arrest individuals based solely on a suspected[7] civil immigration warrant in the absence of state statutory authorization and federal request." The only citation Plaintiffs provide in support, from *El Cenizo*, is misrepresented as a holding by the Fifth Circuit. Dkt. No. 311 at 19 ("absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law."). Even a cursory look at this citation reveals that the *El Cenizo* court never made such holding; instead, it was reciting a Fourth Circuit holding that plaintiffs had relied on to argue the detainer mandate under SB4 is facially invalid. *City of El Cenizo, Tex. v. Tex.*, 890 F.3d 164, 189 (5th Cir. 2018). In fact, after citing to this Fourth Circuit holding, the *El Cenizo* court immediately went on to expressly state the holding was inapplicable to the case before it.

"It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016) (per curiam)). Because Plaintiffs' argument against qualified immunity contains only a misrepresented citation to *El Cenizo* and conclusory allegations, they have failed to overcome Defendants' entitlement to qualified immunity.

---

[7] The word "suspected" seems to have only been added by Plaintiffs in their Response. *Compare* Dkt. No. 282 *with* Dkt. No. 311. Plaintiffs' amended complaint never refers to the warrant that returned against Plaintiff Valladarez as only being "suspected," nor are there any facts that indicate why a warrant that is revealed during the course of a police records check would not be verifiable. *See* Dkt. No. 282.

## VI. THIS COURT SHOULD DISMISS THE CITY OF ROWLETT AND CHIEF GODFREY WHERE THERE HAS BEEN NO SHOWING OF A WIDESPREAD PRACTICE OR THAT CHIEF GODFREY HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF SUCH A PRACTICE.

As was argued in Defendants' motion to dismiss, to prove an "official policy," a plaintiff must state facts that demonstrate "[a] persistent, *widespread* practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is *so common and well settled* as to constitute a custom that fairly represents municipal policy."[8] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (emphasis added). Rather than point to facts in their amended complaint that meet this burden, Plaintiffs' Response directs this Court only to their conclusory allegations that a widespread practice exists, as well as the allegations surrounding their own arrest on April 23, 2019. *See* Dkt. No. 311 at 20. Plaintiffs were required to, but did not, "do more than describe the incident that gave rise to his injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (affirming dismissal of a plaintiff's claim of an official policy of tasing non-threatening non-suspects where the only facts alleged related to the single incident that involved Plaintiff).

Stating a claim for an official policy also requires facts that show a city policymaker had "[a]ctual or constructive knowledge of such custom." *Pena*, 879 F.3d at 623. Plaintiffs do not address this argument in their Response, but instead only insist the policymaker prong of the analysis has been met because they "identif[ied] and name[d] Defendant Godfrey as a policymaker." Dkt. No. 311 at 21. Thus, Plaintiffs fail to identify any facts in their complaint that

---

[8] This way of proving an "official policy" is as an alternative to identifying an *official* ordinance or promulgation of the City of Rowlett to evidence an official policy. It appears from Plaintiffs' conclusory allegations in their complaint that there has been no claim that the policy Plaintiffs allege was ever "officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citations omitted); *see* Dkt. No. 282.

indicate Chief Godfrey had actual or constructive knowledge of a widespread policy[9] and, to be sure, there are none. *See id.*; *see also* Dkt. No. 282. Because Plaintiffs' identification of Chief Godfrey as a policymaker falls short of "sufficiently connect[ing] [Chief Godfrey] to the alleged unconstitutional policy," this Court should dismiss the City of Rowlett and Chief Godfrey from this suit. *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 286 (5th Cir. 2016).

## VII.   PLAINTIFFS SHOULD BE DENIED LEAVE TO AMEND THEIR COMPLAINT AND THIS COURT SHOULD DISMISS WITH PREJUDICE.

As a general matter, Courts should grant leave to amend pleadings "freely … when justice so requires." Fed. R. Civ. P. 15(a). However, "[a]t some point a Court must determine whether a Plaintiff has had a fair opportunity to make his case; If after that time, a cause has not been established, the court should finally dismiss the suit." *Jacques v. Procunier,* 801 F.2d 789, 792 (5th Cir. 1986). Thus, this Court possesses inherent discretion to determine whether Plaintiffs have alleged their best case and dismiss with prejudice thereafter.

As Plaintiffs contend, Plaintiffs have indeed alleged their best case. *See* ECF No. 311 at 23. Moreover, the primary purpose of this litigation – a challenge to SB 4 - has been pending for nearly three years. *See generally* ECF No. 282. Allowing Plaintiffs to replead their case wastes the time and resources of this Court, City Defendants, as well as the other defendants who have been pending in this case since its inception. *See Jacques,* 801 F.2d at 793 (finding that a court should consider *all* pleadings before it in to determine whether Plaintiff has pled his best case in a §1983 claim) (emphasis in original); *see also Amrhein v. La Madeline, Inc.,* 3:11-CV-02440-P, 2012 U.S.

---

[9] The Fifth Circuit has described what must be shown to meet this burden in *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002): "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity."

Dist. LEXIS 191729, at *2 (N.D. Tex. Dec. 12, 2012), aff'd 589 F. App'x 258 (5th Cir. 2015) ("Multiple amendments militate in favor of dismissal if the best case is still not good enough."). Therefore, this Court should find that the third time is the charm for Plaintiffs' challenge to SB4. Defendants respectfully move that all claims pending against them be dismissed with prejudice.

## CONCLUSION

Because, Plaintiffs' Response fails to remedy the deficiencies in their amended complaint, City Defendants request that Plaintiffs' claims against them be dismissed.

**Dated:** April 29, 2020.

Respectfully Submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General
Texas State Bar No. 24097533
courtney.corbello@oag.texas.gov
Attorney-in-Charge

*/s/ Jason Bramow*
**JASON BRAMOW**
Assistant Attorney General

*City Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint*        Page **16** of **17**

Texas State Bar No. 24101545
jason.bramow@oag.texas.gov

*/s/ Alisha Jackson*
**ALISHA JACKSON**
Assistant Attorney General
Texas State Bar No. 24086542
alisha.jackson@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 936-2109

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Western District of Texas, on April 29, 2020.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served directly to all counsel on record by the Electronic Case Files System of the Western District of Texas on April 29, 2020.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General