UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF EL CENIZO, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 5:17-CV-404-OG |
| | § | [Consolidated/Lead Case] |
| STATE OF TEXAS, *et al.*, | § | |
|     *Defendants*. | § | |

**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
EL PASO COUNTY PLAINTIFFS' THIRD AMENDED COMPLAINT**

1

TABLE OF CONTENTS

Table of Contents .................................................................................................................................2
Argument ................................................................................................................................................3
       I.     Local Governments Cannot Bring Constitutional Claims against Their Parent States..........................................................................................................................3
           A.     Local Governments Lack Standing....................................................................3
           B.     Local Governments Do Not Have Constitutional Rights................................3
       II.    Local Officials Cannot Bring Constitutional Claims against Their Parent States..........................................................................................................................4
       III.   TOPEF and MOVE Lack Standing ..................................................................5
       IV.   Plaintiffs Do Not Have Third-Party Standing .................................................6
       V.    Plaintiffs Cannot Sue the State or the Governor.............................................7
       VI.   Plaintiffs' Claims Fail as a Matter of Law ........................................................8
Conclusion ............................................................................................................................................10

**ARGUMENT**

**I.     Local Governments Cannot Bring Constitutional Claims against Their Parent States**

   **A.     Local Governments Lack Standing**

Precedent firmly establishes that local governments lack standing to sue their parent States. *See, e.g.*, *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1051 n.1 (5th Cir. 1984).

Plaintiffs rely on *Rogers v. Brockette*, but that case represents, at most, a narrow exception for claims under the Supremacy Clause vindicating a federally-created statutory right. 588 F.2d 1057 (5th Cir. 1979). In *Rogers*, a school district "allege[d] that Congress has made it the proper body to decide" a question but that the State had deprived it of that federally-conferred discretion. *Id.* at 1062. The school district asserted that it had a statutory "right." *Id.* at 1060. Here, Plaintiffs do not bring a Supremacy Clause claim, and no Plaintiff claims Congress "interfere[d] with a state's internal political organization" to create a federal statutory right. *Id.* at 1070. *Rogers* does not apply. *See Town of Ball*, 746 F.2d at 1051 n.1 (distinguishing *Rogers*). In any event, *Rogers* should be limited to its facts (or, in an appropriate court, overturned). As the Fifth Circuit itself has recognized, *Rogers* is "anomalous" and "not very convincing[]." *Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 567 & n.6 (5th Cir. 2008) (refusing to extend *Rogers*). Plaintiffs provide no argument for extending *Rogers* beyond Supremacy Clause claims regarding statutory rights.

   **B.     Local Governments Do Not Have Constitutional Rights**

Even if El Paso County had standing, it would lose on the merits. Assuming standing *arguendo*, El Paso County would still have to show it has rights under each constitutional provision invoked and that those rights can be asserted against its parent State. But a local government "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." ECF 279 at 3 (quoting *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009)); *see also* ECF 297 at 1.

El Paso County does not dispute this argument. In fact, it does not respond to it at all. Plaintiffs cite no cases suggesting a local government has constitutional rights against its parent State.

## II.     Local Officials Cannot Bring Constitutional Claims against Their Parent States

Local officials acting in their official capacities are subject to the same limitations that local governments are. In response, Plaintiffs cite *Board of Education v. Allen*, 392 U.S. 236 (1968). *See* ECF 307 at 5. But *Allen* does not apply to official-capacity plaintiffs, who are treated as the government.

Even if Plaintiffs were suing in their individual capacities and *Allen* applied, it would require that local officials' violation of SB4 "would be likely to bring their expulsion from office and also a reduction in state funds for their [local governments]." 392 U.S. at 241 n.5. Plaintiffs do not plausibly allege that would happen. To be sure, they note removal from office is a *possible* consequence of violations, *see* ECF 292 ¶¶ 11, 13, but they never allege such removal is "likely." *Allen*, 392 U.S. at 241 n.5. Neither Sheriff Wiles nor County Attorney Bernal are facing an enforcement action. The only SB 4 enforcement action ever brought does not seek to remove any local official from office. Here, the possibility of being expelled from office "simply [is] too speculative and too insubstantial to support standing." *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys.*, 60 F.3d 106, 112 (2d Cir. 1995) (distinguishing *Allen*).

Even if Plaintiffs could satisfy *Allen*, that would not be enough. "[S]ubsequent decisions from the Supreme Court have limited [*Allen*'s] reach." *Baca v. Colo. Dep't of State*, 935 F.3d 887, 916 (10th Cir. 2019); *see also Donelon*, 522 F.3d at 567 n.5; *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 236 (9th Cir. 1980). Under modern standing doctrine, the local official Plaintiffs have not plausibly alleged a "*certainly impending*" enforcement action, much less one that would affect them in their individual capacities. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).[1]

---

[1] The Fifth Circuit's earlier discussion of standing does not apply, as Plaintiffs recognize by not briefing it. That discussion was limited to the ICE detainer mandate and was predicated on the State being a defendant. *See City of El Cenizo,* 890 F.3d at 186 ("The injury claimed by the plaintiffs stems directly from Texas's enactment of the ICE-detainer mandate."). But

4

### III. TOPEF and MOVE Lack Standing

State Defendants previously argued TOPEF and MOVE failed to plausibly allege either associational or organizational standing. *See* ECF 297 at 2–10. Plaintiffs waived any reliance on associational standing. *See* ECF 307 at 5 n.2. For organizational standing, TOPEF and MOVE assert two injuries: (1) expending "resources to counteract SB 4" and (2) impairment of "their right to associate with Latino members of the communities they serve." ECF 307 at 6. Neither is sufficient.

As an initial matter, Plaintiffs' asserted injuries are not independent. As State Defendants previously explained, Plaintiffs "'cannot manufacture standing by choosing to make expenditures based on' an alleged harm that does not itself qualify as an injury in fact." ECF 297 at 5 (quoting *Clapper*, 568 U.S. at 402). A diversion of resources is not a cognizable injury in fact unless the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). For this reason, Plaintiffs' first claimed injury (diversion of resources) cannot support standing unless their second claimed injury (association) does as well.

Plaintiffs have not plausibly alleged impairment of "their right to associate with Latino members of the communities they serve." ECF 307 at 6. Plaintiffs rely on a speculative chain of possibilities. The complaint does not contain any factual allegations explaining how State Defendants' alleged enforcement of SB 4 causes individuals to decline to associate with TOPEF and MOVE. *See* ECF 297 at 7–8, 17. "Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the court.'" *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). But even if some third parties react the way Plaintiffs claim, their reactions

---

Texas is not a proper defendant, so standing to bring claims against the State is irrelevant. Moreover, the Fifth Circuit seems to have erroneously assumed that the plaintiffs before it were suing in their individual capacities. *See id.* (discussing potential personal liability in "damage suits"). Because the court did not have the benefit of briefing addressing this issue, that aspect of the analysis should not be read to apply beyond the narrow confines in which the court provided it.

5

would not be attributable to SB 4. An "assert[ion] that third parties might be disinclined to speak with [Plainitffs] due to a fear of" law enforcement "do[es] not establish injury that is fairly traceable to" SB 4 because it rests "on third parties' subjective fear." *Id.* at 417 n.7. "Allegations of a subjective 'chill' [to First Amendment rights] are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

## IV. Plaintiffs Do Not Have Third-Party Standing

The rule against third-party standing applies not only when a plaintiff "bring[s] a claim on behalf of a third person," ECF 307 at 13, but also when a plaintiff suing on its own behalf relies on the rights of a third party. *See* ECF 297 at 11. "[A]ll persons who claim a deprivation of constitutional rights [are] required to prove some violation of their personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); *see also Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (holding a lawyer "clearly had no standing to raise the alleged infringement of the rights of his client").

Plaintiffs argue they are bringing their own claims because they have suffered their own injuries in fact. *See* ECF 307 at 11–12, 25. That contradicts *Kowalski v. Tesmer*, which analyzed "whether [Plaintiffs] have standing to raise the rights of others" after assuming Plaintiffs "have satisfied Article III," including establishing their own injuries in fact, 543 U.S. 125, 129 & n.2 (2004). Thus, even if Plaintiffs had "suffered their own cognizable injury," ECF 307 at 13, they would have to separately satisfy the third-party standing doctrine.

Plaintiffs also cite cases decided "without addressing the third-party doctrine." ECF 307 at 14. But "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted).

In a footnote, Plaintiffs attempt to establish third-party standing under a prudential exception. *See* ECF 307 at 14 n.9. Prudential exceptions do not apply because Section 1983, not just prudence,

bars third-party standing here. *See* ECF 297 at 11–12. Plaintiffs do not respond to that argument. In any event, Plaintiffs cannot satisfy the prudential exception. The complaint never alleges a close relationship between Plaintiffs and any non-parties. In their brief, Plaintiffs claim a close relationship with "Latino community members," ECF 307 at 14 n.9, but many Latino individuals oppose sanctuary cities.[2] When interests "are potentially in conflict," third-party standing is improper. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 & n.7 (2004). The idea that SB 4, which does not regulate private individuals, hinders them from filing suit is neither plausible nor alleged. *See* ECF 307 at 14 n.9.

## V.  Plaintiffs Cannot Sue the State or the Governor

The State and the Governor are not proper defendants. ECF 297 at 10; *see also* ECF 279 at 4–7; ECF 295 at 6. Plaintiffs' response contradicts binding precedent.

Plaintiffs argue Texas has waived its immunity from this suit. *See* ECF 307 at 15. Not so. One provision of SB 4 waives sovereign immunity "to the extent of liability created by this section." Tex. Gov't Code § 752.056(e). That section makes "[a] local entity or campus police department" liable for "a civil penalty" when the Attorney General brings an enforcement action. *Id.* § 752.056(a). That is not a "waiver of sovereign immunity" that "expressly and unequivocally" applies here. *Sossamon v. Texas*, 563 U.S. 277, 290 (2011). State Defendants are not a local entity or campus police department. Plaintiffs are not suing for a civil penalty, and this is not a state-court enforcement action. The very specificity of the waiver in Section 752.056 shows that there is no broader waiver applicable here. And regardless of waiver, Plaintiffs do not respond to the argument that the State is not a "person" under Section 1983. *See* ECF 297 at 10; ECF 279 at 5.

Plaintiffs claim the Governor is a proper defendant because his "statements reveal his 'demonstrated willingness' to enforce SB 4." ECF 307 at 15–16. Plaintiffs do not cite any statements

---

[2] The Texas Politics Project at the University of Texas at Austin, https://texaspolitics.utexas.edu/polling/search/topic/sanctuary-cities-442#race (last viewed Apr. 29, 2020) (showing that between 33%–43% of Hispanic respondents oppose sanctuary cities in polls between 2011 and 2017).

7

saying *the Governor* would bring SB 4 enforcement actions. *Ex parte Young* is not satisfied when an official "threatened that [the challenged law] *would be enforced*, not that *he* would enforce it." *In re Abbott*, No. 20-50296, 2020 WL 1911216, at *6 (5th Cir. Apr. 20, 2020). "Moreover, [Fifth Circuit] cases do not support the proposition that an official's public statement alone establishes authority to enforce a law, or the likelihood of his doing so, for *Young* purposes." *Id.* That is especially true here because the cited statements pre-date SB 4's enactment, *see* ECF 292 ¶ 52, and because SB 4 clearly gives enforcement responsibility to the Attorney General, *see* Tex. Gov't Code §§ 752.055, .0565(b).

Finally, Plaintiffs claim that the Governor "enforce[s] SB 4 through his ability to fund it." ECF 307 at 16. The cited grant program is a red herring. First, the complaint does not include any allegations about the grant program. Plaintiffs do not even claim to participate in it. Second, granting money to local governments "to offset costs related to . . . enforcing immigration laws" does not injure Plaintiffs, much less force them to comply with SB 4. ECF 307 at 16. So any injunction preventing the Governor from awarding grants would be meaningless. Third, as a practical matter, there is no grant program authorized by SB 4 that the Governor's office administers because the Legislature did not appropriate money for it.[3]

## VI.     Plaintiffs' Claims Fail as a Matter of Law

Equal Protection: Plaintiffs do not deny that SB 4 is facially nondiscriminatory and prohibits discrimination. *See* ECF 297 at 12. Nor do they deny that there is an "obvious alternative explanation" for the passage of SB 4. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). Plaintiffs have not identified any "suspect events, substantive departures, [or] legislative history" supporting an inference of discriminatory intent. ECF 307 at 17–18. "The specific sequence of events leading up to" SB 4 was a debate about sanctuary cities, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267

---

[3] *See* General Appropriations Act, HB 1, 86th Leg. (May 19, 2019), at I-57–I-61, https://capitol.texas.gov/tlodocs/86R/billtext/pdf/HB00001F.pdf (listing criminal justice grant programs funded without mentioning the SB 4 grant program).

(1977), not anything "suspect." SB 4 is not a substantive departure. Plaintiffs never allege the Legislature ignored "factors usually considered important." *Arlington Heights*, 429 U.S. at 267. Plaintiffs have not identified any discriminatory statements in the legislative history. *See* ECF 297 at 12–13. Needless to say, opposition to sanctuary cities or illegal immigration is not discriminatory.

Plaintiffs' as-applied claim is particularly weak because they do not identify any particular application of SB 4. *See id.* at 14. Plaintiffs' arguments concerning "disparate impact in policing and the issuing of ICE detainers" do nothing to suggest any application *of SB 4* has been discriminatory. ECF 307 at 22. Plaintiffs' plea for discovery is misplaced. *See id.* A plaintiff who challenges a specific application of a statute may be entitled to discovery about that application, but Plaintiffs cannot bring an unspecified "as applied" claim in the hope that discovery will allow them to identify some heretofore unknown application of SB 4.

Free Speech: Plaintiffs bring a free-speech challenge to SB 4's "endorse" provision, but they do not plausibly allege a certainly impending enforcement action based on that provision. *See* ECF 297 at 15–16. Plaintiffs rely on the voluntary-cessation exception to mootness, *see* ECF 307 at 22, which is irrelevant to standing, *see Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019). Even if it did apply, Plaintiffs could not overcome the "presumption of good faith" given to public servants, *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017), especially in light of State Defendants' consistent position regarding the narrowness of SB 4's "endorse" provision, *see* ECF 297 at 15. Finally, Plaintiffs cite *Holder v. Humanitarian Law Project*, in which the government had "charged about 150 persons with violating" the statute at issue, including for "the statutory terms at issue." 561 U.S. 1, 15–16 (2010). That does nothing to support standing here, where the Attorney General "has never brought an enforcement action based on the 'endorse' provision." ECF 297 at 15. Plaintiffs cannot plausibly allege they face an imminent enforcement action, much less one based on an interpretation of the "endorse" provision that the Attorney General has specifically disclaimed.

9

Assembly: Conceding SB 4 does not prohibit assembly, Plaintiffs argue it "deters" assembly. ECF 307 at 24. Instead of "identify[ing] even a single person who" is deterred, ECF 297 at 17, they "speculat[e] about 'the unfettered choices made by independent actors not before the court.'" *Clapper*, 568 U.S. at 414 n.5 (quotation omitted). In any event, Plaintiffs' theory that "third parties might be disinclined to [assemble] with [Plainitffs] due to a fear of" law enforcement "do[es] not establish injury that is fairly traceable to" SB 4 because it rests "on third parties' subjective fear." *Id.* at 417 n.7; *see* ECF 307 at 24. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13–14.

Retaliation: Filing a lawsuit to resolve the constitutionality of SB 4 against organizations that "challenged the constitutionality of SB 4" was not retaliatory. ECF 307 at 25; *see* ECF 297 at 17. Regardless, Plaintiffs concede they have not alleged "Defendants are likely to file a lawsuit in the future." ECF 307 at 25; *see also* ECF 297 at 17. State Defendants have no reason to file another federal lawsuit. The Fifth Circuit has already resolved relevant constitutional questions, and to the extent this case reaches the merits, it can resolve any remaining questions.

Declaratory Judgment: Plaintiffs do not respond to State Defendants' argument that sovereign immunity bars this state-law declaratory-judgment claim. *See* ECF 297 at 19. Nor do Plaintiffs respond to State Defendants' argument that supplemental jurisdiction is inappropriate. *See id.* at 20. Regarding abstention, Plaintiffs argue "immigration enforcement is not a matter of pure State policy," ECF 307 at 28 n.14, but Plaintiffs' request for a declaratory judgment interpreting SB 4 is, *see* ECF 292 ¶ 125. Plaintiffs insist a declaratory judgment is appropriate because "[t]he presence of federal law questions must always be a major consideration," ECF 307 at 27 (quotation omitted), but again, this state-law declaratory-judgment claim does not involve any "federal law questions." *See* ECF 292 ¶ 125.

## CONCLUSION

State Defendants respectfully request that the Court grant their motion to dismiss.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

PATRICK K. SWEETEN
Associate Deputy for Special Litigation

*/s/ William T. Thompson*
WILLIAM T. THOMPSON
Texas Bar No. 24088531
Special Counsel
will.thompson@oag.texas.gov

ADAM ARTHUR BIGGS
Texas Bar No. 24077727
Special Litigation Counsel
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
adam.biggs@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on the 30th day of April, 2020, via the electronic case filing system with the Court causing electronic service upon all counsel of record.

*/s/ William T. Thompson*
WILLIAM T. THOMPSON